Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
New York State Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson
New York State Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 835-6000
Fax:  (212) 835-6001

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 09-37010 (SGJ)** |
| | § | |
| **ERICKSON RETIREMENT** | § | **CHAPTER 11** |
| **COMMUNITIES, LLC,** *et al.*[1] | § | **Jointly Administered** |
| | § | |
| Debtors. | | |

## APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. §§ 327(A) AND 328(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS <u>NUNC PRO TUNC TO THE PETITION DATE</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file

this application (the "<u>Application</u>") for entry of an order, substantially in the form attached

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Hingham Campus, LLC, Houston Campus, LP, Kansas Campus, LLC, Lincolnshire Campus, LLC, Littleton Campus, LLC, Naperville Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLP, Warminster Campus, LP.

hereto as Exhibit A, authorizing the Debtors to employ and retain Houlihan Lokey Howard &

Zukin Capital, Inc. ("Houlihan Lokey"), as their investment bankers and financial advisors, in

connection with above-captioned chapter 11 cases nunc pro tunc to October 19th.  In support of

this Application, the Debtors submit the declaration of Matthew Niemann, a Managing Director

of Houlihan Lokey (the "Niemann Declaration"), a copy of which is attached hereto as Exhibit B

and incorporated by reference herein.   In further support of this Application, the Debtors

respectfully state as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a)

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.      On October 19th, 2009 (the "Petition Date"), the Debtors commenced these cases

by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors remain in possession of their assets and continue to operate and

manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and

1108.

6.      No trustee, examiner or committee of creditors has been appointed in these cases.

7.      The factual background regarding each of the Debtors, including their current and

historical business operations and the events precipitating these chapter 11 filings, is set forth in

Case 09-37010-sgj11    Doc 80    Filed 10/22/09    Entered 10/22/09 19:38:54    Desc Main
Document    Page 3 of 16

detail in the Affidavit of Paul B. Rundell, in Support of First Day Motions (the "Rundell Affidavit"), and is incorporated herein by reference.

## Relief Requested

8.      By this Application, the Debtors seek entry of an order authorizing the Debtors to retain and employ Houlihan Lokey as its investment banker and financial advisor nunc pro tunc to the Petition Date subject to further order of the Court and consistent with that certain engagement agreement dated as of March 19, 2009 by and between Houlihan Lokey and the Debtors (referred to herein as the "Agreement"), a copy of which is attached hereto as Exhibit C and incorporated by reference herein.[2]

## Houlihan Lokey's Qualifications

9.      The Debtors seek to retain Houlihan Lokey as their investment banker and financial advisor because it has extensive experience in the senior housing and continuing care retirement community industries, restructuring, mergers and acquisitions ("M&A") and valuation and an excellent reputation for providing high quality investment banking and financial advisory services to debtors and creditors in chapter 11 proceedings. Houlihan Lokey also is uniquely qualified to be retained as the Debtors' investment banker and financial advisor in these chapter 11 cases given its knowledge of the Debtors' businesses and financial affairs as the result of its work on behalf of the Debtors since its original retention in March 2009.

10.      Established in 1970, Houlihan Lokey is an internationally recognized investment banking and financial advisory firm, with fourteen offices worldwide and more than 800 employees. Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations, providing corporate finance and financial advisory

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement. The summary of the terms of the Agreement contained herein is provided for the benefit of the Court and parties in interest and, to the extent the summary set forth herein and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

services, as well as execution capabilities, in a variety of areas including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A advisor in the United States for transactions under $2 billion, according to Thomson Financial. The firm has been the No. 1 provider of M&A fairness opinions for eight consecutive years. Houlihan Lokey maintains one of the largest worldwide financial restructuring practices of any investment bank, with more than 160 professionals in its Financial Restructuring Group alone. The group employs an interdisciplinary approach to engagements and is accustomed to evaluating complex, highly leveraged situations in short time frames. Houlihan Lokey also is a recognized leader in effectuating M&A transactions for distressed companies, both in-and out-of-court. Houlihan Lokey's Health Care Group, which forms an integral part of the Houlihan Lokey team assisting the Debtors, was the number one healthcare M&A advisor in the U.S. for announced transactions in 2008.

