Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
thomas.califano@dlapiper.com
Jeremy R. Johnson
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 835-6000
Fax: (212) 835-6001

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 09-37010 (SGJ)** |
| | § | |
| **ERICKSON RETIREMENT** | § | **CHAPTER 11** |
| **COMMUNITIES, LLC,** *et al.*[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | |
| | § | |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING COMMITMENT FEE,
BREAK-UP FEE, EXPENSE REIMBURSEMENT PAYMENTS TO PLAN SPONSOR
AND SHOP PROVISIONS; (II) APPROVING BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (III) APPROVING
PROCEDURES FOR THE CURE, ASSUMPTION AND ASSIGNMENT OF
CONTRACTS; (IV) SCHEDULING HEARINGS TO CONSIDER (A) APPROVAL OF
THE DISCLOSURE STATEMENT AND APPROVAL OF SOLICITATION
PROCEDURES AND (B) CONFIRMATION OF PLAN OF REORGANIZATION; (V)
ESTABLISHING DEADLINES TO OBJECT TO THE DISCLOSURE STATEMENT
AND PLAN OF REORGANIZATION; AND (VI) GRANTING RELATED RELIEF**

---

1 The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") by their proposed attorneys, DLA Piper LLP (US) ("DLA Piper"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363(b), 365, 503(b)(1), and 1128 of title 11 of the Untied States Code (the "Bankruptcy Code") and Rules 2002, 2017, 3017, 3020, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (I) approving commitment fee, break-up fee, expense reimbursement payments to plan sponsor and shop provisions; (II) approving bidding procedures for the sale of substantially all of the Debtors' assets; (III) approving procedures for cure, assumption and assignment of contracts; (III) scheduling hearings to consider (a) approval of the Disclosure Statement and solicitation procedures and forms of ballots and (b) confirmation of the Plan of Reorganization; (IV) establishing deadlines to object to the Disclosure Statement and Plan of Reorganization; and (V) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 365, 503(b)(1), and 1128.

## Preliminary Statement

4.      Debtors file this Motion to seek approval of a process to market the opportunity for a sponsor to fund a chapter 11 plan of reorganization (the "Plan").  Based on the unique nature and sensitivity of the Debtors' business, described herein, and the fact that their business is regulated, it is vital that the Debtors exit chapter 11 as expeditiously as possible.  Prepetition,

the Debtors, with their advisors, marketed the Debtors' assets to over 80 potential investors. As a result of these marketing efforts, the Debtors have secured a proposal from Redwood-ERC Senior Living Holdings, LLC, Redwood-ERC Management, LLC, Redwood-ERC Development, LLC, Redwood-ERC Properties, LLC and Redwood-ERC Kansas, LLC (collectively, "Redwood") to act as a potential purchaser and Plan sponsor. Under the proposed sale terms, Redwood would purchase substantially all of the Debtors' assets in exchange for consideration in the amount of $100,000,000 in cash and notes, the assumption of campus-level debt of approximately $500 million, the commitment of $50 million in new capital for future development and working capital and certain other consideration, as described in the Plan, which will be filed not more than ten (10) days after entry of an Order approving this Motion. The Debtors and their advisors will continue to market the Debtors' assets postpetition to determine if a higher and better offer may be obtained. The Debtors will file a plan of reorganization to implement the Redwood transaction or such other higher or better offers that may be received through the marketing process described herein. To that end, the Debtors wish to establish a process whereby both the marketing and sale of the Debtors assets and confirmation of a plan of reorganization go forward simultaneously.

### Background

5.     On October 19, 2009 (the "Petition Date"), the Debtors commenced these cases by each filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.     The Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7.     No trustee, examiner or committee of creditors has been appointed in these cases.

8.     The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the Affidavit of Paul B. Rundell in Support of First Day Motions (the "<u>Rundell Affidavit</u>"), and is incorporated herein by reference.

**<u>Sale Process</u>**

9.     Prior to the Petition Date, the Debtors engaged in extensive marketing efforts to identify potential investors ("<u>Potential Purchasers</u>") to purchase substantially all of the Debtors' assets, operations and business (the "<u>Assets</u>") or support a plan of reorganization as the plan sponsor.  In March 2009, the Debtors retained Houlihan, Lokey, Howard & Zukin Capital, Inc. ("<u>Houlihan Lokey</u>") to, among other things, evaluate strategic alternatives and assist in the negotiations with their lenders, and in September 2009, Houlihan Lokey commenced a comprehensive marketing process contacting over 80 parties regarding the sale of the Assets.

10.     Redwood submitted a proposal (the "<u>Redwood LOI</u>") to purchase the Assets in a letter of intent dated September 12, 2009.  The Debtors executed the Redwood LOI on September 17, 2009.  The Debtors' board of directors approved the sale on September 19, 2009.  On October 19, 2009, after extensive negotiations, the Debtors and Redwood agreed to the terms of the Master Purchase and Sale Agreement (the "<u>Master Purchase and Sale Agreement</u>"), a copy of which is attached hereto as <u>Exhibit A</u>.  As part of the marketing process, the Debtors and their professionals have met with several additional Potential Purchasers which have expressed a high level of interest in the Assets.  The Debtors have provided each of the interested parties with marketing materials and access to an electronic data room.  Several of the interested parties have held meetings with ERC's management and/or National Senior Campuses, Inc. ("<u>NSC</u>").  Houlihan Lokey will work with the Debtors to continue to negotiate with and engage interested

parties until the solicitation period provided in the proposed timeline, as described below, has expired.

