**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 17, 2009**                    **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Case No. 09-37010 |
|  | § |  |
| **ERICKSON RETIREMENT** | § | **Chapter 11** |
| **COMMUNITIES, LLC, *et al.*,**[1] | § |  |
|  | § | **(Jointly Administered)** |
| Debtors. | § |  |

## FINAL ORDER (I) AUTHORIZING BORROWERS TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"), dated October 22, 2009, of Erickson Retirement

Communities, LLC and certain of its affiliates (collectively, the "**Borrowers**")[2] and each of their

---

[1] The Debtors in these chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, Warminster Campus, LP.

affiliated debtors, each as debtor and debtor in possession (collectively, the "**Debtors**"), in the above-captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules for the Northern District of Texas (the "**Local Rules**"), seeking, among other things, entry of a final order (the "**Final Order**"):

(i)      authorizing the Borrowers to obtain postpetition financing (the "**Financing**") with superpriority claims and first priority priming liens senior to any prepetition liens, pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code from ERC Funding Co. LLC (the "**Lender**");

(ii)      authorization for the Borrowers to execute and deliver final documentation substantially in the form of the Amended and Restated Super-Priority Debtor-in-Possession Loan Agreement (attached hereto as **Exhibit A**, the "**DIP Credit Agreement**")[3] and any other document requested by the Lender in connection with the Financing including, without limitation, security agreements, pledge agreements, mortgages, financing statements, deeds of trust and other security documents (along with the DIP Credit Agreement and all of the forgoing whenever executed, collectively, the "**DIP Documents**");

(iii)      granting adequate protection to prepetition secured creditors of the Borrowers (together with any of their administrative agents, collateral agents, indenture trustees or similar agents, any entity with a Lien as of the date hereof, including the NSC-NFPs (defined below),

---

[2] The Borrowers under the DIP Credit Agreement are each of the Debtors in these Cases (all terms as defined herein), except Columbus Campus, LLC; Warminster Campus GP; and Warminster Campus, LP.

collectively, the "**Prepetition Secured Lenders**") under the prepetition facilities (collectively, the "**Prepetition Secured Loans**") pursuant to Bankruptcy Code sections 361, 363 and 364;

      (iv)      scheduling a final hearing pursuant to Bankruptcy Rules 4001(b), (c) and (d); and

      (v)      granting related relief.

This Court having considered the Motion, examined the exhibits attached thereto, and having completed the Final Hearing (defined below) as provided for under section 364 of the Bankruptcy Code, Bankruptcy Rule 4001(c), and applicable Local Bankruptcy Rules and finding the Debtors provided notice as set forth below to all necessary parties and that no further notice is required:

      **BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

      A.      **Petition Date**.  Commencing on October 19, 2009 (the "**Petition Date**"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**" or this "**Court**").  The Debtors have continued in the management and operation of their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

      B.      **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

---

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the DIP Credit Agreement.

predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

C.      **Notice**. Due and appropriate notice of the Motion, the relief requested therein and the Final Hearing having been served by the Debtors on: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) counsel to the Official Creditors' Committee; (iii) counsel to the Lender; (iv) counsel to the Prepetition Secured Lenders; and (iv) any known lienholders whose liens are being primed under the Financing in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Bankruptcy Rules.

D.      **Opportunity to be Heard**. Pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") was held on or about October 29, 2009, on the Debtors' motion dated October 22, 2009 to consider entry of an Interim Order (the "**Interim Order**") and Final Order authorizing Borrowers to obtain postpetition financing on a senior secured superpriority basis pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and granting adequate protection to prepetition secured lenders pursuant to 11 U.S.C. §§ 361, 363 and 364 and granting related relief. The Bankruptcy Court entered the Interim Order on November 6, 2009.  Pursuant to the Interim Order, Borrower and Lender entered into that certain Super-Priority Debtor-in-Possession Loan Agreement, dated as of November 6, 2009, providing for a revolving credit debtor-in-possession facility to Borrower in an interim amount of Five Millions Dollars ($5,000,000).  A final hearing (the "**Final Hearing**") on the Motion was held before this Court to consider entry of the proposed Final Order on or about December 9, 2009.

E.      **Disposition**. The Motion is granted. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled for purposes of this Final Order.

