Stacey Aikman
5 Sipple Ave.
Nottingham, MD 21236
CLAIMANT



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re:
ERICKSON RETIREMENT COMMUNITITES, LLC, et al
Debtors

CASE NO. 09-37010
CHAPTER 11
Jointly Administered

## OBJECTION TO AMENDED DISCLOSURE STATEMENT
## FOR JOINT PLAN OF REORGANIZATION FOR THE DEBTORS PROPOSED BY
## ERICKSON RETIREMENT COMMUNITIES, LLC

Pursuant to the "ORDER SETTING HEARING AND DEADLINE TO OBJECT TO AMENDED DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION FOR THE DEBTORS PROPOSED BY ERICKSON RETIREMENT COMMUNITIES, LLC", the Claimant, Stacey Aikman, herewith files her objection.

### SUMMARY

The Amended Disclosure Statement unfairly denies appropriate and obligated compensation to Stacey Aikman and laid off employees on several levels:

1. The Amended Disclosure Statement allocates 0% ($0) to Unsecured Creditors. This is not a fair and equitable distribution and is contrary to typical bankruptcy precedents where a dollar amount is set aside or carved out for some level of compensation to Unsecured Creditors.

1

2. The Amended Disclosure Statement, while correctly proposing that Other Priority Claims will receive 100% of amount owed, does not appear to list any dollar amounts in Schedule F to be set aside for such Other Priority Claims to fulfill that obligation.

3. There are unique claims of Severance payment that should be paid out as part of the Amended Plan. Similar to Accrued Vacation, there are a number of employees (approx. 94) who have had their Separation Agreements violated by having needed income from Severance payments suspended. This occurred despite the employees' good faith and hard work for the good of the Company in performing necessary tasks to maximize recovery of Entrance Deposits. These efforts have materially helped enhance the value of the restructured Company and given it a greater chance to succeed in its business going forward.

4. In regards to Severance, former employees are in unique class for several reasons. First, employees were told by the Company that Severance was safe from Bankruptcy, and thus employees acted in good faith in the administration of their obligations per the Separation Agreement only to find that their Severance had been suspended to date. Employees acted in good faith in remaining with the Company and have subsequently suffered and continue to suffer significant financial hardship. The impact of unpaid Severance has the greatest effect on these employees. Unlike other Creditors,

employees do not have multiple customers. Other Creditors through these multiple customers can better withstand/dilute the effects of bankruptcy by relying on business with other customers. For employees, their employment represented their whole livelihood, so cutting off these payments has the most injurious effect and thus rises to the highest level of injustice. Furthermore, no other Creditors would have been told by the Debtor Company that the money owed them would be safe from bankruptcy. This was the case with these severed employees, and combined with an employee's income being his or her financial livelihood, this class of former employees has a unique and high priority claim that the Court should use its broad authority to protect. Indeed, the Debtors/Debtors in Possession have expressed their strong support for these employees to be paid their Severance, as evidenced by the "MOTION OF DEBTORS PURSUANT TO 11 U.S.C. SECTION 105(a) AND 363(b) FOR AN ORDER AUTHORIZING PAYMENT OF PREPETITION EMPLOYEE SEVERANCE BENEFITS" (item #130 on the Court Docket and hereinafter referred to as "Motion for Severance"). **Finally, while the proper payout of Severance would have a hugely positive impact on the affected employees' financial hardship, the total dollar amount would have a microscopic effect on other creditors. The proper payout of Severance claims would still be miniscule and would be less than 0.005 (or less than ½ of 1%) of the total $365 million sale of the Company.**

5. There are unique claims of inequitable treatment in regards to the disbursement or lack of disbursement of the GPP Employment Benefit Plan. A small group of employees never received the first three installments of the GPP disbursement that the bulk of GPP members received. These employees achieved the required vesting BEFORE the Bankruptcy date and should have been compensated upon vesting. Furthermore, the dollar amounts of the first three installments were held in individual escrow accounts for these employees until such time as they were vested. Since the vesting occurred prior to the Bankruptcy, the Company was in error and wrongfully denied payment of these vested escrow accounts. The Court should right this inequity and award these employees as a priority class to receive payment of the vested, escrowed amounts from the first three installments of the GPP Old Plan disbursement.