11.     Houlihan Lokey has served as financial advisor to debtors in a variety of cases and some of the largest and most complex restructuring matters in the United States. See, e.g., In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re McLeodUSA, Inc., Case No. 05-63230 Case 09-17787 (JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y. June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec., 12 2002); In re Bugle Boy Industries, Inc., No 01-10834 (Bankr. C.D. Calif. Feb 1, 2001); In re Pacific USA Holdings Corporation, No 02-80906 (Bankr. N.D. Tex. Dec. 12, 2002); In re StairMaster Sports/Medical Products, Inc., No 01-19658 (Bankr. W.D. Wash. Aug. 30, 2001); In re Diary Mart Convenience Stores, Inc., No 01-42400 (Bankr. S.D. N.Y. Sep. 24, 2001); In re Daisytek International Corporation, No 03-34762 (Bankr. N.D. Tex. May 7, 2003); In re Interdent Service Corporation, No 03-13594 (Bankr. C.D. Calif. May 9, 2003); In re Home Interiors and Gifts, Inc., No 08-31961 (Bankr. N.D. Tex. April 29, 2008); In re DDi Corp., No 03-15261 (Bankr. S.D. N.Y. Aug.

20, 2003); In re Leiner Health Prods, Inc., No. 08-10446 (Bankr. D. Del. April 8, 2008); In re Romacorp, Inc., No 05-86818 (Bankr. N.D. Tex. Nov. 6, 2005); In re Propex Inc., No 08-10249 (Bankr. E.D. Tenn. Feb. 13, 2008); In re VarTec Telecom, Inc., No 04-81694 (Bankr. N.D. Tex. Nov. 1, 2004); and In re Covad Commc'ns Group, Inc., No. 01-10167 (Bankr. D. Del. Nov. 21, 2001).

12.     Additionally, Houlihan Lokey has served as the financial advisor to the official committee of unsecured creditors in a multitude of chapter 11 proceedings, including In re General Growth Properties, Inc., No 09-11977 (Bankr. S.D. NY. April 16, 2009); In re Farmland Industries, Inc., No 02-50557 (Bankr. W.D. Mo. May 31, 2002); In re Mirant Corp., No. 03-46590 (Bankr. N.D. Tex. 2003); In re Wickes, Inc., No. 04-02221 (Bankr. N.D. Ill. Jan. 20, 2004); In re The National Benevolent Association of the Christian Church (Disciples of Christ), Case No. 04-50948 (Bankr. W.D. Tex. Feb. 16, 2004); In re FV Steel and Wire Co., Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004); In re Conseco, Inc., No. 02-49672 (Bankr. N.D. Ill. March, 20 2003); In re WorldCom, Inc., No. 02-13533 (Bankr. S.D.N.Y. Nov. 12, 2002); In re Kaiser Aluminum Corp., No. 02-10429 (Bankr. D. Del. May 7, 2002); In re Enron Corp., No. 01-16034 (Bankr. S.D.N.Y. July 8, 2001); and In re The Loewen Group, Inc., No. 99-1244 (Bankr. D. Del. Oct. 6, 1999).

13.     As a result of its prepetition work performed on behalf of the Debtors, Houlihan Lokey has acquired knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters. Specifically, Houlihan Lokey's prepetition work on behalf of the Debtors has included, without limitation:

(a)    reviewing and analyzing the Debtors' historical and projected financial statements, operations, liquidity, competitive environment, prospects and related matters;

(b)    construction of integrated financial projection models for most of the Debtors;

(c)     leading the negotiations of the Redwood plan sponsorship transaction as well as the Debtors' negotiations related to DIP financing;

(d)     review of the Debtors' debt agreements and guarantees and the relative priorities thereunder;

(e)     meetings and discussions with most of the Debtors' creditors regarding the Debtors' financial condition and prospects;

(f)     negotiation and implementation of a large number of extensions, amendments and forbearances under the Debtors' various financing arrangements;

(g)     evaluation of the lenders' and other constituents' strategies and options, given their positions and priorities with respect to each asset and overall in the capital structures of the Debtors;

(h)     evaluation of the impact of various alternative strategies (both in and out of chapter 11) on the Debtors' business operations and financial condition, as well as the impact of those alternatives on the Debtors' creditors and other constituents (the "other constituents" of the Debtors include, without limitation, the residents of the Debtors' communities and their representatives, various regulators and authorities, the Debtors' employees, and the vendors and suppliers to the Debtors); and

(i)     commencement in September of a comprehensive marketing process to solicit offers to acquire substantially all of the Company's assets or support a plan of reorganization as a plan sponsor.  To date, Houlihan Lokey has contacted over 80 parties in the marketing process and distributed marketing materials, established an electronic data room and coordinated management meetings for interested parties.

Upon the Court's approval of Houlihan Lokey's retention as investment banker to the Debtors,

Houlihan Lokey is prepared to continue providing a range of strategic advisory services to the

Debtors.