11. Upon the filing of this Motion, the Debtors and Redwood have agreed to waive section 7.5(a) of the Master Purchase and Sale Agreement so that the Debtors may resume marketing the Debtors' Assets until the Bid Deadline.

## Proposed Sale Terms

12. The Debtors believe the terms of the Redwood Master Purchase and Sale Agreement are in the best interests of their creditors and other constituencies. Under the Redwood Master Purchase and Sale Agreement, Redwood will acquire the Assets in accordance with the terms of the Master Purchase and Sale Agreement and a plan of reorganization, in consideration for cash, assumed debt and other consideration. As part of the Plan, most of the debt at the project level will be restructured. Thus the Redwood transaction is best accomplished through a plan of reorganization as opposed to a sale under section 363 of the Bankruptcy Code. These chapter 11 cases were commenced to effectuate the Debtors' sale and restructuring.

13. As total consideration for the Assets, Redwood shall provide $100,000,000, $75,000,000 of which shall be paid in cash at the closing and the remaining $25,000,000 of which shall be represented by a promissory note and payable solely by the newly formed ManagementCo, secured by a first-priority lien on the assets of ManagementCo, having a five-year amortization and three-year maturity with an automatic two-year extension based on specific mutually-agreed debt service coverage covenants being satisfied, as described more fully in the Plan and the Disclosure Statement. The Purchase Price shall be reduced by the amount, if any, by which the cash and cash equivalents included in the Assets are less than $10,000,000.

Additionally, Redwood will assume approximately $500 million of campus-level debt and commit $50 million in new capital for future development (the "Purchase Price").

14.     The Debtors propose to sell, assign, and transfer ownership of the Assets to Redwood free and clear of all liens, claims and interests, except for certain permitted encumbrances. Within ten (10) days of the entry of an Order approving this Motion, the Debtors will file the Plan and Disclosure Statement, reflecting the terms of the Master Purchase and Sale Agreement, with Redwood as a plan sponsor.

15.     The Redwood Master Purchase and Sale Agreement provides for certain protections to Redwood for agreeing to serve as the stalking horse bidder including a break-up fee, commitment fee and expense reimbursement.

16.     Simultaneously with the execution of the Master Purchase and Sale Agreement, the Debtors were required to pay a commitment fee of $1,500,000 (the "Commitment Fee") to Redwood. It is contemplated that that amount will actually be paid upon entry of the Bid Procedures Order. This amount shall be credited against the Break-Up Fee (as defined below).

17.     Pursuant to the Redwood Master Purchase and Sale Agreement, the Debtors shall pay Redwood a $1,500,000 break-up free (the "Break-Up Fee") upon the occurrence of certain triggering events, including:

> (i)     Redwood terminates the Master Purchase and Sale Agreement on account of a breach by the Debtors;
>
> (ii)    Redwood terminates the Master Purchase and Sale Agreement pursuant to Section 9.1(b)(ii), (iii), (iv), (v), (vi), (vii), (viii) or (ix) of the Master Purchase and Sale Agreement; or
>
> (iii)   any Alternative Transaction (as defined in the Master Purchase and Sale Agreement is consummated on or before September 12, 2010.

18.     The Break-Up Fee shall be increased by $1,500,000 (to a total of $3,000,000) in the event that the Debtors close a transaction relating to the acquisition of all or a material

portion of the Debtors' Assets by any party other than Redwood, whether through direct purchase, merger, consolidation or other business combination, before September 12, 2010. Pursuant to section 503(b)(1) of the Bankruptcy Code, the Break-Up Fee will be allowed and paid as an administrative expense claim.

19. Pursuant to the Redwood LOI and in anticipation of the filing of these cases, the Debtors have paid to Redwood $500,000 for its reasonable, documented out-of-pocket expenses (the "Expense Reimbursements").

20. The Debtors and their advisors may only solicit interest from potential purchasers (the "Shop Provision") and will accept bids from potential purchasers until twenty (20) days after the filing of the Plan and Disclosure Statement (the "Bid Deadline").

21. After the Petition Date, the Debtors, with the assistance of Houlihan Lokey, will continue to market the Assets through a plan of reorganization up to the Bid Deadline. If a higher and better offer that provides aggregate consideration that is $4,000,000 (accounting for the $3,000,000 Break-Up Fee, $500,000 Expense Reimbursement, and an overbid of $500,000) greater than the Master Purchase and Sale Agreement, in the business judgment of the Debtors, is submitted, the Debtors will conduct an auction (the "Auction"). The Debtors will consider proposals which are different from the Redwood Proposal's structure but provide the Debtors with a higher value. The Debtors will seek Court approval of the sale of the Assets to the bidder with the highest and best offer (the "Successful Bidder") and confirmation of a plan of reorganization sponsored by the Successful Bidder. If, in the business judgment of the Debtors, Redwood's offer remains the highest and best offer, Redwood will be the Successful Bidder.

**Relief Requested**

22.     By this Motion, the Debtors seek entry of an order (I) approving commitment fee, break-up fee, expense reimbursement payments to plan sponsor and shop provisions; (II) approving bidding procedures for the sale of substantially all of the Debtors' assets; (III) approving procedures for cure, assumption and assignment of contracts; (IV) scheduling hearings to consider (a) approval of the Disclosure Statement and solicitation procedures and (b) confirmation of the Plan of Reorganization; (V) establishing deadlines to object to the Disclosure Statement and Plan of Reorganization; and (VI) granting related relief.