F.     **Lender's Protections**.  The Lender is willing to lend money and provide other financial accommodations to the Borrowers only on the terms and conditions and with the protections provided herein and in the DIP Documents and are relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Borrowers hereunder.

G.     **Immediate Entry of the Final Order**.  The Debtors have requested that this Final Order become immediately effective and enforceable upon entry, notwithstanding any provisions that may apply in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.  The Borrowers have demonstrated good cause for the entry of this Final Order and for this Final Order to become immediately effective and enforceable upon entry.  Among other things, entry of this Final Order and the immediate effectiveness and enforceability of this Final Order upon entry will minimize the disruption of the Borrowers' business operations and permit the Borrowers to satisfy their operating expenses, will increase the possibilities for confirmation of a successful chapter 11 plan for the Borrowers, and is in the best interests of the Borrowers, their creditors, and the Borrowers' bankruptcy estates.    The terms of the borrowings and other financial accommodations authorized hereby are fair and reasonable under the circumstances and reflect the Borrowers' exercise of prudent business judgment consistent with their fiduciary duties.

H.     **Findings Regarding the Financing**.

i.     Good cause has been shown for the entry of this Final Order;

ii.     The Borrowers have an immediate need to obtain the Financing, to the extent set forth in the Budget (defined herein), to (a)  to fund the postpetition operating expenses of the Borrowers incurred in the ordinary course of business; (b) to fund the postpetition

operating expenses of the affiliated not-for-profit entity in the ordinary course of business through the Working Capital Loan; (c) to pay interest, fees and expenses in respect of the Financing to the Lender in accordance with the DIP Documents; and (d) to pay certain other costs and expenses of administration of the Cases. The access of the Borrowers to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Borrowers and to a successful reorganization of the Borrowers;

iii.    The Borrowers currently are unable to obtain financing on more favorable terms from sources other than the Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Borrowers are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Borrowers granting to the Lender, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and in the DIP Documents;

iv.    The terms of the Financing are fair and reasonable, reflect the Borrowers' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration;

v.    The Financing has been negotiated in good faith and at arm's length among the Borrowers and the Lender, and all of the Borrowers' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP

Documents, including without limitation, all loans pursuant to the DIP Documents, and any other fees, expenses or obligations under the DIP Documents (all of the foregoing collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise;

vi.    Entering into the Financing and the DIP Documents reflects the Borrowers' exercise of prudent business judgment consistent with their fiduciary duties; and

vii.    The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Final Order, the Borrowers' estates will be immediately and irreparably harmed. Consummation of the Financing in accordance with this Final Order and the DIP Documents is therefore in the best interests of the Borrowers' estates consistent with their fiduciary duties.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.    **Authorization of the Financing and DIP Documents**.

(i)    The Borrowers are hereby authorized to execute and enter into the DIP Documents, and the DIP Documents are hereby approved and incorporated herein by reference, including, without limitation:

a.  the execution, delivery and performance of the DIP Credit Agreement, any notes, security and pledge agreements, mortgages contemplated thereby and the other agreements referred to as and in the DIP Documents; and

b.  the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents not inconsistent with the terms of this Final Order for, among other things, the purpose of adding additional financial institutions as Lenders and reallocating the commitments for the Financing among any Lender (and any assignees or successors), in each case in such form as the Lender may decide.

(ii)    The Borrowers are hereby authorized to borrow money pursuant to the DIP Documents and any related promissory notes, and the Borrowers are hereby authorized to incur indebtedness up to an aggregate principal amount of $20,000,000 (the "**Facility Amount**") ($17,000,000 of which shall be available immediately and $3,000,000 of which shall be available only (i) upon further order of this Court and (ii) under the same terms and conditions as this Final Order) which shall be used as permitted under the DIP Documents and in accordance with the Budget, and to enter into any and all other and further agreements and arrangements in connection therewith and to pay interest, fees and expenses and incur DIP Obligations all in accordance with this Final Order and the DIP Documents, including, without limitation, the non-refundable payment to the Lender of the fees referred to in the DIP Documents and reasonable costs and

expenses as may be due from time-to-time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents.