## BASIS FOR OBJECTION

### Unsecured Creditors

6. Unsecured Creditors Should Not Receive $0 as outlined in the Amended Disclosure Statement. The original Plan as filed (Docket #293) listed Unsecured Creditors as an Impaired Class entitled to vote based on an estimated recovery TBD, the same designation given for Corporate Revolver Claims and UMBC Building Construction Loan Claims, who are now slated to

4

receive 49.6% and 62.7% estimated recoveries. Stacey Aikman objects to the diminishment of such allocation from an impaired class with some percentage recovery anticipated to $0 recovery. With the increase of Cash from the Auction and Sale of the Company from an original offer of $100 million to the current sale of $365 million in Cash, the Court should insist that an appropriate and reasonable percentage of the $365 million be set aside for payment to Unsecured Creditors, consistent with percentages allocated in other Bankruptcy cases to Unsecured Creditors.

**Other Priority Claims**

7. The full payment of Other Priority Claims is reasonable and consistent with Bankruptcy provisions, which include Severance and Accrued Vacation. However, the Court should make sure that Schedule F, which lists the various allocations to different Classes of Claims, properly allocates the appropriate dollars for such Other Priority Claims.

**Severance Payment**

8. Stacey Aikman was part of the Reduction in Force announced in January 2009.

9. The Separation Agreement clearly stipulates that the severed employee shall receive their severance to be paid on an ongoing paycheck by paycheck basis for the specified number of weeks at the employee's current rate of pay (i.e., at termination).

10. Severance is recognized by state laws and regulations as an enforceable part of the wage agreement. In Texas, per the Office of the Commissioner representing employers on the Texas Workforce Commission under the authority of Texas Labor Code Section 301.002(a)(2) (TWC website is twc.state.tx.us), "Severance pay that is promised in a written policy or other form of agreement is an enforceable part of the wage agreement under the Texas Payday Law. Under Section 821.25(b) of the Texas Payday Law rules, severance pay is additional pay for an employee's past work that is given at the end of the employee's employment, and is usually, but not always, based upon a set formula such as length of prior service. It is a payment that the employer has somehow previously obligated itself to give, either orally or in writing....As a matter of enforcement policy, TWC's Labor Law Department will enforce whatever severance payment interval and conditions are set forth in the written policy or agreement creating the obligation to make the payment. "Furthermore, a general rule of employment law would be applicable here: "whenever two or more statutes or principles of law apply to an employee's situation, the one that results in a greater benefit to the employee must be applied...Wage agreements that exceed state or federal minimums will take precedence under general contract principles and under most state wage payment laws, including the Texas Payday Law." (from twc.state.tx.us website). In this case, the enforceability of the Separation Agreement is of greater benefit to the employee and should be applied.

11. Employees are the most vulnerable of Classes in a bankruptcy case (beyond assuring that the Business is viable and thus protects the Residents in this particular case). Unlike other Creditors, employees do not have multiple customers. Other Creditors through these multiple customers can better withstand/dilute the effects of bankruptcy by relying on business with other customers. For employees, their employment represented their whole livelihood, so cutting off these payments has the most injurious effect and thus rises to the highest level of injustice. The Court in its established role as a Court of equity is empowered with broad remedial powers to fashion relief for Creditors in a fair and equitable manner.

12. Employees are a unique class in this particular case, in that they were assured by the Company that their Separation Agreements and accompanying Severance benefits would be honored even if future Bankruptcy occurred. No other class of Creditors can assert this claim. A business who is a Creditor necessarily understands that part of doing business involves risk that a customer may not pay them back and could be protected from collection of debt through bankruptcy. Out of equity and fairness, these employees, who were promised Severance, and continued to work in good faith based upon such promises from the Company, should be paid their severance in full to honor that Separation Agreement.