14.     An experienced investment bank and financial advisor such as Houlihan Lokey

fulfills a critical need that complements the services offered by the Debtors' other restructuring

professionals and advisors.  In conjunction with their proposed Plan of Reorganization (the

"Plan"), the Debtors are currently working to restructure much of their sizeable capital structure,

a process involving extensive negotiations with a large number of parties.  Simultaneously, the

Debtors are working to effectuate the sale of certain of the Company's assets and operations,

which also entails detailed and extensive negotiations.  As these processes are taking place, the

Debtors continue active discussions with all of their various constituents, including residents,

regulators and authorities, employees, vendors and others.  For all of these processes, the Debtors

believe that they require the services of a capable and experienced investment bank such as

Houlihan Lokey, which is uniquely positioned to assist the Debtors with the conduct of the cases

and confirmation of the Plan.

### Services to be Rendered

15.     In addition to providing any additional investment banking and financial services

as the Debtors may request from time to time, Houlihan Lokey will assist in the evaluation of

strategic alternatives and render investment banking and financial advisory services to the

Debtors in connection with these chapter 11 cases, including, without limitation:

    (a)    participating in or advising on discussions regarding the Debtors and the Plan with the Debtors' many constituents including, without limitation, the Debtors' creditors, the residents of the Debtors' communities and their representatives, various regulators and authorities, the Debtors' employees, and the vendors and suppliers to the Debtors;

    (b)    continuing the marketing process commenced prepetition to solicit offers from investors to become a plan sponsor of the Company's reorganization or purchase the Company's assets;

    (c)    ensuring the continued provision of information to all parties interested in these proceedings;

    (d)    providing due diligence information to the prospective purchasers of the Debtors' assets and operations;

    (e)    continued negotiations with the Debtors' creditors;

    (f)    negotiating with the prospective purchasers of the Debtors' assets and operations;

    (g)    assisting with implementation of the Plan, including implementation of the restructuring of the obligations of communities and the sale of most of the assets and operations of the Debtors; and

    (h)    providing expert advice and testimony regarding financial matters relevant to the Debtors or the Plan.

16.     The Agreement also contains standard indemnification language with respect to Houlihan Lokey's services.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth therein.  The Debtors will not, however, indemnify Houlihan Lokey for any losses, claims, damages or liabilities incurred by Houlihan Lokey to the extent that a court of competent jurisdiction determines such losses, claims, damages or liabilities result from willful misconduct or gross negligence.

## Professional Compensation

17.     Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement (the "Fee Structure").

     (a)    Monthly Fees:  The Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $250,000 ("Monthly Fee");

     (b)    Sale Transaction Fees:  Upon the closing of a Sale Transaction, the Debtors shall pay fees computed under a sliding scale beginning at $525,000 and ranging from 3% to 7% of Aggregate Gross Compensation above various thresholds;

     (c)    Financing Transaction Fees:  Upon the closing of each Financing Transaction, the Debtors shall pay fees ranging from 1.4% to 2.8% of any capital raised in the form of indebtedness and 4.2% of any capital raised in the form of equity or equity-linked securities;

     (d)    Restructuring Transaction Fee:  Upon completion of a Restructuring Transaction, the Debtors shall pay a fee of $8.25 million The Restructuring Transaction Fee shall be increased by 15% if the Company consummates a Restructuring Transaction on an out-of-court basis or pursuant to a "prearranged" or "prepackaged" plan in which the Restructuring Transaction is confirmed in not more than six months from the Petition Date;

    (e)    <u>Multiple/Complex Transactions</u>: The Agreement also contemplates the completion of multiple and/or complex Transactions, under which circumstances a Restructuring Fee of at least $8.25 MM would be payable and potentially subject to the premium described above; and

    (f)    <u>Crediting</u>: The Agreement provides for the crediting of 25-50% of certain Monthly Fees against any Financing Transaction and Sale Transaction Fees and then against any Amendment Transaction Fees payable under the Agreement. The Agreement also provides for the crediting of (x) 25% of all Financing Transaction and Sale Transaction Fees (net of any credits against such Financing Transaction and Sale Transaction Fees from the Monthly Fees) and (x) 100% of all Amendment Transaction Fees against any Restructuring Fees payable under the Agreement. All such credits may not reduce any such Transaction Fees below zero.