23.     The following is the proposed timeline setting forth the proposed timeline:

| Proposed Timeline | |
|---|---|
| Redwood Plan and Disclosure Statement Filed | Not more than ten (10) days after entry of an Order approving this Motion |
| End of the Debtors' Marketing Period and Bid Deadline | Twenty (20) days after the filing of the Plan and Disclosure Statement |
| Consent Must Be Obtained From NSC and the Lenders for Qualified Bidder(s) | Two (2) days prior to the Auction |
| Debtors Announce Qualified and Lead Bids | One (1) day prior to the Auction |
| Auction Date | Ten (10) days after the Bid Deadline |
| Amended Disclosure Statement and Plan Filed, if Applicable | Five (5) days after the Auction Date |
| Debtors File Cure Schedule | Ten (10) days after the Amended Disclosure Statement and Plan Filed |
| Disclosure Statement Objection Deadline (if any) | TBD |
| Disclosure Statement Reply Date (if any) | TBD |
| Disclosure Statement Hearing | TBD |
| Commencement of Solicitation | TBD |
| Voting Deadline | TBD |
| Plan Confirmation Objection Deadline (if any) | TBD |
| Plan Confirmation Reply Date (if any) | TBD |
| Plan Confirmation Hearing | TBD |

24.     Debtors and Redwood, as plan sponsor, will file a plan of reorganization (the "Redwood Plan") and disclosure statement within ten (10) days of entry of the Order approving this Motion.

**Proposed Bidding Procedures**

25.     The Debtors request that the Court approve the proposed bidding procedures (the "Bidding Procedures") for the sale of substantially all of the Debtors' Assets, substantially in the

form attached as Exhibit A to the Order attached hereto as <u>Exhibit B</u>. The following is a summary of the Bidding Procedures.

**<u>Bid Deadline</u>.**

26.     By the Bid Deadline, a potential bidder that desires to make a bid is required to deliver written copies of its bid by Certified Mail and email to:

> (i)     Erickson Retirement Communities, LLC, 701 Maiden Choice Lane, Baltimore, MD 21228 (Attn: Gerald Doherty);
>
> (ii)    the Debtors' attorneys, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Thomas R. Califano) & DLA Piper LLP (US), 1717 Main Street, Suite 460, Dallas, Texas 75201 (Attn: Vincent P. Slusher);
>
> (iii)   the Debtors' financial advisor, Houlihan Lokey, 123 North Wacker Drive, 4th Floor, Chicago, IL 60606 (Attn: David Watson); and
>
> (iv)    the Debtors' restructuring advisor, Alvarez & Marsal Healthcare Industry, LLC, 600 Lexington Avenue, 6th Floor, New York, New York 100022 (Attn: Paul Rundell).

27.     The Debtors will deliver to Redwood copies of all bids submitted to them for the purchase of any of the Assets, in each case substantially contemporaneously with the Debtors' receipt thereof.

**<u>Due Diligence</u>**

28.     The Debtors may afford any potential bidder the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline. The Debtors either have provided or intend to use reasonable efforts to provide to all potential bidders, certain information in connection with the proposed sale, including, among other things, these proposed Bidding Procedures and the Master Purchase and Sale Agreement,

but the failure to deliver any such information to any potential bidders shall not affect the validity, effectiveness or finality of the Auction or this sale process through a plan of reorganization. Should any potential bidder desire additional or further information, such potential bidder will be required to enter into a confidentiality agreement satisfactory to the Debtors in their business judgment. Upon execution of the confidentiality agreement, the potential bidder will be given access (through a virtual data room) to various financial data and other relevant and confidential information, subject to the Debtors right to exclude such access for competitive concerns

**Bid Requirements.**

29.     All bids must include: (a) an offer to acquire the assets in the form of the Master Purchase and Sale Agreement and Redwood Plan, marked to show any proposed changes, including all proposed schedules and exhibits thereto (the "Marked Agreements"); (b) an agreement that the potential bidder's offer is binding and irrevocable and the potential bidder agrees to be a Next Best Bidder (as defined below) until closing of a purchase of Assets by the Successful Bidder, through a plan of reorganization, to another person or entity pursuant to the Bidding Procedures; (c) a higher and better offer that provides aggregate consideration that is $4,000,000 (accounting for the $3,000,000 Break-Up Fee, $500,000 Expense Reimbursement and an overbid of $500,000) greater than the Master Purchase and Sale Agreement, in the business judgment of the Debtors (the "Initial Bid Increment"); and (d) conditions that are not less favorable to the Debtors than those provided for in the Master Purchase and Sale Agreement.

30.     Bids must be accompanied by (i) written evidence of available cash, a commitment for financing or ability to timely obtain a satisfactory commitment if selected as the Successful Bidder (provided, however, that the closing of the sale shall not be contingent in any

way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction as the Debtors may reasonably request, (ii) a representation that the potential bidder has the financial wherewithal to consummate the transactions contemplated in the Marked Agreements, and otherwise provide such other information that will allow the Debtors and their advisors to make reasonable determinations as to the proposed bidder's ability to perform, including providing evidence of its ability to provide adequate assurance of future performance of all contracts to be assumed and assigned, (iii) a stipulation or evidence that submission of the bid, execution, delivery and closing on the Marked Agreements is duly authorized and the proposed bidder has all requisite approvals from its board of directors or comparable governing body and (iv) a certified check in the amount of $5,000,000 (the "Good Faith Deposit").  Bids may not seek any transaction or break-up fee, expense reimbursement or any similar type of payment.