(iii)    In no event will the Borrowers use any of the Facility Amount at the non-Debtor landowners at Linden Ponds, Sedgebrook and Monarch Landing or the Debtor landowners at Columbus Campus, LLC, Warminster Campus GP, LLC and Warminster Campus, LP.; and

(iv)    In furtherance of the foregoing and without further approval of this Court, each Borrower is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Borrowers' performance of their obligations under the Financing and under the DIP Documents.

2.    **Valid, Binding, Non-Avoidable Obligations**. Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute and represent valid, binding and non-avoidable obligations of the Borrowers enforceable against each Borrower party thereto jointly and severally in accordance with their terms and subject to the terms of this Final Order for all purposes during the Cases, any subsequently converted case of any Borrower under chapter 7 of the Bankruptcy Code or after the dismissal of any Case. No obligation, payment, right, transfer or grant of security or lien under the DIP Credit Agreement, the other DIP Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable

state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

3.     **Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Borrowers (the "**Superpriority Claims**") with, subject to the *pari passu* rights of the Corporate Revolver Lenders under paragraph 4(d) hereof, priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Borrowers, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Borrowers and all proceeds thereof (provided, however, that no party shall have recourse to Avoidance Actions (defined below) and proceeds thereof pursuant to this Final Order), subject only to the payment of the Carve Out to the extent specifically provided for herein.

4.     **DIP Liens**. As security for the DIP Obligations, effective and perfected upon the date of, and through, this Final Order and without the necessity of the execution, recordation of filings by the Borrowers of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control

by the Lender of, or over, any DIP Collateral (defined below), the Lender shall have a DIP Lien (as defined below) on the DIP Collateral, subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out**:**

(a)     DIP Collateral. The "DIP Collateral" shall mean all property and interests in property (whether tangible or intangible, real property or Personal Property), whether now owned or hereafter acquired by the Borrowers in or upon which a security interest, lien or mortgage is granted to Lender, whether under the DIP Credit Agreement, under any of the other DIP Documents, or under the Orders or any other order of the Bankruptcy Court, and shall be deemed to include, without limitation, management contracts, accounts, inventory, equipment, receivables, capital stock or other ownership interest in Subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof. The DIP Collateral shall also include (i) all Initial Entrance Deposits (whether existing or new) and (ii) Corporate Cash in an amount not to exceed the Corporate Cash Collateral Amount. DIP Collateral shall not include (i) the M&T/Wilmington Lenders' Collateral as defined in para. 9 of the Stipulation filed by the Debtors & M&T Bank, as agent, on December 4, 2009; and  (ii) claims and causes of action that arise as on or subsequent to the Petition Date under Chapter 5 of the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively,  "**Avoidance Actions**"), provided that (y) actions under section 549 of the Bankruptcy Code (and the proceeds thereof) shall be

included in DIP Collateral, and (z) any lien or security interest avoided pursuant to sections, 550, 551 and/or 552 shall have the same priority as such avoided lien; and

(b) <u>First Priority Priming Lien on Collateral</u>. The Lender shall be secured by a perfected security interest pursuant to section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code with a valid, binding, continuing, enforceable, fully-perfected, first priority priming lien that is, subject to the *pari passu* rights of the Corporate Revolver Lenders under paragraph 4(d) hereof, senior to any and all security interests in and liens on the DIP Collateral (which is expressly senior in priority to, without limitation, any Prepetition Secured Lenders with respect to the Prepetition Secured Loans) (collectively, the "**DIP Liens**"). The DIP Liens shall be, subject to the *pari passu* rights of the Corporate Revolver Lenders under paragraph 4(d) hereof, senior in priority to any lien, right of setoff or recoupment or any similar right (whether arising by common law, statute or contract) of any party, including, without limitation, the Prepetition Secured Lenders, regardless of whether such party is in possession of the DIP Collateral or otherwise. Notwithstanding anything herein, the DIP Liens shall be subject to the Carve Out, but, for the avoidance of doubt, payment of the Carve Out shall not reduce the amounts payable to the Lender hereunder or under the DIP Documents.

(c) <u>Adequate Protection for Prepetition Secured Lenders</u>. The Prepetition Secured Lenders will be granted a lien to the same extent, validity and priority as such Prepetition Secured Lender's lien (which, for the avoidance of doubt, shall be junior to the DIP Liens) on all of the Borrowers' assets and proceeds thereof

pursuant to the extent of any diminution (including, without limitation, any diminution on account of any payment of DIP Obligations from collateral that secures any Prepetition Secured Lender's prepetition claims) in the value of their respective collateral from the Petition Date.