13. The Company (Debtor/Debtor in Possession) has already stated their support and reasoning for former Employees to be paid per the Separation Agreement. The Motion for Severance referenced in Paragraph 5 above and

found as item #130 on the Court Docket expresses strong arguments for these employees to be paid their severance.

14. The arguments in the Motion contained within Docket item #130 are adopted by reference into this document and briefly outlined in the following paragraphs 35-40.

15. The Debtors have experienced a loss in key talent that the Company had hoped to retain. If the Company cannot restore and maintain the confidence of its employees, the continued success of the Company and ultimately the security and quality of life of the Residents would be negatively impacted.

16. Honoring the Separation Agreements will help the Company going forward to retain its employees and reduce the incentive for further erosion of key employees seeking employment elsewhere. As the Motion states, if these obligations are not honored, "the morale of current Employees would suffer, which would adversely impact the Debtors' business. Failure to honor the Prepetition Obligations could also result in extreme hardship to the Laid-Off Employees depending on the payments as their sole remaining source of income. This would inevitably result in lowered Employee morale and lead to unmanageable Employee turnover. Indeed, the Debtors may be unable to sustain operations and effectuate a successful reorganization without the ongoing good will of their Employees."

17. As the Debtors' Motion outlines, "Debtors' inability to retain or hire back a qualified work force would inhibit the estates' ability to move beyond bankruptcy. The Debtors or their successor hope to continue development of

certain projects in the future in order to attract new residents and continue to add value to the projects." The Amended Disclosure Statement, along with the original plan, calls for a $50 million facility for future construction, which will be necessary to stabilize the developing communities. "If Debtors are unable to retain or hire back employees due to a lack of confidence in Debtors' ability to fulfill their employee agreements with individuals who have development expertise, the ability to conduct that future development that is essential to both the potential purchaser, Redwood, and the National Senior Campuses, Inc. Board which holds the management contracts is put at risk."

18. Bankruptcy code 105 (a) and 363 (c) and the "necessity of payment" doctrine provide the basis for relief. Bankruptcy code 105(a) grants broad authority to carry out the provisions of the Bankruptcy code. For prepetition employee compensation and benefits being upheld as necessary and priority claims, cited cases are <u>CoServ LLC</u>, 273 B. R. 487, 494 ) Bankr. N.D. Tex, 2002 and <u>Mich. Bureau of Workers' Disability Comp v. Chateaugay Corp</u> 80 B. R. 279, 285-286 (S.D. N.Y. 1987)..

**GPP Payout of First Three Installments to Vested Employees**

19. A small group of employees never received the first three installments of the GPP disbursement that the bulk of GPP members received. These employees achieved the required vesting BEFORE the Bankruptcy date and should have been compensated upon vesting. Furthermore, the dollar amounts of the

9

first three installments were held in individual escrow accounts for these employees until such time as they were vested. As such, these escrow accounts would be the assets of the individual employee, not the Company, provided that the individual employee achieved their vesting date. Since the vesting occurred prior to the Bankruptcy, the Company was in error and wrongfully denied payment of these vested escrow accounts. To not pay out these first three installments would be an injustice to those employees whose loyalty and dedication was rewarded with inequitable treatment. **The Court should right this inequity and award these few employees as a priority class to receive payment of the vested, escrowed amounts from the first three installments of the GPP Old Plan disbursement.**

## CONCLUSION

Given the foregoing arguments, I have filed my Objection to the Amended Disclosure Statement and Object to its approval in its current iteration. I believe that the Disclosure Statement and Plan should be modified to equitably address the proper payout of all items noted above. This Objection per instructions from the Court will be sent to Debtors' counsel as noted below before ~~February 2,~~ 2010:

Vincent Slusher
DLA Piper LLC
1700 Main Street Suite 4600
Dallas, TX 75201

Thomas R. Califano
DLA Piper LLC

1251 Avenue of the Americas
New York, New York 10020-1104

Dated: February 18, 2010
Stacey Aikman

*[signature]* 2-20-2010