18.    Houlihan Lokey's strategic and financial expertise as well as its senior living and capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Houlihan Lokey's services hereunder cannot be measured by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of such services. Indeed, the Debtors and Houlihan Lokey have agreed upon the Fee Structure anticipating that a substantial commitment of professional time and effort will be required of Houlihan Lokey and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Houlihan Lokey and (b) the actual time and commitment required of Houlihan Lokey and its professionals to perform its services under the Agreement may vary substantially from week to week and month to month, creating "peak load" issues for Houlihan Lokey.

19.    The Fee Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases, both in-and out-of-court, involving the services to be provided in these chapter 11 cases. Houlihan Lokey and the Debtors believe that the Fee Structure is both reasonable and market-based and designed to compensate Houlihan

Lokey fairly for its work and to cover fixed and routine overhead expenses.  Further, because the Debtors are seeking to retain Houlihan Lokey under section 328(a) of the Bankruptcy Code, the Debtors believe that Houlihan Lokey's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

20.     Houlihan Lokey will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases.

## No Duplication of Services

21.     The Debtors intend that Houlihan Lokey's services will complement, and not duplicate, the services to be rendered by DLA Piper LLP (US), Alvarez & Marsal Healthcare Industry, LLC, or any other professional retained in these chapter 11 cases.  Pursuant to the Agreement, Houlihan Lokey understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Houlihan Lokey's Disinterestedness

22.     Houlihan Lokey has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed in the Niemann Declaration, Houlihan Lokey (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtors' estates and (c) has no connection to the Debtors, their creditors or their related parties.  Houlihan Lokey will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that Houlihan Lokey discovers any new relevant facts or relationships bearing on the matters described herein during the period of Houlihan Lokey's

retention, Houlihan Lokey will use reasonable efforts to file promptly a supplemental

declaration.

**Basis for Relief**

A.      **Section 328 of the Bankruptcy Code Permits the Employment and Retention of Houlihan Lokey on Terms Substantially Similar to Those in the Agreement.**

23.      The Debtors seek approval of the Agreement and the Fee Structure contained

therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that

the Debtors "with the court's approval, may employ or authorize the employment of a

professional person under section 327 . . . on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on

a contingent fee basis . . . ."   11 U.S.C. § 328(a).   Accordingly, section 328 permits the

compensation of professionals, including investment bankers and financial advisors, on more

flexible terms that reflect the nature of their services and market conditions.   As the United

States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec.

Corp. v. Nat'l Gypsum (In re  Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

See In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

24.      Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005, certain modifications were made to Bankruptcy Code section 328(a), which now

provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed percentage fee basis, or on a contingent fee basis</u>.

See 11 U.S.C. § 328(a) (emphasis added). Bankruptcy Code section 328(a), as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fixed-fee basis such as the Fee Structure with Houlihan Lokey as proposed by the Debtors herein.

25.     As set forth above, notwithstanding approval of the Agreement under Bankruptcy Code section 328, Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Agreement.

26.     Further, consistent with its ordinary practice and the practice of financial advisors and investment bankers in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. As Houlihan Lokey's compensation will be calculated and paid based on certain transaction fees, Houlihan Lokey requests that it not be required to file time records in accordance with the United States Trustee Guidelines.

27.     The Fee Structure appropriately reflects the nature and scope of services to be provided by Houlihan Lokey and Houlihan Lokey's substantial experience with respect to restructuring, financial advisory, and investment banking services, going concern valuation and

expert testimony services, and is consistent with the fee structures typically utilized by Houlihan

Lokey and other leading financial advisors, who do not bill their clients on an hourly basis.

28.     Similar fixed and contingency fee arrangements in other large chapter 11 cases

have been routinely approved and implemented by courts in this circuit.  See, e.g., Venturelink

Holdings, Inc. No 02-80906 (Bankr. N.D. Tex. April 22, 2003) (authorizing retention of

Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In

re Home Interiors and Gifts, Inc., No 08-31961 (Bankr. N.D. Tex. Oct. 20, 2008) (authorizing

retention of Houlihan Lokey with compensation subject to standard of review set forth in

section 328(a));  In re Romacorp, Inc., No 05-86818 (Bankr. N.D. Tex. Dec. 28, 2005)

(authorizing retention of Houlihan Lokey with compensation subject to standard of review set

forth in section 328(a));  In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006)

(order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In

re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing

retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Oakwood Homes

Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller

Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF)

(Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and

subjecting compensation to same standard of review); In re Trans World Airlines, Inc., No. 01-

0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial

advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); In re Covad

Comm. Group, Inc., No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of

Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In

re Harnischfeger Indus., No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing

retention of The Blackstone Group L.P. as investment bankers to debtors); In re The National