31.     The Good Faith Deposit shall be held by an escrow agent to be designated by the Debtors.  Good Faith Deposits of all Qualified Bidders shall be held in a separate interest-bearing account for the Debtors' benefit until closing of a purchase of Assets by the Successful Bidder.  If a Successful Bidder fails to consummate an approved sale of the Assets because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be held by the Debtors subject to a ruling by the Bankruptcy Court that the Debtors should be permitted to retain such Good Faith Deposit on account of any damages caused by such Successful Bidder's breach.  All other deposits will be returned promptly after the closing of the sale of the Assets to the Successful Bidder (or, in the case of Redwood, in accordance with the terms of the Master Purchase and Sale Agreement).  Notwithstanding anything in the Bidding Procedures to the contrary, the terms under which Redwood provided a Good Faith Deposit and

the terms of its use, release and return to the Redwood shall be governed by the Master Purchase and Sale Agreement.

32.     Each potential bidder must obtain consents from NSC and the prepetition corporate revolver lenders and the senior secured project lenders (the "Lenders") to enter into a sale of the Assets and plan of reorganization by two (2) days prior to the Auction in order to be a Qualified Bidder.

33.     Each potential bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making any such bids; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Bidding Procedures or, as to the Successful Bidder, the purchase agreement with such Successful bidder.

34.     The Debtors and their professionals, in consultation with NSC, the not for profit community operators (the "NFPs"), the Lenders, and any statutory committees, will review each bid received from a potential bidder to ensure that it meets the requirements set forth above.  A bid received from a potential bidder that meets the above requirements and subject to the business judgment of the Debtors will be considered a "Qualified Bid" and each potential bidder that submits a Qualified Bid will be considered a "Qualified Bidder."  The Master Purchase and Sale Agreement is a Qualified Bid and Redwood is a Qualified Bidder for all purposes and requirements pursuant to the Bidding Procedures.  The Debtors may value a Qualified Bid based

upon any and all factors that the Debtors deem pertinent, including, among others: (a) the amount of the Qualified Bid; (b) the risks and timing associated with consummating a transaction with the potential bidder; (c) the risks associated with any non-cash consideration in any Qualified Bid; (d) any excluded assets or executory contracts and leases; and (e) any other factors that the Debtors, in consultation with NSC, the NFPs, the Lenders, and any statutory committees, may deem relevant to the sale. The Debtors, in their business judgment, and in consultation with NSC, the NFPs, the Lenders, and any statutory committees, reserve the right to reject any bid, without limitation.

**Auction Participation.**

35.     Unless otherwise ordered by the Court for cause shown, only Redwood and each Qualified Bidder will be eligible to participate at the Auction described below. At least one business day prior to the Auction, each potential bidder that has submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction. The Debtors will promptly thereafter inform in writing each potential bidder that has expressed its intent to participate in the Auction of the identity of all other potential bidders that may participate in the Auction. If the Seller does not receive any Qualified Bids other than from Redwood, it will not hold an Auction and Redwood will be named the Successful Bidder.

**Auction.**

36.     If more than one Qualified Bid has been received, the Debtors will conduct the Auction for the sale of the Assets and plan sponsorship. The Debtors propose that the Auction take place at 10:00 a.m. (EST) ten (10) days after the Bid Deadline at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders.

The bidding shall start at the amount offered in the highest Qualified Bid, plus $500,000 and will continue in increments of at least $500,000, in cash, until the bidding ceases. Redwood has the right to credit bid $3,500,000, which equals the sum of the Break-Up Fee and the maximum Expense Reimbursement. The Debtors may alter the Bidding Procedures at the Auction if, in its reasonable judgment, in consultation with NSC, the NFPs, the Lenders, and any statutory committees, such alteration will better promote the goals of the Auction. Immediately prior to the conclusion of the Auction, the Debtors and their professionals, in consultation with NSC, the NFPs, the Lenders, and any statutory committees, will: (a) review each bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; (b) determine the highest or best bid for the Debtors' Assets at the Auction (the "Successful Bid"); and (c) notify all potential bidders at the Auction, prior to its conclusion, of the name of the Successful Bidder.

37.     After determining the Successful Bid, the Debtors may determine, in their reasonable business judgment, in consultation with NSC, the NFPs, the Lenders, and any statutory committees, which Qualified Bid is the next best bid (the "Next Best Bid"). If the Successful Bidder does not close the sale by the date agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized, but not required, to close with the party that submitted the Next Best Bid (the "Next Best Bidder"), without a further court order. The Seller acknowledges that (a) with respect to Redwood, unless the Master Purchase and Sale Agreement is modified as a result of actions taken by Redwood at the Auction, Redwood has no obligation to serve as the Next Best Bidder but (b) with respect to any Qualified Bidder other than Redwood, such Qualified Bidder shall be required to serve as the Next Best Bidder. The Debtors

may consider a Qualified Bidder's willingness to serve as the Next Best Bidder in determining the highest or best bid for the assets at the Auction.