(d)     The Corporate Lenders assert entitlement to $473,000 (the "**Cash Collateral Claim**") for the diminution of their collateral under the Interim Cash Collateral Order dated October 22, 2009 and final Cash Collateral Order entered on or about December 9, 2009 (collectively, the **"Cash Collateral Orders"**) arising from the use of cash during the two week period authorized under that Order, however, this Order shall not be a determination of the extent, validity, priority or amount of such claim, all rights of all parties including the Project Lenders with respect to such claim being expressly reserved.  To the extent certain Prepetition Secured Lenders are entitled to the Cash Collateral Claim, such lenders shall have a right of payment *pari passu* with the Lender with respect to the first $946,000 collected by the Lender under this Final Order (without reduction of any DIP Obligation owed to the Lender).  While this Final Order and the Cash Collateral Orders may grant to the Corporate Revolver Lenders liens and payment priority as adequate protection with certain priority of payment rights in connection with the Cash Collateral Claim, this Final Order does not grant such Prepetition Secured Lender any other rights in connection therewith, and any other right and protection granted to Lender herein shall remain unaffected by such grant of such liens. Lender shall owe no fiduciary duty to such lender on account of such adequate protection and the Corporate Revolver Lenders shall have no right hereunder to

enforce and collect on the Cash Collateral Claims from the DIP Collateral, except that Lender is obligated to promptly pay the portion of the first $946,000 collected by the Lender as described above to the Corporate Revolver Lenders upon receipt thereof by Lender other than ordinary course repayment of the Financing during the term of this Financing.

5.    **Carve Out**. means (a) professional fees (including Borrowers' professional fees) incurred and allowed in the Chapter 11 Case, (b) other professional fees and expenses incurred and allowed in the Chapter 11 Case (which, together with the fees set forth in (a) shall not exceed Six Million Dollars ($6,000,000.00)), (c) the payment of fees pursuant to 28 U.S.C. § 1930, and (d) costs and administrative expenses permitted to be incurred by any Chapter 7 trustee under section 726(b) of the Bankruptcy Code pursuant to an order of the Bankruptcy Court following any conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code in an amount not to exceed One Hundred Thousand Dollars ($100,000.00).

6.    **Resolution of NSC Concerns.**

(a)    Reservation of rights of all NSC-NFPs.  Except as expressly provided herein, nothing in this Final Order limits, reduces, impairs or alters any of the rights or claims of the NSC-NFPs and their communities (the "**Communities**"), or the residents of those Communities (the "**Residents**") against or with respect to the Borrowers, the Borrowers' property, the Borrowers' lenders, the Borrowers' lenders' collateral, Redwood or the Successful Bidder. These NSC-NFP and Resident rights and claims, to the extent of the validity and priority of such rights and claims, include, *but are not limited to*:  (i) the rights and claims of the Residents to occupy their units, to utilize the facilities of their community, to receive the services promised under their Residence and Care Agreements, and the right to receive a refund of their Initial

Entrance Deposit or Entrance Deposit pursuant to said Residence and Care Agreements; (ii) the rights and claims of the NSC-NFPs pursuant to their management agreements, lease agreements, licensing agreements, development agreements, loan agreements, working capital agreements, purchase option agreements, guarantee agreements, indemnity agreements, warranty agreements, and any other agreements with the Borrowers; and (iii) any rights of setoff or recoupment and any other common law or statutory rights relating to any of the above arising from the relationship between the NSC-NFPs and the Borrowers.

(b)     The NFPs and Debtors are authorized and directed to maintain the flow of funds with respect to the Community Loan and the Working Capital Loan consistent with past practice, and subject to all orders of this Court, including orders related to escrowing initial entrance deposits.  The NFPs also agree to continue to pay all management fees and pay or reimburse the Borrowers for other services in each as contemplated by the Budget and the applicable management agreements.