Benevolent Association of the Christian Church (Disciples of Christ), Case No. 04-50948 (RBK)

(Bankr. W.D. Tex. Feb. 16, 2004) (order authorizing employment of Houlihan Lokey).  The

terms and conditions of the Agreement, including the provisions relating to indemnification,[3]

were negotiated by the Debtors and Houlihan Lokey at arm's-length and in good faith.  In light

of the foregoing, and given the numerous issues that Houlihan Lokey may be required to address

in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level

of time and effort necessary to address all such issues as they arise and the market prices for

Houlihan Lokey's services for engagements of this nature, the Debtors believe that the terms and

conditions of the Agreement are fair, reasonable and market-based under the standards set forth

in section 328(a) of the Bankruptcy Code.

**B.      The Retention of Houlihan Lokey Is Critical to the Debtors' Success.**

29.      Denial of the relief requested herein will deprive the Debtors of the assistance of a

uniquely qualified investment banking and financial advisory firm and, certainly, would result in

an unjust disadvantage to the Debtors and all parties in interest.  Indeed, the Debtors would be

forced to engage new investment bankers and financial advisors who lack such a thorough

understanding of the Debtors' business and the restructuring initiatives that have been

implemented over the course of the last several months and which will continue through the

pendency of these chapter 11 cases.  Hiring a substitute would require the commitment of

---

[3]      The Debtors and Houlihan Lokey respectfully submit that the such indemnification provision is (a) a standard provision, both in and outside of chapter 11 cases, (b) reflects the qualifications and limits on the indemnification provisions that are customary in Texas and other jurisdictions and (c) viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, is reasonable and in the best interests of the Debtors' estates, creditors and all parties in interest. See, e.g., In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC); In re Foamex Intl., No. 05-12685 (PJW) (Bankr. D. Del. October 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.); see also In re Dunmore Homes, Inc., No. 07-13533 (MG) (Bankr. S.D.N.Y. Dec. 20, 2007) (order authorizing retention of Alvarez & Marsal North America LLC and Alvarez & Marsal Securities LLC); In re Granite Broadcasting Corp., No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc.).

significant resources to get a substitute up to speed given the steep learning curve involved.

Further, comparable investment bankers and financial advisors would charge an equivalent level

of fees.

30.     The scope and complexity of the Debtors' operating and financial structure make

it highly unlikely that any substitute advisor would be in a position to duplicate Houlihan

Lokey's superior expertise and knowledge of the Debtors' business and operations.  In addition,

Houlihan Lokey's prepetition efforts in soliciting investment proposals from multiple third

parties position it uniquely to continue such a process.  Accordingly, the Debtors respectfully

submit that the services provided by Houlihan Lokey are critical to the Debtors' estates and

request that the Court approve the terms and conditions of the Agreement in substantially the

form attached hereto.

## Notice

31.     Notice of this Motion has been provided to (a) the Office of the United States

Trustee for the Northern District of Texas; (b) the Debtors' thirty largest unsecured creditors on a

consolidated basis; (c) counsel to the agent for the Debtors' prepetition secured lenders; and (d)

any persons who have filed a request for notice in the above-captioned cases pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully

submit that no further notice is necessary.

*[The Remainder of This Page is Intentionally Left Blank]*

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting this Application, (b) authorizing the Debtors to retain and employ Houlihan, Lokey, Howard & Zukin Capital, Inc. in this proceeding as investment banker and financial advisor <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, and (c) granting such other and further relief as appropriate.


Dated: October 22, 2009
       Dallas, Texas

                                     **DLA PIPER LLP (US)**


                                     By:  /s/ Vincent P. Slusher
                                     Vincent P. Slusher
                                     State Bar No. 00785480
                                     vincent.slusher@dlapiper.com
                                     DLA Piper LLP (US)
                                     1717 Main Street, Suite 4600
                                     Dallas, Texas 75201
                                     Telephone: (214) 743-4572
                                     Facsimile: (972) 813-6267

                                     Thomas R. Califano
                                     New York State Bar No. 2286144
                                     thomas.califano@dlapiper.com
                                     Jeremy R. Johnson
                                     New York State Bar No. 4307617
                                     jeremy.johnson@dlapiper.com
                                     DLA Piper LLP (US)
                                     1251 Avenue of the Americas
                                     New York, New York  10020-1104
                                     Tel:  (212) 835-6000
                                     Fax:  (212) 835-6001

                                     Proposed Attorneys for the Debtors
                                     and Debtors in Possession

EAST\42436424.7