38.     All bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to jury trial in connection with any disputes relating to the Auction, any plan of reorganization, and the construction and enforcement of the Master Purchase and Sale Agreement.

**Amendment of Plan and Disclosure Statement.**

39.     Within five (5) days after the Auction the Debtors will announce the Successful Bidder and the Debtors and the Successful Bidder will file an amended Plan and Disclosure Statement.  If Redwood is the Successful Bidder and no material changes have been made to the Plan and Disclosure Statement, no amendment will be filed.  As discussed below, the Debtors will request that hearings to (i) approve any disclosure statement (the "<u>Disclosure Statement Hearing</u>") be scheduled for a date to be determined by the Court and (ii) confirm any plan of reorganization (the "<u>Confirmation Hearing</u>") be scheduled for a date to be determined by the Court.

**Break-Up Fee and Expense Reimbursement**

40.     In the event that the Master Purchase and Sale Agreement is terminated under the circumstances described in the Master Purchase and Sale Agreement to the extent approved in the Bidding Procedures Order, the Debtors shall promptly, and in any event within one (1) Business Day, pay Redwood the Break-Up Fee and the Expense Reimbursement as, when and to the extent provided in the Master Purchase and Sale Agreement.

41.     The Debtors' obligation to pay the Break-Up Fee and the Expense Reimbursement shall be the joint and several obligation of the Debtors, shall survive termination of the Master

Purchase and Sale Agreement, dismissal or conversion of any of the Bankruptcy Cases, and confirmation of any plan of reorganization or liquidation, and shall constitute an administrative expense of the Debtors under Sections 503(b) and 507(a) of the Bankruptcy Code.

**No Fees for Potential Bidders or Qualified Bidders.**

42.     Except for Redwood, potential bidders or Qualified Bidders shall not be allowed any breakup, termination or similar fee.  Moreover, neither the tendering of a bid nor the determination that a bid is a Qualified Bid shall entitle a potential bidder or Qualified Bidder to any breakup, termination or similar fee and all potential bidders and Qualified Bidders waive any right to seek a claim for substantial contribution.

43.     The Debtors believe that the proposed Bidding Procedures provide an appropriate framework for proposing a plan of reorganization that will result in the sale of substantially all of the Debtors' Assets and will enable the Debtors and other parties in interest to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors.

**Proposed Procedures for Cure, Assumption and Assignment of
Executory Contracts and Unexpired Leases Related to the Assets**

44.     In connection with the proposed sale, the Debtors will assume and assign certain executory contracts and unexpired leases to the Successful Bidder.  It is necessary to (i) establish a process to determine the Debtors' cure obligations, if any, pursuant to Bankruptcy Code section 365 and (ii) establish procedures for counterparties' objection to any assumption and assignment of executory contracts and unexpired leases ("Assumption and Assignment Procedures").  The Debtors propose the following Assumption and Assignment Procedures:

**Notice of Cure Procedures**

45.     Within ten (10) days after the Debtors' announcement of the Successful Bidder, the Debtors will file a schedule listing the cure amounts for each contract and lease it intends to assume and assign to the Successful Bidder (the "Cure Schedule") and will serve the Cure Schedule on the parties to those contracts and leases.

**Notice of Adequate Assurance Package**

46.     Upon written request to the Debtors' counsel by a party to a contract or lease proposed to be assigned to the Successful Bidder, the Debtor will provide evidence of the Successful Bidder's ability to provide adequate assurance of future performance on such contracts or leases.

**Objections to Cure Amounts or Adequate Assurance**

47.     Any objections to the assumption and assignment of any contract or lease identified on the Cure Schedule, including, without limitation, to the cure amount or the adequacy of the assurance of future performance, must be in writing, filed with the Court and served on the following parties (the "Assumption Objection Parties") no later than twenty (20) business days after the filing of the Cure Schedule.  The Assumption Objection Parties are as follows:

  (i)     Erickson Retirement Communities, LLC, 701 Maiden Choice Lane, Baltimore, MD 21228 (Attn: Gerald Doherty);

  (ii)    the Debtors' attorneys, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Thomas R. Califano) & DLA Piper LLP (US), 1717 Main Street, Suite 460, Dallas, Texas 75201 (Attn: Vincent P. Slusher);

  (iii)   the Debtors' financial advisor, Houlihan Lokey, 123 North Wacker Drive, 4th Floor, Chicago, IL 60606 (Attn: David Watson);

<table>
<tr><td>(iv)</td><td>the Debtors' restructuring advisor, Alvarez & Marsal Healthcare Industry, LLC, 600 Lexington Avenue, 6th Floor, New York, New York 100022 (Attn: Paul Rundell);</td></tr>
<tr><td>(v)</td><td>the Successful Bidder;</td></tr>
<tr><td>(vi)</td><td>United States Trustee for the Northern District of Texas, 1100 Commerce Street, Room 976, Dallas, TX 75242.</td></tr>
</table>

**Resolution of Objections**

48.     The Debtors intend to cooperate with the counterparties to contracts and leases to attempt to reconcile any difference in a particular cure amount. If no objections are timely filed, then the cure amounts set forth in the Cure Schedule shall be binding upon the nondebtor party to the lease or contract for all purposes in this case and will constitute an assumed final determination of total cure amounts required to be paid by the Debtors in connection with the assumption of such contract or lease and assignment to the Successful Bidder. In addition, each nondebtor party to a contract and lease on the Cure Schedule that fails to timely object to the proposed assumption and assignment of a contract or lease shall be forever barred from objecting to the assumption by the Debtor and assignment to the Successful Bidder of such contract or lease.