(c)     Reservation of Rights.  This Final Order shall not prejudice or affect in any manner the rights of any party against the NSC-NFPs on account of the use of the proceeds of the financing authorized herein or the NSC-NFPs' use of the Prepetition Secured Lenders' collateral or any other legal or contractual rights, claims or remedies that any party may have against the NSC-NFPs in law or equity, all of which rights, claims or remedies are expressly preserved.  The NSC-NFPs reserve all defenses against such rights, claims, or remedies and reserve all rights, claims or remedies against any third parties.  To the extent that the NSC-NFPs fail to comply with the terms of their contractual agreements with the Borrowers and the Prepetition Secured Lenders, the Prepetition Secured Lenders reserve their rights to seek a modification of this Final Order.

7.     **Protection of Lender's Rights**.

(a)     None of the DIP Collateral shall be subject to any liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under the DIP Documents or this Final Order;

(b)     So long as there are any outstanding DIP Obligations under the Financing which have not been indefeasibly paid and the Borrowers are entitled to request any borrowing under the Financing, all persons or entities, including, without limitation, the Prepetition Secured Lenders shall (i) be prohibited from taking any action to foreclose upon or recover in connection with any lien granted thereto pursuant to the Prepetition Secured Loans or any other lien or security interest or this Final Order or Cash Collateral Orders, or otherwise exercise remedies against any DIP Collateral (other than the filing of a motion for relief from the automatic stay), except to the extent authorized by a subsequent order of this Court expressly authorizing such action, and (ii) during the occurrence of an Event of Default and to the extent necessary for collection by Lender, the consent of  the Prepetition Secured Lenders shall not be necessary for the release of DIP Collateral as may be required for the enforcement of Lender's rights and remedies under the DIP Documents or hereunder. The Borrowers shall not pay any amounts or transfer any property on account of such lenders' claims or otherwise, without the written consent of the Lender.  The provisions of this paragraph 7(b)(i) shall expire within 90 days after the occurrence of an Event of Default but, for the avoidance of doubt, any amounts recovered by a Prepetition Secured Lenders from DIP Collateral (other than the Cash Collateral Claim paid by Lender to the Corporate Revolver Lenders under

paragraph 4(d) hereof) shall be paid to the Lender until all outstanding DIP Obligations under the Financing have been indefeasibly paid in full; and

(c)     On five (5) business days notice to the Debtors, the official committee of unsecured creditors ("**Creditors' Committee**"), Prepetition Secured Lenders and the United States Trustee, the automatic stay provisions of section 362 of the Bankruptcy Code will be deemed vacated and modified to the extent necessary to permit the Lender to exercise immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents absent an order of this Court to the contrary.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Prepetition Secured Lenders hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender set forth in this Final Order or the DIP Documents, absent an order of this Court to the contrary.  Subject to the payment provisions described below, in no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or otherwise.  The delay or failure to exercise rights and remedies under the DIP Documents or this Final Order by the Lender shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.  The Debtors waive and shall not be entitled to any right of setoff against the Lender relating to the DIP Obligations; provided, however, the Borrowers shall be entitled to offset an amount not to exceed $5,000,000 of

repayment to Lender of DIP Obligations solely as a result of Lender's (or the Redwood Purchaser's) failure consummate a transaction because of a breach or failure to perform (if any) by Lender (or the Redwood Purchaser) under the Master Purchase Agreement, as may be modified.

8. **Limitation on Charging Expenses Against Collateral**. So long as, and to the extent that, any DIP Obligations remain outstanding, except to the extent of the Carve Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

9. **Adequate Protection/Cash Collateral**. The following shall be deemed adequate protection for the Prepetition Secured Lenders and other lien holders pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code. The Debtors reserve their right to seek from the Bankruptcy Court authority to use the Corporate Cash subject to their obligations under the DIP Credit Agreement and this Final Order.

As Adequate Protection, the Lender has agreed to be repaid as provided below:

(a) Sale Transaction. Upon consummation of a Sale, the Financing and other DIP Obligations shall be repaid as follows:

(i) First, from Net Cash Proceeds of the Sale;

(ii) Second, from Corporate Cash to the extent of Corporate Borrowings;

(iii)    Third, from all assets of a Project Borrower relating to a Project, including all Initial Entrance Deposits for such Project (subject to the provisions of the applicable escrow agreement with respect to the escrow of Postpetition Initial Entrance Deposits or applicable state law), in each case solely to the extent of Project Borrowings for such Project; and