49.     If a timely objection is filed and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Disclosure Statement Hearing, or, at the Debtors' option, at a later hearing, and if the Debtor and the Successful Bidder elect to close prior to such hearing, the cure amount as set forth on the Cure Schedule shall be deposited into escrow. If the Debtor and the Successful Bidder elect to close, the pendency of a dispute relating to cure amounts will not prevent or delay the closing of any sale of the Assets or confirmation of a plan of reorganization, including the assumption and assignment of contracts and leases not subject to an objection.

**<u>Basis for Relief</u>**

**A.      Approval of the Commitment Fee Break-Up Fee and Expense Reimbursement Is Warranted and Is in the Best Interests of the Debtors and Their Estates.**

50.      Buyers of assets often require the seller to offer break-up fees and expense reimbursement to compensate them for lost opportunity costs and for the time, resources and effort spent in the event the agreement is terminated.  Break-up fees are "important tools to encourage bidding and to maximize the value of the debtor's assets."  <u>The Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)</u>, 147 B.R. 650 , 659 (S.D.N.Y. 1992).  Historically, bankruptcy courts have approved incentives similar to those requested herein solely by reference to the business judgment rule, which limits judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment.  <u>See</u> <u>In re ASARCO LLC</u>, Case No. 05-21207 (RSS) (Bankr. S.D. Tex. July 1, 2008); <u>In re Adelphia Commc'ns, Corp.</u>, 323 B.R. 345, 392 (Bankr. S.D.N.Y. 2005); <u>In re Marrose Corp.</u>, Case Nos. 89-12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15,1992) ("[bidding incentives] are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); <u>see also</u> <u>In re Hupp Indus., Inc.</u>, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's (i.e. 'stalking horse's') due diligence.").

51.      Prepetition, the Debtors consulted with their financial advisors, other professionals, and other interested parties to explore strategic alternatives with respect to restructuring the Debtors' businesses, including a potential sale of the Assets.  The Debtors have determined, after exercise of due diligence and consultation with their financial advisors, and in

the exercise of their sound business judgment, that entry into the Master Purchase and Sale Agreement with Redwood is in the best interest of the Debtors' estates and their creditors. The Debtors submit that entering into a stalking horse agreement is in the best interest of the estates because it ensures an expedited sale to a contractually committed buyer at a price the Debtors believe is fair, while also providing the Debtors a chance to enhance the price through further marketing of the Assets. The speed at which the Debtors are able to locate a seller and exit bankruptcy is of the utmost importance to the Debtors residents and future of the Debtors operations. A longer marketing period would create greater uncertainty among the Debtors' residents and prospective residents, delay the reorganization and would not likely increase the value of the Debtors' estates. Notwithstanding the Redwood Master Purchase and Sale Agreement, the Debtors intend to aggressively solicit additional bids from potential purchasers. The Debtors will use their business judgment to select the bid that results in the highest and best offer. Even if Redwood is entitled to a Break-Up Fee and is not the Successful Bidder, the Debtors will have benefited from the receipt of a higher and better offer, thereby maximizing the value of the Debtors' estates. Accordingly, the Debtors request authority, in the exercise of their business judgment, to offer Redwood a Break-Up Fee of $3,000,000 and Expense Reimbursement, not to exceed $500,000 and pay Redwood a Commitment Fee of $1,500,000 (which will be credited against the Break-Up Fee).

52.     "A break-up fee should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser. When reasonable in relation to the bidder's efforts and to the magnitude of the transaction, break-up fees are generally permissible." Integrated Resources, Inc., 147 B.R. at 662. Numerous bankruptcy courts, including those in this District, have approved protections

similar to the proposed Break-up Fee and Expense Reimbursement as reasonable and consistent with the type and range of bidding protections typically approved. See In re Vartec Telecom, Inc., Case No. 04-81694 (Bankr. N.D. Tex. November 1, 2004) (HDH) (approving break-up fee equal to 3.25%); In re ASARCO LLC, Case No. 05-21207 (RSS) (Bankr. S.D. Tex. July 1, 2008) (approving a break-up fee of 2% and expense reimbursement in the amount of $10 million); In re Mattress Discounters Corp., Case No. 08-21642 (Bankr. D. Md. September 10, 2008) (allowing debtor to enter into Master Purchase and Sale Agreement including a 5.5% break-up fee); In re Radnor Holdings, Case No. 06-10110 (Bankr. D. Del. Sept. 22, 2006) (approving aggregate fee and expense reimbursement of 3%); In re Envtl Elements Corp., Case No. 05-25073 (Bankr. D. Md. July 1, 2005) (issuing order authorizing debtor to enter into Master Purchase and Sale Agreement including 3% break-up fee as well as expense reimbursement); In re Glass Group, Inc., Case No. 05-10532 (KG) (Bankr. D. Del. Feb. 28, 2005) (authorizing debtor to enter into stalking horse agreement providing break-up fee up to 3%); In re GT Brands Holdings LLC, Case No. 05-15167 (PCB) (Bankr. S.D.N.Y. July 28, 2005) (approving break-up fee equal to 3.13%); In re ATA Holdings Corp., Case No. 04-19866 (BHL) (Bankr. S.D. Ind. Nov. 19, 2004) (approving break-up fee equal to 3.71%); In re Genuity Inc., Case No. 02-43558 (PCB) (Bankr. S.D.N.Y. Dec. 16, 2002) (approving break-up fee equal to 4.13%); In re Ameriserve Food Distrib., Inc., Case No. 00-00358 (PJW) (Bankr. D. Del. Jan. 31 2000) (court approved break-up fee of 3.6% or $4 million in connection with a $110 million sale of assets); In re Fruit of the Loom, Inc., Case No. 99-4497 (PJW) (Bankr. D. Del. 1999) (authorizing break-up fee equal to 3.59%); In re Graham-Field Health Prods., Inc., Case No. 99-4457 (MFW) (Bankr. D. Del. 1999) (authorizing break-up fee equal to 4.65%).