(iv)    Fourth, from all or any portion of the DIP Collateral, jointly and severally, in such manner and order as Lender may elect with no obligation to marshal or look to any particular asset of any Borrower; provided, that (1) repayment of any Corporate Borrowings and/or any Project Borrowings under this subparagraph 9(a)(iv) shall be limited to the Collateral Cap (as defined below), and (2) to the extent the Financing and other DIP Obligations are repaid from Prepetition Collateral of a Prepetition Secured Lender under this subparagraph 9(a)(iv), such Prepetition Secured Lender shall have rights of subrogation and contribution against any other Prepetition Secured Lender. The "Collateral Cap" for the purposes of this Final Order shall mean (a) Lender shall have recourse to Corporate Cash in an amount not to exceed $10,000,000 with respect to the repayment of all Project Borrowings; and (b) Lender shall have recourse to the assets of each Project Borrower (for the repayment of both (i) all Corporate Borrowings and (ii) all Project Borrowings), subject to a limit

(applicable to each Project Borrower) that is the lesser of: (y) the amount that is two times the amount of Project Borrowings outstanding at any Project as of the occurrence of an Event of Default, and (z) Five Million Dollars ($5,000,000.00) for the repayment of both (i) all Corporate Borrowings and (ii) all Project Borrowings.

The foregoing priority of recovery shall occur in the order set forth above in clauses (a)(i) through (iv); provided, however, that if any of the collateral listed above is insufficient or unavailable on demand for any reason, the Lender shall be free to immediately move to the next level of priority without delay.

(b)     Non-Sale.  After the exercise of remedies provided for in Section 11.1 of the DIP Credit Agreement (or after the Financing has automatically become immediately due and payable), the Financing and other DIP Obligations shall be repaid as follows (subject to the Carve Out):

(i)      First, from Corporate Cash to the extent of Corporate Borrowings;

(ii)     Second, from all assets of a Project Borrower relating to a Project, including all Initial Entrance Deposits for such Project (subject to the provisions of the applicable escrow agreement with respect to the escrow of Postpetition Initial Entrance Deposits or applicable state law), in each case solely to the extent of Project Borrowings for such Project; and

(iii)     Third, from all or any portion of the DIP Collateral, jointly and severally, in such manner and order as Lender may elect with no obligation to marshal or look to any particular asset of any Borrower, but provided, that (1) repayment of any Corporate Borrowings and/or any Project Borrowings under this subparagraph 9(b)(iii) shall be limited to the Collateral Cap and (2) to the extent the Facility and other DIP Obligations are repaid from Prepetition Collateral of a Prepetition Secured Lender under this subparagraph 9(b)(iii), such Secured Prepetition Lender shall have rights of subrogation and contribution against any other Prepetition Secured Lender.

The foregoing priority of recovery shall occur in the order set forth above in clauses (b)(i) through (iii); provided, however, that if any of the collateral listed above is insufficient or unavailable on demand for any reason, the Lender shall be free to immediately move to the next level of priority without delay.

Notwithstanding anything in this Final Order to the contrary, each Prepetition Secured Lender reserves all rights and defenses against each and every one of the other Prepetition Secured Lenders as to the allocation of sales proceeds, costs and expenses of any type (including but not limited to professional fees and success fees of the Debtors or any other party), and any and all other amounts to be paid by or from the Debtors' estates.

10.     **Reservation of Rights of Adequate Protection Parties**. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Lenders.

11.     **Monitoring of DIP Collateral**. The Lender reserves the right, in consultation with the Debtors, to retain expert consultants, financial advisors or other professionals at the expense of the Borrowers, which consultants and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the DIP Collateral.

12.     **Financial Reporting**. The Borrowers shall provide the Lender and the project and corporate lender agents with financial and other reporting as described in the DIP Documents, with copies simultaneously provided to the Creditors' Committee.

13.     **Perfection of DIP Liens**.