53.     The amount of the proposed Commitment Fee and Break-Up Fee is fair and reasonable under the circumstances, and is well within the range of fees typically paid in a bankruptcy setting.  The proposed Commitment Fee, Break-Up Fee and Expense Reimbursement are reasonable, appropriate, and within the Debtors' sound business judgment.  They enable the Debtor to ensure the sale of the Assets to a contractually committed bidder at a fair price while, at the same time, providing the Debtors with the potential of even greater benefit to the estate. The Commitment Fee was agreed to by the Debtors in consideration for the time and effort exerted by Redwood prior to the Petition Date.  Accordingly, the Commitment Fee, Break-Up Fee, and Expense Reimbursement provisions should be approved.

**B.     The Shop Provisions Are Reasonable and Should Be Approved.**

54.     Covenants limiting a seller's ability to solicit further bids are common in merger and acquisition transactions outside of bankruptcy and are generally valid.  See Paramount Commc'ns, Inc. v. QVC Network Inc., 637 A.2d 34, 51 (Del. 1994); Kysor Indus. Corp. v. Margaux, Inc., 674 A.2d 889, 896-97 (Del. Super. Ct. 1996) ("No-shop clauses are not per se invalid.").  Similarly, non-solicitation provisions generally are approved in connection with a bankruptcy sale process.  See, e.g., In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Oct. 22, 2007) (approving a no-shop provision finding that the provision was "fair, reasonable and appropriate and is designed to maximize the value of the [d]ebtors' estate."); In re Global Crossing, Ltd., 295 B.R. 726 (Bankr. S.D.N.Y. 2003) (authorizing debtors to enter into an amendment to a purchase agreement containing both a no-shop provision and a carve out provision for communication required for compliance with fiduciary duties); In re USGen New England, Inc., Case No. 03-30465 (Bankr. D. Md. July 8, 2003) (approving sale agreement that limited period of time in which debtor could solicit competing offers); In re Crowthers McCall Pattern, Inc., 114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving agreement

containing a window-shop provision preventing the debtor from soliciting offers "except as required pursuant to ... fiduciary duties); <u>In re Integrated Res., Inc.</u>, 147 B.R. at 659 (affirming a decision approving an arrangement containing a window-shop provision).

55.     The Shop Provisions contributed to Redwood's agreement to serve as a stalking horse and the purchase price offered by Redwood.  The Shop Provisions allow the Debtors and their advisors to continue to solicit alternative proposals within the time frame specified.  The Debtors and their advisors began the marketing process in mid-September and believe that an additional 30 days is sufficient to conduct a comprehensive marketing process.  Importantly, the Shop Provisions limit the time that the Debtors will spend in bankruptcy which is vital to the preservation of enterprise value under Erickson's entrance-fee based model, which requires prospective residents to post entrance deposits of between approximately $100,000 and $400,000.  A longer marketing period will create greater uncertainty among the Debtors' residents and prospective residents, delay the reorganization and would not likely increase the value of the Debtors' estates.

56.     The Shop Provisions are substantially similar to the shop covenants and provisions approved by other courts.  <u>See</u>, <u>In re Adelphia Commc'ns Corp.</u>, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Oct. 22, 2007); <u>In re Global Crossing, Ltd.</u>, 295 B.R. 726 (Bankr. S.D.N.Y. 2003); <u>In re USGen New England, Inc.</u>, Case No. 03-30465 (Bankr. D. Md. July 8, 2003); <u>In re Crowthers McCall Pattern, Inc.</u>, 114 B.R. 877 (Bankr. S.D.N.Y. 1990); <u>In re Integrated Res., Inc.</u>, 147 B.R. at 659.  Further, the Shop Provisions are proper and will not negatively impact the Debtors' ability to solicit a higher and better offer, particularly considering the extensive marketing of the Assets prior to the Petition Date.  Accordingly, the Shop Provisions should be approved.

## C. The Proposed Procedures for Cure, Assumption and Assignment of Executory Contracts and Unexpired Leases Related to the Assets Are Appropriate.

57.     To facilitate the sale of the Assets through a plan of reorganization, the Debtors also seek authority to assume and assign certain contracts and leases to the Successful Bidder. Bankruptcy Code section 365[2] "allows debtors to pick and choose among their agreements and assume those that benefit their estates and reject those that do not." In re Topco, Inc., 894 F.2d 727, 741 (5th Cir. 1990). Under section 365, the proposed assumptions and assignments are authorized provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. See 11 U.S.C. §§ 365(a), (b)(l), (f)(2).