(a)     The Borrowers, the Lender and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder; provided however, the Borrowers shall perform any act in furtherance thereof if requested by the Lender or the Prepetition Secured Lenders. Whether the Lender or the Prepetition Secured Lenders, in their sole discretion, chooses to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and from the date of entry of the Interim

Order forward. Upon the request of the Lender or the Prepetition Secured Lenders, without any further consent of any party (including the Debtors, Prepetition Secured Lenders (in the case of the Lender) or any Official Committee) the Lender and Borrowers are each authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the Lender and the Prepetition Secured Lenders to validate, perfect, preserve and enforce DIP Liens. By this Final Order, the Lender and Prepetition Secured Lenders shall be deemed to have executed all such agreements, financing statements, instruments and other documents as the may reasonably be requested to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens;

(b)      A certified copy of this Final Order may, in the discretion of the Lender or the Prepetition Secured Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; and

(c)      Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Borrower to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in such leasehold interest or the proceeds of any assignment and/or sale

thereof by any Borrower, in favor of the Lender or the Prepetition Secured Lenders in accordance with the terms of the DIP Documents or this Final Order.

14.     **Preservation of Rights Granted Under the Final Order**.

(a)     Except for the *pari passu* liens and claims of the Corporate Revolver Lenders under the Cash Collateral Orders and subject to the limitations therein, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the Lender shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Borrowers' estates under section 551 of the Bankruptcy Code or (ii) except for the *pari passu* liens and claims of the Corporate Revolver Lenders under the Cash Collateral Orders and subject to the limitations therein, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(b)     Unless all DIP Obligations shall have indefeasibly been paid in cash in full, the Debtors shall not seek, and others shall not seek, and it shall constitute an Event of Default, if there is, (i) any modification or extension of this Final Order without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence, or (ii) an order converting or dismissing any of the Cases;

(c)     If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority

Claims, priming liens, security interests and replacement security interests granted to the Lender and adequate protection liens granted to the Prepetition Secured Lenders pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been indefeasibly paid in cash in full and any claims for diminution have been satisfied (and that such Superpriority Claims, priming liens, replacement security interests, and adequate protection liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above;

(d)     To the extent of applicable law, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations, DIP Liens and adequate protection liens incurred prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, DIP Obligations incurred by the Borrowers prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant

to the DIP Documents with respect to all uses of DIP Obligations. The Debtors shall not seek to modify, vacate, or amend this Final Order without the written consent of the Lender; and

(e) Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the adequate protection liens and granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Lender, and the adequate protection liens granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in cash in full and any claims for diminution have been satisfied.

15. **Limitation on Use of Financing Proceeds and Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Collateral, portion of the proceeds of the Financing or part of the Carve Out may be used for any of the following (each, a "**Lender Claim**") without the prior written consent of the Lender : (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of

any amount due under any DIP Document, or the liens or claims granted under this Final Order, any DIP Document, (b) to assert any claim or cause of action against the Lender or its respective agents, affiliates, representatives, attorneys or advisors with respect to the DIP Documents and the Financing, (c) except to contest the occurrence or continuation of an Event of Default, to prevent, hinder or otherwise delay the Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Final Order, (d) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Lender or its respective affiliates, representatives, attorneys or advisors in connection with matters related to the Financing or the DIP Documents, or (e) to seek to modify any of the rights granted to the Lender hereunder or under the DIP Documents.

16.     **Enforcement of Remedies.**

(a)     Upon an Event of Default or the occurrence of the Maturity Date, the Borrowers shall immediately make payment in full in cash of all of the non-contingent DIP Obligations; provided, however the Borrowers shall pay into an escrow account for the benefit of the Lender any DIP Obligations not paid as provided for in the foregoing sentence.   In the absence of immediate and full payment in cash of all of the DIP Obligations, as provided for in this paragraph, the automatic stay is hereby deemed vacated as provided in this Final Order, and the Lender shall be permitted to exercise such rights and remedies under such agreements, documents, and applicable law as to all or such part of the DIP Collateral as the Lender shall, in its sole discretion, elect, including, but not limited to, the Lender's right to foreclose on the mortgages and seek to take possession of any cash of the Borrowers.   Upon such enforcement by the Lender, the

Borrowers shall cooperate with the Lender in the disposition of the Collateral and shall not otherwise interfere or actively encourage others to interfere with the Lender's enforcement of its rights; and

(b)      Upon an Event of Default of any of the DIP Obligations, as applicable, the Default Rate set forth in the DIP Documents shall immediately be applicable.

17.      **Credit** Bid.   In the event of any sale or disposition of the DIP Collateral in accordance with this paragraph or otherwise, the Lender shall have the right to credit bid any or all of the Obligations under section 363(k) of the Bankruptcy Code or otherwise.

18.      **Effect of Stipulations on Third Parties**.