58.     As discussed above, each counterparty to a contract or lease that a Debtor seeks to assume will receive a copy of the Cure Schedule notifying them of how the Debtor proposes to cure any defaults under the contract or lease, and, upon written request, provide information regarding how future performance under the contract will be assured. Each such counterparty will have an opportunity to object to the adequacy of the cure or the assurance of future performance.

59.     The ability of the Debtors to assume and assign executory contracts greatly enhances the value of the Debtors' estates. The Purchase Price reflects the understanding that

---

2 Section 365 of the Bankruptcy Code provides as follows:
(a) Except as provided in . . . subsections (h), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(l) If there has been a default in an executory contract or unexpired lease of the debt the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:

(A) cures, or provides adequate assurance that the trustee will promptly cure such default . . .;

(B) compensates or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease. . . .

the Debtors would assume and assign all contracts that Redwood or any other Successful Bidder may wish to have assumed and assigned. Accordingly, the Court should approve the proposed procedures for cure, assumption and assignment of executory contracts and unexpired leases related to the Assets.

**D.**     **Scheduling the Disclosure Statement and Plan Confirmation Hearings.**

60.     A court shall hold a hearing on at least twenty-five (25) days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017(a). "After notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. 1128(a). In addition, Bankruptcy Rule 3017(c) provides that "on or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of the plan. Fed. R. Bankr. P. 3017(c).

61.     The Debtors respectfully request that the Court schedule the Disclosure Statement Hearing and the Plan Confirmation Hearing. The schedule and the relief sought herein will assist in the expeditious confirmation of the Plan while providing adequate notice to, and protecting the rights of all parties in interest. In addition, it is appropriate that a scheduling order be entered at this time so that parties in interest may be informed as promptly as possible of the anticipated scheduling of, events preceding confirmation of the Plan. No party in interest will be prejudiced by the relief requested herein because the proposed schedule affords all parties in interest sufficient time to evaluate and, if necessary, file an objection to the Plan and the Disclosure Statement prior to the proposed hearings thereon.

**E.**     **Deadline and Procedures for Objections to the Disclosure Statement and Plan.**

62.     Bankruptcy Rule 2017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(l) authorizes the Court to fix a time for filing objections to a plan of reorganization. Further, Bankruptcy Rule 2002(b)

requires at least twenty-five (25) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.

63.     The Debtors respectfully request that the Court set dates as the last date to file objections to approval of the Disclosure Statement (the "Disclosure Statement Objection Deadline") and the last date to file objections to confirmation of the Plan (the "Plan Objection Deadline").  The dates should provide creditors and holders of equity interests with the required twenty-five (25) days' notice of the deadline for filing objections to the Disclosure Statement and the Plan, while still affording the Debtors and other parties in interest time to file a responsive brief and, if possible, resolve any objections received.  The Debtors further request that the Court direct that any objections to the Disclosure Statement and/or Plan must be in writing, filed with the Clerk of the United States Bankruptcy for the Northern District of Texas together with proof of service thereof, set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of the Debtors, and state with particularity the legal and factual basis for such objection.  Any such objections should be served on the following so as to be received no later than 4:00 p.m. prevailing Central time on the respective Disclosure Statement Objection Deadline or the Plan Objective Deadline: (i) Erickson Retirement Communities, LLC, 701 Maiden Choice Lane, Baltimore, MD 21228 (Attn: Gerald Doherty); (ii) the Debtors' attorneys, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Thomas R. Califano) & DLA Piper LLP (US), 1717 Main Street, Suite 460, Dallas, Texas 75201 (Attn: Vincent P. Slusher); (iii) the Debtors' financial advisor, Houlihan Lokey, 123 North Wacker Drive, 4th Floor, Chicago, IL 60606 (Attn: David Watson); (iv) the Debtors' restructuring advisor, Alvarez & Marsal Healthcare Industry, LLC, 600

Lexington Avenue, 6th Floor, New York, New York 100022 (Attn: Paul Rundell); and (v) the Successful Bidder;

### **Waiver of Bankruptcy Rules 6004(a),(h) and 6006(d)**

64.     The Debtors believe an efficient and expeditious implementation of the sale and Plan is in the best interests of the Debtors' creditors and other parties in interests.  Accordingly, the Debtors seek waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code under Bankruptcy Rule 6006(d).

### **Notice**

65.     Notice of this Motion has been provided to (a) the United States Trustee, (b)  the Debtors' 30 largest unsecured creditors on a consolidated basis, (c) Redwood, and (d) the Debtors' prepetition secured lenders.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, (I) approving commitment fee, break-up fee, expense reimbursement payments to plan sponsor and shop provisions; (II) approving bidding procedures for the sale of substantially all of the Debtors' assets; (III) approving procedures for cure, assumption and assignment of contracts; (III) scheduling hearings to consider (a) approval of the Disclosure Statement and solicitation procedures and forms of ballots and (b) confirmation of the Plan of Reorganization; (IV) establishing deadlines to object to the Disclosure Statement and Plan of Reorganization; and (V) granting related relief.

Dated: October 22, 2009
       New York, New York

Respectfully Submitted,

_____/s/_____

Vincent P. Slusher
State Bar No. 00785480
**DLA PIPER LLP (US)**
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

-and-

Thomas R. Califano
Jeremy R. Johnson
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Proposed Counsel for Debtors and
Debtors in Possession