(a)      Each stipulation, admission and agreement contained in this Final Order shall be binding upon the Borrowers or Debtors as applicable, and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or Borrowers as applicable) under all circumstances and for all purposes, and the Borrowers are deemed to have irrevocably waived and relinquished all Lender Claims as of the date of entry of this Final Order; and

(b)      Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

19.      **Agent**.  To the extent the Lender appoints any agent (collateral agent, administrative agent or otherwise) in connection with any DIP Document, such agent may be considered (at the election of the Lender) the Lender for the purposes of any account control agreement, as loss payee under the Borrowers' insurance policies or as the secured party under the Financing, and such agent shall have all rights and powers attendant to that position

(including, without limitation, rights of enforcement). Each such agent appointed shall serve as agent for purposes of perfecting Lender's security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

20. **Final Order Governs**. In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

21. **Binding Effect; Successors and Assigns**. The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Lender, the Prepetition Secured Lenders, any Committee appointed in these Cases, and the Borrowers and of the respective successors and assigns of the foregoing (including, with respect to the Borrowers, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Borrowers, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Borrowers or with respect to the property of the estate of any of the Borrowers) and shall inure to the benefit of the Lender and its respective successors and assigns, *provided, however,* that the Lender shall have no obligation to permit the use of DIP Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors; and provided further that nothing in the Budget, the DIP Documents or this Final Order shall have any effect on any rights and defenses that any Prepetition Secured Lender may have against any or all of the Prepetition Secured Lenders as to the allocation of sales proceeds, costs and expenses of any type (including but not limited to professional fees and success fees of the Debtors or any other party), and any and all other amounts to be paid by or from the Debtors' estates and any allocations set forth in the Budget,

DIP Documents or Final Order shall have any binding effect amongst the Prepetition Secured Lenders. In determining to make any loan (whether under the DIP Credit Agreements, a promissory notes or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the Lender shall not (i) be deemed to be in control of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.,* as amended, or any similar federal or state statute).

22. **No Impact on Certain Contracts or Transactions**. No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

23. **Exclusions**. For the avoidance of doubt, nothing herein or in any of the DIP Documents shall operate as a release or waiver of, or a limit on expenditures in pursuit of, any claims or causes of action held or assertable by the Lender (including, without limitation, any of the Debtors or any other party in interest) against any Debtor, any "affiliate" of any Debtor (as such term is defined in the Bankruptcy Code) or any officer, director or direct or indirect shareholder (or affiliate thereof) of any Debtor.

24. **Credit Bid**. In connection with any sale of the Borrowers' assets or stock, under a plan of reorganization or pursuant to 363 of the Bankruptcy Code or in any other form, the Lender shall have the right to credit bid the amount outstanding on the Financing against the

purchase price to be paid by the Redwood Purchaser or any of its affiliate in such transaction, provided that the credit bid amount shall equal 100% of the amount outstanding under the Financing as of the date of such bid.

25. **Investigation of Liens.** The Creditors' Committee shall be granted a sixty (60) day investigation period (the "**Investigation Period**") to investigate the validity, extent, perfection, priority and enforceability of the Prepetition Secured Lenders' Liens. For each Prepetition Secured Lender, the Investigation Period shall begin on the date that such lender provides counsel to the Creditor's Committee with copies of or access to its primary prepetition loan documents, evidence of perfection thereof, and a list of advances and paydowns within the three year period prior to the Petition Date. The Debtors consent to the release of the foregoing information to counsel to the Creditors' Committee without subpoena and agree that production of such information shall not constitute a violation of any confidentiality restrictions of any agreement between the Debtors and the Prepetition Secured Lender. During this time, the Creditor's Committee must file any motion or proceedings to dispute the Prepetition Secured Lender's Liens for which such evidence has been delivered. The hearing on the Creditors Committee's Motion to reconsider the "Order Authorizing Debtors to Escrow Initial Entrance Deposits" dated November 6, 2009 and/or Motion to Reconsider the "Order Authorizing Additional Protections to Residents' Initial Entrance Deposits" dated November 24, 2009, scheduled to take place on January 13, 2010 shall not be continued or deferred on account of or with reference to the Investigation Period. The Investigation Period may be extended for cause.

26. **Effectiveness.** This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

27. **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

###END OF ORDER###