**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 16, 2010**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 09-37010 (SGJ) |
| | § | |
| **ERICKSON RETIREMENT** | § | **Chapter 11** |
| **COMMUNITIES, LLC,** _et al._[1] | § | |
| | § | **(Jointly Administered)** |
| Debtors. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
### ORDER CONFIRMING THE DEBTORS' FOURTH AMENDED JOINT PLAN OF
### REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS Erickson Retirement Communities, LLC and its affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), have jointly proposed and filed with the United States Bankruptcy Court for the

---

[1] The Debtors in these chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

Northern District of Texas, Dallas Division (the "Court") (A) the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated March 8, 2010 [Dkt. No. 1005], (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, including but not limited to the cumulative Plan Supplement [filed on April 16, 2010, Dkt. No. 1353], and that certain Litigation Trust Agreement, a copy of which is annexed hereto as Exhibit A [see Dkt. No. 1350] (collectively the "Plan")[2]), and (B) (i) the Disclosure Statement For Debtors' Fourth Amended Joint Plan Under Chapter 11 of the Bankruptcy Code, dated March 8, 2010 and filed with the Court on March 8, 2010 (the "Disclosure Statement") [Dkt. No. 1001], and (ii) appropriate ballots for voting on the Plan (the "Ballots"), having been duly transmitted to Holders of Claims in compliance with the procedures (the "Solicitation Procedures") as set forth in the Declaration of Balloting Agent Regarding Tabulation of Votes, sworn to by Tina Marie Feil at BMC Group, Inc. ("BMC"), and filed with the Court on April 14, 2010 ("Voting Certification") [Dkt. No. 1324]; and

WHEREAS the Court entered the Order (I) Scheduling Hearing on Confirmation of Plan; (II) Approving the Disclosure Statement; (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving the Form and Notice of the Plan Confirmation Hearing, (C) Establishing Voting Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulation; (IV) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation for the Plan and (B) Proposed Cure Amounts Related to the Assumed Contracts; and (V) Granting Related Relief (the "Scheduling

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Order") [Dkt. No. 1007], which, among other things, scheduled the hearing to consider confirmation of the Plan (the "Plan Confirmation Hearing"); and

WHEREAS due notice of the Plan Confirmation Hearing has been given to Holders of Claims against the Debtors and other parties in interest in compliance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication filed with the Court, including (1) the Certificate of Supplemental Service, dated March 16, 2010 [Dkt. No.1028], (2) the Certificate of Mailing, dated March 24, 2010 [Dkt. No. 1069], (3) Certificate of Supplemental Service, dated March 18, 2010 [Dkt. No. 1070], (4) Certificate of Supplemental Service, dated March 29, 2010 [Dkt. No. 1194], (5) Certificate of Supplemental Service, dated March 29, 2010 [Dkt. No. 1195], and (6) Affidavit of Publication of Notice of (I) Approval of Disclosure Statement; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan; and (IV) Deadline for Voting on the Plan [Dkt. No. 1202] (collectively, the "Confirmation Hearing Notice Affidavits"): and

WHEREAS such notice is sufficient under the circumstances and no further notice is required; and

NOW, THEREFORE, based upon the Court's consideration of the entire record of these Chapter 11 Cases and the Plan Confirmation Hearing, including (A) the Disclosure Statement, the Plan, and the Voting Certification, (B) the Debtors' memorandum of law, dated April 13, 2010, in support of confirmation of the Plan, (C) the Declarations of Gerald Doherty and Paul Rundell in support of confirmation of the Plan, each dated April 14, 2010 (collectively, the "Plan Confirmation Declarations"), (D) the Confirmation Hearing Notice Affidavits, (E) the evidence presented at the March 23, 2010 hearing regarding valuation and allocation under the

Plan and the Court's ruling that the valuation of the Debtors' assets and allocation of the Transaction Proceeds under the Plan were appropriate, subject to the terms and conditions of that certain Stipulation approved by this Court [Dkt. No. 1336] and (F) all objections to the confirmation of the Plan having been withdrawn, resolved, or otherwise overruled as set forth herein; and upon the arguments of counsel and the evidence adduced at the Plan Confirmation Hearing; and the Court having found the Plan should be confirmed as reflected by the Court's rulings made herein and at the Plan Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Plan Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.  The Debtors are plan proponents in accordance with section 1121(a) of the Bankruptcy Code.

C.    Chapter 11 Petitions.  On October 19, 2009 (the "Petition Date"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  On November 2, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") in these cases.  Further, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.    Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.    Burden of Proof.  The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Each Debtor has met such burden.

F.    Voting.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and applicable nonbankruptcy law.

G.    Solicitation.  The Plan, the Disclosure Statement, the Ballots, and notice of the Plan Confirmation Hearing, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and

were appropriate for Holders of Claims in the following Classes (the "Voting Classes") who are impaired under the Plan, may receive a distribution under the Plan, and, therefore, had their votes solicited: **Erickson Group, LLC**: Erickson Group Guaranty Claims (Class 4); **Erickson Retirement Communities, LLC**: Corporate Revolver Claims (Class 3), Interest Rate Swap Claims (Class 4), UMBC Construction Loan Claims (Class 6), Management Agreement Claims (Class 7), General Unsecured Claims (Class 8); **Erickson Construction, LLC:** Corporate Revolver Claims (Class 4), UMBC Building Construction Loan Claims (Class 5), General Unsecured Claims (Class 7); **Senior Campus Services, LLC:** UMBC Building Construction Loan Claims (Class 3), General Unsecured Claims (Class 5); **Ashburn Campus, LLC**: Ashburn Construction Loan Claims (Class 4), Ashburn Community Loan Claims (Class 5), Ashburn Junior Loan Claims (Class 6), General Unsecured Claims (Class 8); **Columbus Campus, LLC:** Columbus Improvement Bond Claims (Class 3), Mechanic's Lien Claims (Class 4), Columbus Construction Loan Claims (Class 5), Columbus Community Loan Claims (Class 6), Columbus Junior Loan Claims (Class 7), General Unsecured Claims (Class 8); **Concord Campus, LP:** Mechanic's Lien Claims (Class 3), Concord Construction Loan Claims (Class 4), Concord Community Loan Claims (Class 5), Concord Junior Loan Claims (Class 6), Other Secured Claims (Class 7), General Unsecured Claims (Class 9); **Concord Campus GP, LLC:** General Unsecured Claims (Class 4); **Dallas Campus, LP**: Mechanic's Lien Claims (Class 3), Dallas Construction Loan Claims (Class 4), Texas A&M Note Claims (Class 5), Dallas Community Loan Claims (Class 6), General Unsecured Claims (Class 9); **Dallas Campus GP, LLC**: General Unsecured Claims (Class 4); **Houston Campus, LP**: Mechanic's Lien Claims (Class 3), Houston Construction Loan Claims (Class 4), Houston Community Loan Claims (Class 5), General Unsecured Claims (Class 8); **Kansas Campus, LLC**: Mechanic's Lien Claims (Class 3), Kansas Construction Loan Claims (Class 5), Kansas Community Loan Claims (Class 6),

General Unsecured Claims (Class 9); **Littleton Campus, LLC**:  Mechanic's Lien Claims (Class 3), Littleton Construction Loan Claims (Class 4), Littleton Community Loan Claims (Class 5), Littleton Junior Loan Claims (Class 6), Other Secured Claims (Class 7), General Unsecured Claims (Class 9); **Novi Campus, LLC**:  Mechanic's Lien Claims (Class 3), Novi Construction Loan Claims (Class 4), Novi Community Loan Claims (Class 5), Other Secured Claims (Class 7), General Unsecured Claims (Class 9); **Warminster Campus, LP**:  Mechanic's Lien Claims (Class 3), Warminster Community Loan Claims (Class 4), Warminster Purchase Option Deposit Refund Agreement Claims (Class 5), Warminster Junior Loan Claims (Class 6), Other Secured Claims (Class 7), General Unsecured Claims (Class 9); **Warminster Campus GP, LLC**: General Unsecured Claims (Class 4).

H.    The period during which the Debtors solicited acceptances to the Plan was reasonable in the circumstances of these Chapter 11 Cases and enabled Holders to make an informed decision to accept or reject the Plan.  The Debtors were not required to solicit votes from the Holders of Claims in the following Classes (the "Deemed Accepting Classes") as each such Class is unimpaired under the Plan and conclusively presumed to have accepted the Plan: **Erickson Group, LLC**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Erickson Retirement Communities, LLC**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2), and Other Secured Claims (Class 5); **Erickson Construction, LLC**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2), Mechanic's Lien Claims (Class 3), Erickson Construction Letters of Credit Claims (Class 6); **Senior Campus Services, LLC:** Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Ashburn Campus, LLC**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2), Mechanic's Lien Claims (Class 3); **Columbus Campus, LLC:**  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Concord Campus, LP:**  Other Priority Claims (Class 1) and Secured Tax Claims

(Class 2); **Concord Campus GP, LLC:** Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Dallas Campus, LP**: Other Priority Claims (Class 1); Secured Tax Claims (Class 2); **Dallas Campus GP, LLC**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Houston Campus, LP**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Kansas Campus, LLC**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2), Kansas Special Assessment Bond Claims (Class 4); **Littleton Campus, LLC**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Novi Campus, LLC:** Other Priority Claims (Class 1); Secured Tax Claims (Class 2); **Warminster Campus GP, LLC**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Warminster Campus, LP**: Other Priority Claims (Class 1) and Secured Tax Claims (Class 2).

I.      The Debtors also were not required to solicit votes from the Holders of Claims in the following Classes (the "Deemed Rejecting Classes") as such Classes -receive no recovery under the Plan and are deemed to reject the Plan: **Erickson Group, LLC**: Corporate Revolver Guaranty Claims (Class 3), Interests in Erickson Group (Class 5); **Erickson Retirement Communities, LLC**: Interests in ERC (Class 9); **Erickson Construction, LLC:** Interests in Erickson Construction (Class 8); **Senior Campus Services, LLC:** Corporate Revolver Guaranty Claims (Class 4)**,** Interests in Senior Campus (Class 6); **Ashburn Campus, LLC**: NFP Claims (Class 7), Interests in Ashburn (Class 9); **Columbus Campus, LLC:** Interests in Columbus (Class 9); **Concord Campus, LP:** NFP Claims (Class 8), Interests in Concord (Class 10); **Concord Campus GP, LLC:** Corporate Revolver Guaranty Claims (Class 3), Interests in Concord GP (Class 5); **Dallas Campus, LP**: Dallas Junior Loan Claims (Class 7), NFP Claims (Class 8), Interests in Dallas (Class 10); **Dallas Campus GP, LLC**: Corporate Revolver Guaranty Claims (Class 3), Interests in Dallas GP (Class 4); **Houston Campus, LP**: Houston Junior Loan Claims (Class 6), NFP Claims (Class 7), Interests in Houston (Class 9);

**Kansas Campus, LLC**: Kansas Junior Loan Claims (Class 7), NFP Claims (Class 8), Interest in Kansas (Class 10); **Littleton Campus, LLC**: NFP Claims (Class 8), Interests in Littleton (Class 10); **Novi Campus, LLC**: Novi Junior Loan Claims (Class 6), NFP Claims (Class 8), Interest in Novi (Class 10); **Warminster Campus, LP**: NFP Claims (Class 8)[3], Interests in Warminster (Class 10); **Warminster Campus GP, LLC**: Interests in Warminster GP (Class 5).

J.      As described in and as evidenced by the Voting Certification and the Confirmation Hearing Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the notice of the Plan Confirmation Hearing, and the publication of such notice of the Plan Confirmation Hearing (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances. The Solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations. In connection therewith, the Debtors, Redwood, Lenders, the Acquisition Companies, Agents, NSC, NSC-NFPs, Bond Trustees, Creditors Committee, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

K.      Neither the Debtors nor the Acquisition Companies have engaged in any collusive or unfair conduct in connection with the stalking horse bid, Auction, Definitive Agreement or Plan. The Definitive Agreement and Auction were negotiated and conducted at arms-length and without collusion with any person or entity, and resulted in substantial value being brought to these Estates. The purchase price provided for under the Definitive Agreement

---

[3] Provided, each Allowed Warminster NFP Claim shall receive the treatment provided in the Plan, including, without limitation, the treatment specified in Sections 4.15.8, 6.3.9.6, 6.3.9.7, and Exhibit D.

is fair and reasonable. The Acquisition Companies are good faith purchasers within the meaning of the Bankruptcy Code and entitled to the protections afforded thereby.

L.      Notice.  As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

M.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Funding Claims, which need not be classified, Section 3 of the Plan classifies nine Classes of Claims and Interests for each Debtor. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).    Pursuant to Sections 3 and 4 of the Plan the following Classes are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:  **Erickson Group, LLC**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Erickson Retirement Communities, LLC**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2), and Other Secured Claims (Class 5); **Erickson Construction, LLC**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2), Erickson Construction Letter of Credit Claims (Class 6); **Senior Campus Services, LLC:**  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Ashburn Campus, LLC**:  Other Priority Claims (Class 1) Secured Tax Claims (Class 2), Mechanic's Lien Claims (Class 3); **Columbus Campus, LLC:** Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Concord Campus, LP:** Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Concord Campus GP, LLC:** Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Dallas Campus, LP**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2); **Dallas Campus GP, LLC**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Houston Campus, LP**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Kansas Campus, LLC**:  Other Priority Claims (Class 1), Secured Tax Claims (Class 2), Kansas Special Assessment Bond Claims (Class 4); **Littleton Campus, LLC**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Novi Campus, LLC**:  Other Priority Claims (Class 1); Secured Tax Claims (Class 2); **Warminster Campus, LP**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2); **Warminster Campus GP, LLC**:  Other Priority Claims (Class 1) and Secured Tax Claims (Class 2).

N.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Sections 3 and 4 of the Plan designate the following Classes as impaired within the meaning of

section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:  **Erickson Group, LLC**:  Corporate Revolver Guaranty Claims (Class 3), Erickson Group Guaranty Claims (Class 4), Interests in Erickson Group (Class 5); **Erickson Retirement Communities, LLC**:  Corporate Revolver Claims (Class 3), Interest Rate Swap Claims (Class 4), UMBC Construction Loan Claims (Class 6), Management Agreement Claims (Class 7), General Unsecured Claims (Class 8), Interests in ERC (Class 9); **Erickson Construction, LLC:**  Mechanic's Lien Claims (Class 3), Corporate Revolver Claims (Class 4), UMBC Building Construction Loan Claims (Class 5), General Unsecured Claims (Class 7), Interests in Erickson Construction (Class 8); **Senior Campus Services, LLC:**  UMBC Building Construction Loan Claims (Class 3), Corporate Revolver Guaranty Claims (Class 4); General Unsecured Claims (Class 5), Interests in Senior Campus (Class 6); **Ashburn Campus, LLC**:  Ashburn Construction Loan Claims (Class 4), Ashburn Community Loan Claims (Class 5), Ashburn Junior Loan Claims (Class 6), NFP Claims (Class 7), General Unsecured Claims (Class 8), Interests in Ashburn (Class 9); **Columbus Campus, LLC:** Columbus Improvement Bond Claims (Class 3), Mechanic's Lien Claims (Class 4), Columbus Construction Loan Claims (Class 5), Columbus Community Loan Claims (Class 6), Columbus Junior Loan Claims (Class 7), General Unsecured Claims (Class 8), Interests in Columbus (Class 9); **Concord Campus, LP:**  Mechanic's Lien Claims (Class 3), Concord Construction Loan Claims (Class 4), Concord Community Loan Claims (Class 5), Concord Junior Loan Claims (Class 6), Other Secured Claims (Class 7), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interests in Concord (Class 10); **Concord Campus GP, LLC:**  Corporate Revolver Guaranty Claims (Class 3), General Unsecured Claims (Class 4), Interests in Concord GP (Class 5); **Dallas Campus, LP**:  Mechanic's Lien Claims (Class 3), Dallas Construction Loan Claims (Class 4), Texas A&M Note Claims (Class 5), Dallas

Community Loan Claims (Class 6), Dallas Junior Loan Claims (Class 7), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interests in Dallas (Class 10); **Dallas Campus GP, LLC**: Corporate Revolver Guaranty Claims (Class 3), General Unsecured Claims (Class 4), Interests in Dallas GP (Class 5); **Houston Campus, LP**: Mechanic's Lien Claims (Class 3), Houston Construction Loan Claims (Class 4), Houston Community Loan Claims (Class 5), Houston Junior Loan Claims (Class 6), NFP Claims (Class 7), General Unsecured Claims (Class 8), Interests in Houston (Class 9); **Kansas Campus, LLC**: Mechanic's Lien Claims (Class 3), Kansas Construction Loan Claims (Class 5), Kansas Community Loan Claims (Class 6), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interest in Kansas (Class 10); **Littleton Campus, LLC**: Mechanic's Lien Claims (Class 3), Littleton Construction Loan Claims (Class 4), Littleton Community Loan Claims (Class 5), Littleton Junior Loan Claims (Class 6), Other Secured Claims (Class 7), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interests in Littleton (Class 10); **Novi Campus, LLC**: Mechanic's Lien Claims (Class 3), Novi Construction Loan Claims (Class 4), Novi Community Loan Claims (Class 5), Novi Junior Loan Claims (Class 6), Other Secured Claims (Class 7), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interest in Novi (Class 10); **Warminster Campus, LP**: Mechanic's Lien Claims (Class 3), Warminster Community Loan Claims (Class 4), Warminster Purchase Option Deposit Refund Agreement Claims (Class 5), Warminster Junior Loan Claims (Class 6), Other Secured Claims (Class 7), NFP Claims (Class 8), General Unsecured Claims (Class 9), Interests in Warminster (Class 10); **Warminster Campus GP, LLC**: Corporate Revolver Guaranty Claims (Class 3), General Unsecured Claims (Class 4), Interests in Warminster GP (Class 5).

    (a) <u>Same Treatment for Each Claim or Interest of Each Particular Class (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to

a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(b)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (as more fully described in that certain Second Amended and Restated Master Purchase and Sale Agreement, effective as of February 16, 2010, among Redwood, ManagementCo, DevCo, PropCo, Redwood Kansas, Redwood Concord, Redwood Dallas, Redwood Houston, Redwood Ashburn, Redwood Littleton, Redwood Novi, Redwood-ERC Tinton Falls II, LLC, Redwood-ERC Senior Care, LLC and ERC, Erickson Group, LLC, a Maryland limited liability company, Concord, Dallas, Houston, Ashburn, Littleton, Novi, Kansas, Tinton Falls Campus II, LLC, a Maryland limited liability company, Senior Campus Care, LLC, a Maryland limited liability company, and Erickson Construction, LLC, a Maryland limited liability company, including all amendments (the "Definitive Agreement") and Section 6 of the Plan) the (i) purchase by the Acquisition Companies[4] of substantially all of the assets and certain interests of the Debtors as set forth in the Definitive Agreement (the "Asset Purchase"), (ii) authorization and issuance of all plan-related securities and documents, (iii) satisfaction of the DIP Facility, (iv) cancellation of existing securities and certain agreements of the Debtors, (v) procedure for designation of the initial board of directors

---

[4]   The Acquisition Companies are Redwood-ERC Senior Living Holdings, LLC, a Maryland limited liability company, Redwood-ERC Management, LLC, a Maryland limited liability company, Redwood-ERC Development, LLC, a Maryland limited liability company, Redwood-ERC Properties, LLC, a Maryland limited liability company, Redwood-ERC Kansas, LLC, a Maryland limited liability company, Redwood-ERC Concord L.P., a Maryland limited partnership, Redwood-ERC Dallas, LLC, a Maryland limited liability company, Redwood-ERC Houston, LLC, a Maryland limited liability company, Redwood-ERC Ashburn, LLC, a Maryland limited liability company, Redwood-ERC Littleton, LLC, a Maryland limited liability company, Redwood-ERC Novi, LLC, a Maryland limited liability company, Redwood-ERC Tinton Falls II, LLC, Redwood-ERC Senior Care, LLC, and post-Effective Date Warminster Campus, L.P.

(if any) and initial officers of each of the Acquisition Companies, (vi) establishment of the Liquidating Creditor Trust, (vii) the vesting of any remaining assets in the Reorganized Debtors, (viii) specification of the obligations of any successor to the Debtors under the Plan and Definitive Agreement; and (ix) the engagement in other transactions in furtherance of the Plan.

(c)  <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  The amended and restated charter documents of the Reorganized Debtors prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(d)  <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Section 7 of the Plan and the corresponding Plan Supplement contain provisions with respect to the manner of selection of directors (if any) and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(e)  <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by section 1123(b)(1) of the Bankruptcy Code, Section 3 of the Plan designates all unimpaired Classes.

(f)  <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Section 10 of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy Code.

(g)  <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  Each of the provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(h)  <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 10 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease

to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Except to the extent that different treatment has been agreed to by the nondebtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 10 of the Plan, the Debtors, after consultation with Redwood, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, on March 25, 2010, filed and served Notice of (I) Possible Assumption of Executory Contracts and Unexpired Leases (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto (as amended, the "Cure Schedule") with the Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Debtors had until April 9, 2010 at 4:00 p.m. (prevailing Central Time) to object to the cure amounts listed by the Debtors. If there are any objections filed, the Court shall hold a hearing. The Debtors shall retain their right, with the consent of Redwood, to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

P.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.     The Plan (including the financing under the DIP Facility, the Definitive Agreement, and all documents necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  Such good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan Confirmation Declarations, and the record of the Plan Confirmation Hearing and other proceedings held in the Chapter 11 Cases.  The Plan, which was developed after many months of analysis and negotiations involving numerous proposals, including proposals solicited by the Debtors from Redwood, Coastwood, and other potentially interested parties, was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and effectuating a successful reorganization of the Debtors.  The Plan (including the Definitive Agreement and all documents necessary to effectuate the Plan) was developed and negotiated in good faith and at arms'-length among representatives of the Debtors, Acquisition Companies, DIP Lender, Lenders, Agents, Bond Trustees, Committee, NSC, NSC-NFPs, and Junior Loan Lenders (as defined below).  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms'-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy

Code and applicable case law in the Fifth Circuit, and are each necessary for the Debtors' successful reorganization.

Q. _Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))_. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R. _Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))_. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors (if any) and officers of each of the Acquisition Companies after confirmation of the Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Interests in the Debtors and with public policy.

S. _No Rate Changes (11 U.S.C. § 1129(a)(6))_. After confirmation of the Plan, the Debtors' business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is satisfied.

T. _Best Interest of Creditors (11 U.S.C. § 1129(a)(7))_. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Plan Confirmation Declarations, the liquidation analysis provided in the Disclosure Statement, and the other evidence proffered or adduced at the Plan Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each Holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest,

property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

U.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  The Deemed Rejecting Classes are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  As found and determined in paragraph DD below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed Rejecting Classes are impaired and are deemed to have rejected the Plan.  The remaining Classes accepted the Plan or are Deemed Accepting Classes.

V.      Treatment of Administrative Expense Claims/Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Financing Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Expense Claims and Allowed Compensation and Reimbursement Claims under Sections 2.1 and 2.2 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The treatment of DIP Funding Claims pursuant to Section 2.4 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

W.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Holders of Claims in the Voting Classes, except for the following 8 Classes (the "Abstaining Classes"), voted to accept the Plan, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code:  **Erickson Retirement Communities, LLC**:  Management Agreement Claims (Class 7); **Columbus Campus, LLC**:  Columbus Improvement Bond Claims (Class 3); Columbus Community Loan Claims (Class 6); **Concord Campus, LP**:  Other Secured Claims

(Class 7); **Littleton Campus, LLC**: Mechanic's Lien Claims (Class 3); Other Secured Claims (Class 7); **Novi Campus, LLC**: Mechanic's Lien Claims (Class 3); **Warminster Campus, LP**: Warminster Junior Loan Claims (Class 6).

X.    Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement and the Plan Confirmation Declarations and the evidence proffered or adduced at the Plan Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that, based, in part, on the financial wherewithal of the Acquisition Companies and the Acquisition Companies' obligations under the Plan, there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and operate their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.    Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan provides that on the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Z.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors do not maintain retirement plans or other benefits obligations other than a 401(k) plan (which is not being assumed). Accordingly, the Debtors have satisfied section 1129(a)(13) of the Bankruptcy Code.

AA.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

BB. <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

CC. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

DD. <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Holders of Claims in the Deemed Rejecting Classes and Abstaining Classes are deemed to have not accepted the Plan.  Based upon the evidence proffered, adduced, and presented by the Debtors in the Plan Confirmation Declarations and at the Plan Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

EE. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.  Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF. <u>Modifications to the Plan</u>.  The modifications to the Plan pursuant to the Plan Supplement through the date hereof constitute changes  that do not materially and adversely change the treatment of any other Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule

3019(a), these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code, nor do they require additional solicitation of the Plan.

GG.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in Plan Confirmation Declarations and the record of the Chapter 11 Cases, the Debtors, Acquisition Companies, DIP Lender, Lenders, Agents, Bond Trustees, NSC, NSC-NFPs, the Creditors Committee, and their respective agents, successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, to the extent applicable, (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 12.7 of the Plan and the Plan Supplement.

HH.    Implementation.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been developed and negotiated in good faith and at arms'-length and shall, upon

completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

II.    Injunction, Exculpation, and Releases.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Sections 12.2, 12.5, 12.6, 12.7 and elsewhere in the Plan and Plan Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases and exculpation set forth in Sections 12.2, 12.5, 12.6, 12.7 and elsewhere in the Plan and Plan Confirmation Order, if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented in the Plan Confirmation Declarations and at the Plan Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.

JJ.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan and implemented by this Plan Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their Estates, creditors, and equity holders.  The releases of non-Debtors under the Plan are fair to Holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of In re Wool Growers Cent. Storage Co., 371 B.R. 768, 777 (Bankr. N.D. Tex. 2007); see also In re Continental Airlines, Inc., 203 F.3d 203, 214 (3d Cir. 2000).  Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such

releases. The Plan Confirmation Declarations and the record of the Plan Confirmation Hearing and these Chapter 11 Cases are sufficient to support the releases, exculpation, and injunction provided for in Section 12 of the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Plan Confirmation Declarations and at the Plan Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Section 12 of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

KK. <u>Settlements</u>. The compromises and settlements among the Debtors and the Creditors Committee, Lenders, NSC, NSC-NFPs, HCP Entities, Morgan Stanley Entities, Sovereign Bank, PPF, Bond Trustees, and Strategic Entities, incorporated into the Plan, are hereby approved pursuant to Bankruptcy Rule 9019 as a fair, prudent, and reasonable compromises of the controversies resolved by such settlements and are binding upon all entities affected thereby according to their terms (subject to further order of the Court only with respect to the settlement among the Debtors, Sovereign Bank and PPF).

LL. <u>Coastwood Administrative Expense Claim</u>. The Auction Fee is deemed an allowed administrative expense of the Debtors' Estates pursuant to section 503(b) of the Bankruptcy Code. Except as otherwise agreed by Coastwood, the Debtors shall pay $9 million Cash from the Cash Transaction Proceeds to Coastwood via wire transfer on the Closing Date as a deemed Allowed Administrative Expense Claim in satisfaction of the Auction Fee. Further, the Auction Fee shall be treated as a Payment in Full Claim pursuant to Section 6.3.12 of the Plan.

MM. Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**<u>ORDER</u>**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2. <u>Notice of the Plan Confirmation Hearing</u>. Notice of the Plan Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Amendments to Plan</u>. The modifications and amendments to the Plan through the date hereof meet the requirements of sections 1127(a) and (c), such modifications do not materially and adversely affect the treatment of the Claim of any creditor or Interest holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.

4. <u>Solicitation</u>. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

5. <u>Ballots</u>. The forms of Ballots annexed to the Voting Certification are in compliance with Bankruptcy Rule 3018(c), as modified, conform to Official Form Number 14, and are approved in all respects.

6.     <u>Solicitation/Offer of New Securities</u>.   To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors and the Acquisition Companies are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder. Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).   The Acquisition Companies and the Debtors have complied with the requirements of section 4(2) of the Securities Act, as the solicitation of acceptances would constitute a private placement of securities.

7.     <u>Confirmation of the Plan</u>.   The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code.   The documents contained in the Plan Supplement are authorized and approved.   The terms of the Plan, including the Plan Supplement, are incorporated by reference into, and are an integral part of this Plan Confirmation Order.

8.     <u>Objections Resolved or Overruled</u>.   Except as provided herein, all objections, responses, statements and comments, if any, in opposition to the Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Plan Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

9.     <u>General Authorizations</u>.   The Plan was approved by the Board of Directors of each Debtor.   Except to the extent provided in the Definitive Agreement or the DIP Facility, pursuant to the appropriate provisions of the corporate or business organizations law of the applicable state of organization of each Debtor, and section 1142(b) of the Bankruptcy Code, no additional action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or

effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

10. <u>Binding Effect</u>. On the date of and following entry of this Plan Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, all Holders of Claims and Interests of the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the Holders of such Claims or Interests have accepted the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11. <u>Vesting of Assets</u>. Except as otherwise provided in the Plan Supplement and Definitive Agreement, as of the Effective Date, pursuant to Bankruptcy Code section 114l(b) and (c), all property of the Debtors' Estates, and any property acquired by a Debtor or Reorganized Debtor under the Plan, the Plan Supplement and the Definitive Agreement shall vest in the Reorganized Debtors, the Liquidating Creditor Trust, or the Acquisition Companies, as applicable, free and clear of all claims, liens, encumbrances, charges, and other interests, except as expressly provided herein, in the Liquidating Creditor Trust documents, Definitive Agreement, any stipulation and order resolving an objection to confirmation of the Plan, or the Plan. On or after the Effective Date, except as otherwise provided in, and subject to, the Plan, the Definitive Agreement and the Trust Agreement, each Reorganized Debtor, Liquidating Creditor Trust, and/or Acquisition Company may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims or causes of action free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, without supervision or approval by the Bankruptcy Court, and in all respects as if there were no pending cases under any chapter or

provision of the Bankruptcy Code, except as provided herein, including paragraph 44 of this Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges it incurs on or after the Effective Date for Professionals' fees and expenses, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to, or approval of, the Bankruptcy Court.

12. <u>DIP Funding Claims</u>. Pursuant to Section 2.4 of the Plan, on the Effective Date, the Borrowers shall pay Cash to each Holder of an Allowed DIP Funding Claim in an amount equal to such Claim in full and complete satisfaction of such Claim through a credit against the Cash Transaction Proceeds, and all obligations and commitments thereunder shall be terminated. Upon payment or satisfaction in full of all obligations under the DIP Facility, any and all liens and security interests securing obligations under the DIP Facility shall be deemed terminated and shall be of no further force and effect.

13. <u>Implementation of the Plan</u>. The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement and the Trust Agreement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan, including all such actions delineated in Section 6 of the Plan. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of the boards of directors of the same are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases and other agreements, including those contained in the Plan Supplement, the Trust Agreement, contemplated by the Plan, in the name of and on behalf of the Reorganized Debtors. The rights of Erickson Group with respect to the GST Loan are hereby assigned to the

Liquidating Creditor Trust for the benefit of the Construction Lenders with Erickson Group Guaranty Claims, subject to Section 6.4.7 of the Plan and the Trust Agreement.

14.    The Asset Purchase.  The purchase of the Debtors' assets (the "Asset Purchase") is in the best interests of the Debtors, their Estates, and parties in interest.  As more fully described in Section 2.1 of the Definitive Agreement, the Acquisition Companies are acquiring substantially all of the assets of the Sellers relating to the Business and the equity interests in the Transferred Landowners, other than certain Excluded Assets (the "Purchased Assets") free and clear of all Claims, liens, encumbrances, charges, liabilities, and interests encumbering the Purchased Assets, including, but not limited to, those real property liens set forth on Exhibit 1 attached hereto, but, however, excluding those real property related liens set forth on Exhibit 2 attached hereto and any liens retained pursuant to the terms of any stipulation and order resolving an objection to confirmation and certain permitted encumbrances, specifically the Community Loans, Special District Tax Bonds (including, Transportation Development District Special Assessment Bonds, Series 2006 issued by the City of Overland Park, Kansas), Warminster Purchase Option Deposit Refund Agreement (as amended), and in the case of Warminster, certain other obligations and encumbrances associated with the Ann's Choice Bonds (as set forth in the Definitive Agreement or Plan, including, but not limited to, Exhibit D to the Plan), as restructured pursuant to the Plan.  The acquisition of the Purchased Assets do not and shall not constitute avoidable transfers under the Bankruptcy Code or applicable non-bankruptcy law or subject the Acquisition Companies or Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including by laws affecting successor or transfer liability.  The Purchased Assets include, but are not limited to, the following:  (i) the intellectual property owned or used by the Debtors in the Business (which will include all rights to the name "Erickson Retirement Communities"

and variations thereof owned or in use by the Debtors); (ii) certain contracts and all tangible and intangible personal property owned or used by the Debtors in the Business; (iii) all original books and records relating to the Business; (iv) all of the Debtors' right, title, and interest in the B&R Notes; (v) Cash (other than Medical Claims Cash, Cash Collateral, and Landowner Retained Cash), including Cash equivalents, not to exceed $10,000,000; (vi) permits, to the extent transferable pursuant to applicable law; (vii) Medical Claims Cash, Cash Collateral, and Landowner Retained Cash available at Closing at the applicable Landowner; (viii) insurance policies; (ix) furnishings, furniture, supplies, tools, machinery, monitoring and other equipment and other personal property and fixed assets; (x) Corporate Headquarters; (xi) all IEDs with respect to the Tallgrass Creek Campus in excess of $814,000 and all IEDs collected after November 27, 2009 at Warminster campus, all of which remain subject to the terms of the applicable community loans; (xii) ERC's interests in the Transferred Landowners; and (xiii) all Transferred Claims (other than those described herein and those waived or released pursuant to the Plan). Unless provided otherwise in the Plan, any stipulation and order resolving an objection to confirmation or in the Plan Documents, any valid liens with respect to the Purchased Assets, shall be satisfied and released to the extent of treatment of Allowed Claims in accordance with the Plan; provided, however, the Cash Collateral, including certificates of deposit securing the Erickson Construction Letters of Credit and ERC Letters of Credit, shall be transferred along with the collateral securing such Letters of Credit and subject to existing liens. From and after the sale of the Purchased Assets, Redwood shall permit each of the Bonded Communities known as Monarch Landing, Sedgebrook and Linden Ponds access to use intellectual property, personal property, permits, insurance or other Purchased Assets as and to the extent used by each such Bonded Community prior to the sale on reasonable business terms and under pricing consistent with industry standards and as mutually agreed by Redwood, the applicable NSC-NFP, and the

applicable Bond Trustee. Such use shall cease no later than one (1) year after the management agreement for the applicable Bonded Community is terminated. Further, the Reorganized Debtors are hereby authorized to consummate the Asset Purchase as set forth in the Definitive Agreement (which is hereby deemed assumed without the need for any cure), execute any documents, and take any additional action necessary to consummate the Asset Purchase or as otherwise contemplated by the Definitive Agreement. In addition, on the Effective Date, the Debtors or Reorganized Debtors may (a) cause the transfer of assets or equity interests between or among the Debtors or Reorganized Debtors and/or (b) engage in any other transaction in furtherance of the Plan in each case, subject to paragraph 44 of this Plan Confirmation Order.

15. <u>Kansas Special Assessment Bonds</u>. Assumption of the Kansas Special Assessment Bonds pursuant to Section 4.12.4 of the Plan shall be subject to the following terms: (A) On the Effective Date, Redwood–Kansas will acquire the real property assets (excluding $814,000 in IEDs), improvements and assets of Kansas Campus, LLC (the "<u>Kansas Property</u>") in exchange for the assumption of (1) the obligation to pay the special assessments as owner of the Kansas Property for 2010 and subsequent years, and (2) the obligations of Kansas Campus, LLC under the following agreements: (i) Infrastructure, Development and Indemnity Agreement dated December 12, 2006 (the "<u>Infrastructure Development Agreement</u>") among the City of Overland Park, Kansas ("<u>Overland Park</u>"), Erickson Retirement Communities, LLC, Kansas Campus, LLC and Tallgrass Creek, Inc., (ii) Tax Regulatory Agreement dated as of December 1, 2006 (the "<u>Tax Regulatory Agreement</u>") by and among Overland Park, Kansas Campus, LLC and Tallgrass Creek, Inc., and (iii) Administrator's and Owner's Continuing Disclosure Agreement dated December 12, 2006 between Kansas Campus and MuniCap, Inc. and Kansas Campus, LLC and acknowledged by Overland Park <u>subject to the following additional terms and conditions</u>:

(a) the parties to the Infrastructure Development Agreement shall acknowledge and agree that to the extent that additional work is required to complete the Project (as defined in the Infrastructure Development Agreement), and sufficient funds for such work are not on deposit in the Construction Fund (as defined in the Infrastructure Development Agreement), Redwood-Kansas shall be obligated to perform such work only if Redwood-Kansas determines to construct additional housing and/or related retirement community facilities at the Development Site (as defined in the Infrastructure Development Agreement); (b) Redwood-Kansas shall not be obligated under (1) the Tallgrass Creek Development Agreement dated October 20, 2006 between Kansas Campus, LLC and Erickson Retirement Communities, LLC, (2) the Tallgrass Creek, Master Lease and Use Agreement dated as of October 20, 2006 between Kansas Campus, LLC and Tallgrass Creek, Inc., and (3) the Lease dated December 12, 2006 between Kansas Campus, LLC and Tallgrass Creek, Inc., provided, however, that Redwood-Kansas shall enter into mutually acceptable leases, development agreements, management agreements and related documents (the "New Agreements") with Tallgrass Creek and other parties consistent with Redwood-Kansas's obligations under the Infrastructure Development Agreement, including, but not limited to, Section 2.02(c) thereof, and under the Tax Regulatory Agreement which preserves and maintains the tax-exempt status of the interest on the Bonds (as defined therein), as such agreements are being assumed by the Debtors and assigned to the Acquisition Companies under the Plan; (c) as a condition to and prior to the transfer of the Kansas Property and the execution of the New Agreements, Redwood-Kansas will deliver to Overland Park and the Kansas Bond Trustee an opinion of bond counsel to the effect that in the opinion of bond counsel, neither the transfer of the Kansas Property nor the execution, delivery and performance of the New Agreements will adversely impact the exclusion of the interest payable on the bonds from the gross income of the holders of the bonds for federal income tax purposes, and an opinion from

counsel to Tallgrass Creek to the effect that in the opinion of counsel, the execution, delivery and performance of the New Agreements will not have an adverse effect on the 501(c)(3) status of Tallgrass Creek, each in a form and from a firm acceptable to Overland Park and the Kansas Bond Trustee; and (d) Redwood-Kansas shall either enter into a new Agreement for Administration Services with MuniCap, Inc. and Overland Park in substantially the form of the Agreement for Administration Services between MuniCap, Inc., Overland Park and the Developer dated December 17, 2006, or otherwise provide for the services to have been provided by MuniCap, Inc. therein in a manner acceptable to Overland Park and the Kansas Bond Trustee; (e) the Kansas Bond Trustee shall apply the approximately $814,000 on deposit in the Debt Service Fund, representing a transfer of funds from the Construction Fund, to the payment of debt service on the Bonds (with an appropriate adjustment of future Special Assessments to be made pursuant to the Agreement for Administration Services), or to the redemption of Bonds. With respect to all Bond Obligations due through and including September 1, 2010, the Kansas Bond Trustee shall make all required bond debt service payments from the funds held under the Indenture and from funds to be paid as specified herein so as to avoid any payment Event of Default under the Indenture and shall waive the requirements of the Indenture to the extent inconsistent herewith. Nothing contemplated in the Definitive Agreement, Plan or Plan Confirmation Order shall constitute or result in an Event of Default under the Indenture or related documents. (B) On the Effective Date, Erickson Retirement Communities, LLC and Kansas Campus, LLC shall pay to the Kansas Bond Trustee for deposit in the Debt Service Fund the $1,283,537.44 special assessments for 2009 relating to the Kansas Property, together with interest accrued on such amount at the rate of 8% per annum from December 20, 2009 through the Effective Date (the "2009 Kansas Bonds Special Assessments"). The 2009 Kansas Bonds Special Assessments shall not be subject to Debtors' Motion For Determination of Tax Liability

[Dkt. No. 1211] or Debtors' Amended Motion For Determination of Tax Liability [Dkt. No. 1287]. On the Effective Date, Erickson Retirement Communities, LLC and Kansas Campus, LLC shall also deposit with Chicago Title, or other similar entity, as escrow agent, the $445,785.67 real property general mill levy taxes ("2009 Kansas Mill Levy Taxes"), together with interest accrued on such sum at the rate of 8% per annum from December 20, 2009 through the Effective Date, in a segregated trust account in which only such funds are held (the "Kansas Escrow Account"). Any lien, right or remedy of Johnson County, Kansas, Overland Park, or any other local taxing authority in Kansas securing the 2009 Kansas Mill Levy Taxes assessed against the Kansas Property shall attach to and be secured by the funds deposited into the Kansas Escrow Account. The escrow agent shall hold all funds in the Kansas Escrow Account until either (a) delivery to the escrow agent of a written instruction for the release of the 2009 Kansas Mill Levy Taxes, together with interest thereon, as executed by Kansas Campus, LLC, Erickson Retirement Communities, LLC, Johnson County, Kansas and the Agent for the Holders of the Kansas Construction Loan Claims or (b) a final, non-appealable order of this Court directing disposition of funds in the Kansas Escrow Account. No person or entity, other than Kansas Campus, LLC, Erickson Retirement Communities, LLC, Overland Park, Johnson County, Kansas, and the Agent for the Holders of the Kansas Construction Loan Claims shall have any right or claim to any funds in the Kansas Escrow Account and the escrow agent shall have no right of offset respecting any funds in the Kansas Escrow Account. All of such funds in the Kansas Escrow Account shall be held and distributed pursuant to paragraph 41 of this Plan Confirmation Order. In the event the foregoing interest amount deposited into the Kansas Escrow Account, and any interest or investment income accrued on amounts in such account, are insufficient to pay the full interest due upon the release of funds from the Kansas Escrow Account, Kansas Campus, LLC shall immediately pay such deficiency and shall be jointly and

severally liable therefor.  Notwithstanding anything to the contrary herein or in the Plan, nothing in the Plan or this Plan Confirmation Order shall adversely affect any lien, right or remedy of Johnson County, Kansas, Overland Park, the Kansas Bond Trustee or any other local taxing authority in Kansas concerning the Kansas Property and such parties preserve all rights, defenses and claims regarding Debtors' Motion For Determination of Tax Liability [Dkt. No. 1211] and Debtors' Amended Motion For Determination of Tax Liability [Dkt. No. 1287].

16.    The Acquisition Companies are good faith purchasers.  The Purchased Assets shall be transferred to the Acquisition Companies pursuant to section 1141(c) of the Bankruptcy Code free and clear of all liens claims and interests of creditors and equity security holders of the Debtors except for such Liens, claims, and interests otherwise provided herein, in any stipulation and order resolving an objection to confirmation or in the Plan.  Any reversal, modification or appeal of the authorization provided herein to consummate the transactions contemplated under the Plan or Definitive Agreement shall not affect the validity of the sale of the Purchased Assets to the Acquisition Companies, and such sale may not be avoided.

17.    <u>Compliance with Section 1123(a)(6) of the Bankruptcy Code</u>.  The adoption and filing by Reorganized Debtors of the amended and restated charters is hereby authorized, ratified, and approved.

18.    <u>Exemption from Securities Law</u>.  The issuance of the Litigation Trust Interests, and any other securities pursuant to the Plan and, to the extent permitted by law, any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

19.    <u>Cancellation of Existing Securities and Agreements</u>.  Except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory

contracts or unexpired leases that have been assumed by the Debtors, (iii) with respect to letters of credit, or (iv) as otherwise provided under the Plan, on the Effective Date, all the agreements and other documents evidencing the Claims or rights of any Holder of a Claim against the Debtors, including all lending and security agreements and encumbrances evidencing such Claims shall be cancelled with respect to the Debtors, but shall continue to govern the rights and obligations by and among third parties. In addition, (i) the Interests in the Debtors, and (ii) any options or warrants to purchase Interests in the Debtors, obligating the Debtors to issue, transfer, or sell Interests or any other capital stock of the Debtors, shall be cancelled.

20.    <u>Subordination</u>.  Except as otherwise expressly provided in the Plan, this Plan Confirmation Order, or a separate order of this Court, the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

21.    <u>Compromise of Controversies</u>.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan. Consideration for all such compromises, settlements and releases is adequate and the entry of this Plan Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to the provisions of the Plan.

22.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to Section 10.1 of the Plan, except as otherwise provided in any contract, instrument, release, indenture, the Plan or other agreement or document entered into in connection with the Plan, as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected as of the Effective Date except for an executory contract

or unexpired lease that (i) previously has been assumed pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as an executory contract or unexpired lease to be assumed in the Plan or in any Plan Supplement, or (iii) is the subject of a separate assumption motion or stipulation filed by the Debtors under section 365 of the Bankruptcy Code prior to the Effective Date. Such contract and lease assumptions or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, other than as provided herein, are overruled.

23.    <u>Assignment of Executory Contracts or Unexpired Leases</u>.  On and after the Effective Date, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtors and Reorganized Debtors may transfer and assign any of their executory contracts or unexpired leases that have not been rejected to the Acquisition Companies or their affiliates without any further act, authority, or notice <u>subject to</u> the unqualified right of Redwood, the Acquisition Companies, or an affiliate of such entities to refuse such transfer or assignment. Notwithstanding the above or any other provision of the Disclosure Statement, the Plan or any order on the Disclosure Statement and/or Plan, the foregoing shall not impair rights against any party not a Debtor under the Bond Documents.  Any executory contract or unexpired lease so transferred and assigned shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  Any provision that prohibits, restricts, or conditions the assignment or transfer by the Debtors or Reorganized Debtors of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or

extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect. The stay under Bankruptcy Rule 6006(d) is hereby waived, and the terms and conditions of this Plan Confirmation Order shall be immediately effective and enforceable upon its entry.

24. <u>Assumption and Assignment of CNA Insurance Agreements</u>. Notwithstanding anything to the contrary contained in the Plan or this Plan Confirmation Order, the assignment of any insurance policies issued by Continental Casualty Company, Transportation Insurance Company, American Casualty Company of Reading, Pennsylvania and their American insurance affiliates (individually or collectively, "<u>CNA</u>") in favor of the Debtors, together with any related agreements, including, but not limited to, insurance policies, deductible security agreements, collateral trust agreements and any other related documents (the "<u>CNA Insurance Agreements</u>") shall not take effect until the Debtors, the Acquisition Companies, and their affiliates have executed and delivered to CNA an agreement in a form reasonably acceptable to CNA, providing for (i) the Acquisition Companies' assumption of all of the Debtors' pre-closing and post-closing obligations and liabilities under the CNA Insurance Agreements, (ii) the assignment to the Acquisition Companies of all of the Debtors' right, title and interest to the CNA Insurance Agreements, and (iii) the full and satisfactory collateralization of all of the Acquisition Companies' assumed obligations under the CNA Insurance Agreements through appropriate amendments to the existing collateral trust agreement, or other arrangements acceptable to CNA (the "<u>Assumption Agreement</u>"). Nothing contained in the Plan or this Plan Confirmation Order shall authorize the assignment of the CNA Insurance Agreements to any party other than the Acquisition Companies, absent the consent of CNA. Notwithstanding anything to the contrary contained in the Plan or this Plan Confirmation Order, the proofs of claim filed by CNA in these proceedings shall not be expunged or disallowed until the

Assumption Agreement has been finalized, signed and taken effect between the parties; provided, however, that if the Assumption Agreement never takes effect, the parties reserve the right to litigate the allowance of such proofs of claim, with all claims, objections and defenses thereto being expressly preserved by the parties.

25.     _Conditions to Effective Date_.  The Plan shall not become effective unless and until the conditions set forth in Section 11.1 of the Plan and in this Plan Confirmation Order have been satisfied or waived pursuant to Section 11.2 of the Plan.  In the event that one or more of the conditions specified in Section 11.1 of the Plan have not been satisfied or waived in accordance with Section 11.2 of the Plan, (i) the Plan Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all Holders of Claims and Interests shall be restored to the _status quo ante_ as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date never occurred, and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan or in the Plan Confirmation Order shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or otherwise.

26.     _Professional Compensation_.  Except as provided in the Plan, all entities seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Plan Confirmation Date (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, (ii) shall be paid in full from the Debtors' Cash on hand in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date, and (ii) the date upon which the order relating

to any such Allowed Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Administrative Expense Claim and the Debtors. The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Plan Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval, subject to Section 2.2 of the Plan. All fees, costs, and expenses paid to the Professionals shall be deemed fully earned, non-refundable and irrevocable as of the date hereof, and any and all of such fees, costs, and expenses shall not be subject to challenge, recharacterization, or reduction. Further, the Debtors and/or the Reorganized Debtors, as the case may be, shall deposit into an escrow account the sum of $1.1 million to pay the fees and expenses of the Creditors Committees' attorneys and financial advisors pursuant to Section 6.4.19 of the Plan.

27. <u>Injunction</u>. Except as otherwise provided in the Plan, all persons or entities who have held, now hold, or may hold Claims against any of the Debtors or Interests in the Debtors and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim or Interest against (a) the Debtors, (b) the Reorganized Debtors, (c) Redwood, ERC Funding Co. LLC, the Creditors Committee and each of its members (each solely in its capacity as a member of such Creditors Committee and subject to Section 6.4 of the Plan), the Liquidating Creditor Trust, the Trustee, the Corporate Revolver Lenders, the Construction Lenders, HCP, Inc., HCP ER2, LP, HCP ER3, LP, HCP ER6, LP, Agents, or the Lenders including any participants, the lenders under the UMBC Building Construction Loan, the Bond Trustees, MSRESS III Dallas Campus, L.P., MSRESS III Denver Campus, LLC, MSRESS III Kansas Campus, L.P., Strategic Concord Landholder, LP,

Strategic Ashby Ponds Lender, LLC, the NSC, the NSC-NFPs, Acquisition Companies, PNC Bank, National Association, as collateral and administrative agent with respect to the syndicated Ashburn Construction Loan, syndicated Concord Construction Loan, syndicated Kansas Construction Loan and syndicated Houston Construction Loan, and as the lender with respect to the participated Novi Construction Loan, the Holders of the Interest Rate Swap Claims, the holder of the loan secured by the Corporate Headquarters and (d) their Advisors, affiliates (as to affiliates of the Debtors,[5] subject to Sections 6.4 and 12.2.4 of the Plan), employees (as to employees of the Debtors, subject to Section 6.4 of the Plan), advisors, officers (as to officers of the Debtors, subject to Section 6.4 of the Plan) and directors (as to directors of the Debtors, subject to Section 6.4 of the Plan), agents, and attorneys or any thereof and, in the case of Agents or Lenders, both in their capacities as Agents or Lenders and in any other capacities ((c) and (d) above, the "<u>Third Party Releasees</u>"; in accordance with the definition of the term "NSC-NFPs", the term "Third Party Releasees" does not include Charlestown, Inc. or Henry Ford Village, Inc.; also, the term "Third-Party Releasees" does not include the Erickson Parties, SCL Realty II, LLC, The Erickson Foundation, Inc., Charlotte Campus, LLC, and B.C. Zeigler and Company and its affiliates); (ii) with respect to such Claim or Interest, the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or the Third Party Releasees; (iii) with respect to such Claim or Interest, creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, or Third Party Releasees or against the property or interests in property of the Debtors, the Reorganized Debtors, or Third Party Releasees; or (iv) with respect to such Claim or Interest, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, or Third Party Releasees.

---

[5] The following are not affiliates of the Debtors:  the NSC; the NSC-NFPs; or any of the Erickson Parties.

Such injunction shall extend to any successors of the Debtors, Reorganized Debtors, Third Party Releasees, and their respective properties and interest in properties. Notwithstanding the above, neither the foregoing terms nor any other provision of the Disclosure Statement, the Plan or any order on the Disclosure Statement and/or Plan shall release or in any manner limit (i) the obligations of any NSC-NFP or other party not a Debtor in these cases under any Bond Documents; (ii) any rights or claims by any Bond Trustee or beneficial bondholder against any NSC-NFP or other party not a Debtor based on obligations under any Bond Documents; or (iii) any rights or claims by any NSC-NFP against any party not a Debtor in these cases based on obligations under any Bond Documents.

28.    The provisions of paragraph 27 shall apply to Claims (collectively, the "NSC-NFP Subject Claims") (i) of the Agents and/or the Lenders and/or their respective present and former employees, agents, officers, directors, principals, and affiliates; (ii) against the NSC and/or any one or more of the NSC-NFPs and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof; and (iii) arising from or related to (AA) a Management Agreement between ERC and an NSC-NFP that operates a Campus that is owned or leased by a Landowner Debtor (each such NSC-NFP, a "Debtor-Related NSC-NFP" and, collectively, the "Debtor-Related NSC-NFPs"), (BB) a master lease between a Debtor-Related NSC-NFP and a Landowner Debtor, (CC) the Community Loans (including the related note(s)), (DD) a working capital loan from a Landowner Debtor or ERC to a Debtor-Related NSC-NFP (including the related note(s)), (EE) any mortgage, security agreement, pledge agreement, assignment (absolute or collateral) or estoppel certificate given, granted, provided or pledged to an Agent or a Lender by a Debtor-Related NSC-NFP directly in connection with the Construction Loan to the corresponding Landowner Debtor, the Community Loan from the applicable Debtor-Related NSC-NFP to the corresponding Landowner Debtor or the working

capital loan from the applicable Landowner Debtor to the corresponding Debtor-Related NSC-NFP, (FF) payments made by the Debtors to the NSC and/or the NSC-NFPs prior to the Petition Date (including payments made by offset), the NSC Interim Payments or the NSC Payment (other than with respect to the NSC and the NSC-NFPs' obligations with respect to the NSC Payment Rebate), (GG) except as set forth in the succeeding sentence, any subordination agreement or standstill agreement with respect to a master lease and/or Community Loan (and/or any related mortgage, lien, security interest or pledge) between an Agent and a Debtor-Related NSC-NFP, (HH) any other document entered into directly in connection with the Construction Loans provided to the Landowner Debtors, (II) subject to the NSC and the NSC-NFPs' obligations with respect to the NSC Payment Rebate, charitable contributions made by any person or entity to the NSC or any NSC-NFP or any affiliated charitable fund or any other distribution to the NSC-NFPs as provided for under the terms of the Plan, or (JJ) any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into the documents described in sub-clauses (AA) through (HH) of this clause (iii). The NSC-NFP Subject Claims shall also include Claims (aa) of the Agents and/or the Lenders and/or their respective present and former employees, agents, officers, directors, principals, and affiliates; (bb) against the NSC and/or any one or more of the NSC-NFPs and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof; and (cc) arising (xx) in connection with the Corporate Revolver (including any agreement (including any Management Agreement), instrument or other document related thereto or entered into in connection therewith and including any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into any such agreement, instrument or other document), (yy) in connection with the UMBC Construction Loan (including any agreement, instrument or other document related thereto or entered into in

connection therewith and including any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into any such agreement, instrument or other document), or (zz) under the Bankruptcy Code or otherwise applicable law with respect to preferential transfer, fraudulent conveyance, fraudulent transfer or any other avoidance action or remedy available to the persons or entities, acting in any capacity, listed in clause (aa) of this sentence (nothing in this clause (zz) is intended to modify the definition of "Transferred Claims" or the definition of "Estate Assigned Claims" set forth in the Plan). Notwithstanding anything in the Plan or this Plan Confirmation Order, the provisions of paragraph 27 shall not apply to any action against the NSC or any NSC-NFP and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof to enforce or pursue in any manner whatsoever the following: (XX) any claims (including any Claims and/or NSC-NFP Subject Claims) for indemnity or contribution or any cross claims, counter claims or third party claims (to the extent that such cross claims, counter claims or third party claims arise from or in connection with or are related to, whether directly or indirectly, the action, claim or proceeding pursued or prosecuted against any Agent or Lender) in the event that any third party (including, without limitation, any governmental entity or regulatory body) pursues or prosecutes any action, claim or proceeding against any Agent or Lender; or (YY) any claims (including any Claims and/or NSC-NFP Subject Claims) under existing subordination agreements to the extent that the NSC and/or any NSC-NFP receives, after the Effective Date of the Plan, any distributions (other than as provided under the Plan) from the Estates, Creditors' Trust or the Debtors (the claims described in clauses (XX) and/or (YY), collectively, the "NSC-NFP Carveout Claims").  The NSC and the NSC-NFPs retain all defenses to the NSC-NFP Carveout Claims.  For the avoidance of doubt, nothing under the Plan entitles the NSC or any NSC-NFP to a distribution from the Liquidating Creditor Trust.

29.     The provisions of paragraph 27 shall apply to Claims (collectively, the "Agent/Lender Subject Claims" and, together with the NSC-NFP Subject Claims, the "Subject Claims") (i) of the NSC and/or one or more of the NSC-NFPs and/or their respective present and former employees, agents, officers, directors, principals, and affiliates; (ii) against the Agents and/or the Lenders and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof; and (iii) arising from or related to (AA) a Management Agreement between ERC and a Debtor-Related NSC-NFP that operates a Campus that is owned or leased by a Landowner Debtor, (BB) a master lease between a Debtor-Related NSC-NFP and a Landowner Debtor, (CC) the Community Loans (including the related note(s)), (DD) a working capital loan from a Landowner Debtor to a Debtor-Related NSC-NFP (including the related note(s)), (EE) any mortgage, security agreement, pledge agreement, assignment (absolute or collateral) or estoppel certificate given, granted, provided or pledged to an Agent or a Lender by a Debtor-Related NSC-NFP directly in connection with the Construction Loan to the corresponding Landowner Debtor, the Community Loan from the applicable Debtor-Related NSC-NFP to the corresponding Landowner Debtor or the working capital loan from the applicable Landowner Debtor to the corresponding Debtor-Related NSC-NFP, (FF) any subordination agreement or standstill agreement with respect to a master lease and/or Community Loan (and/or any related mortgage, lien, security interest or pledge) between an Agent and a Debtor-Related NSC-NFP, (GG) any other document entered into directly in connection with the Construction Loans provided to the Landowner Debtors, or (HH) any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into the documents described in sub-clauses (AA) through (GG) of this clause (iii).  The Agent/Lender Subject Claims shall also include Claims (aa) of the NSC and/or one or more of the NSC-NFPs and/or their respective present and former employees, agents, officers, directors, principals, and

affiliates; (bb) against the Agents and/or the Lenders and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof; and (cc) arising (xx) in connection with the Corporate Revolver (including any agreement (including any Management Agreement), instrument or other document related thereto or entered into in connection therewith and including any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into any such agreement, instrument or other document), (yy) in connection with the UMBC Construction Loan (including any agreement, instrument or other document related thereto or entered into in connection therewith and including any claim in tort, in contract or otherwise in connection with or related to the relationship established on account of the entry into any such agreement, instrument or other document), or (zz) under the Bankruptcy Code or otherwise applicable law with respect to preferential transfer, fraudulent conveyance, fraudulent transfer or any other avoidance action or remedy available to the persons or entities, acting in any capacity, listed in clause (aa) of this sentence (nothing in this clause (zz) is intended to modify the definition of "Transferred Claims" or the definition of "Estate Assigned Claims" set forth in the Plan).

30. The provisions of paragraph 27 shall not apply to Claims (collectively, the "Exempt Claims" and, together with the NSC-NFP Carveout Claims, the "Reserved Claims") (i) of the Agents and/or the Lenders and/or their respective present and former employees, agents, officers, directors, principals, and affiliates against the NSC and/or any one or more of the NSC-NFPs and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof that are not NSC-NFP Subject Claims; (ii) of the NSC and/or any one or more of the NSC-NFPs and/or their respective present and former employees, agents, officers, directors, principals, and affiliates against an Agent or any Lender and/or their affiliates, employees, advisors, officers and directors, agents, and attorneys or any thereof that are not

Agent/Lender Subject Claims; (iii) against any affiliate of any Debtor that is not itself a Debtor;[6] (iv) assumed by any of the Acquisition Companies or that the Plan provides will otherwise survive the confirmation of the Plan (including, without limitation, letters of credit, cash management arrangements, swaps, hedges or other risk-hedging transactions); or (v) on account of transactions occurring after the Effective Date. Without limiting the generality of the preceding sentence, Claims in connection with, arising under or related to the following are also Exempt Claims: (AA) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture dated as of November 1, 2006 by and among New Jersey Economic Development Authority, Cedar Crest Village, Inc. and Wells Fargo Bank National Association, not individually but as successor to Manufacturers and Traders Trust Company, as indenture trustee, including, without limitation, the Letter of Credit Agreement dated as of November 1, 2006 among Cedar Crest Village, Inc., Point View Campus, LLC and Sovereign Bank (as Bank and Administrative Agent), (BB) the Loan Agreement dated as of June 4, 2008 between Sovereign Bank (as Lender) and St. Louis Campus, LLC (as Borrower), and any agreements, instruments or other documents relating thereto; (CC) the Letter of Credit Agreement dated as of December 1, 2007 by and between Sovereign (as Bank and Administrative Agent) and The Erickson Foundation, Inc., and any agreements, instruments or other documents relating thereto; (DD) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture, dated as of December 1, 2004, by and among Massachusetts Development Finance Agency, Brooksby Village, Inc. and Bank of America, N.A., including, without limitation, the Letter of Credit Agreement, dated as of September 1, 2002, between Brooksby Village, Inc. and Bank of America, N.A. (as successor

---

[6] The following are not affiliates of the Debtors: the NSC; the NSC-NFPs; or any of the Erickson Parties for the purposes of this provision.

by merger to LaSalle Bank National Association, as Bank and as agent); (EE) the International Swaps and Derivative Association 2002 Master Agreement and Schedule dated December 27, 2005 between Bank of America, N.A. and Charlestown Community, Inc., Henry Ford Village, Inc., Oak Crest Village, Inc., Greenspring Village, Inc., Brooksby Village, Inc., Ann's Choice, Inc., Linden Ponds, Inc., Riderwood Village, Inc., Cedar Crest Village, Inc., Seabrook Village, Inc., Fox Run Village, Inc. and Sedgebrook, Inc. and/or any agreements, instruments or other documents related thereto; (FF) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture dated as of March 1, 2004 by and among Montgomery County, Maryland, Riderwood Village, Inc. and Wells Fargo Bank, National Association, not individually but as successor to Manufacturers and Traders Trust Company, as indenture trustee), including, without limitation, the Amended and Restated Construction Loan Agreement dated as of June 1, 2001 among Silver Oaks Holdings, LLC, Riderwood Village, Inc. and Manufacturers and Traders Trust Company (as successor to Allfirst Bank, as Bank), as such agreements, instruments or other documents may have been amended, supplemented, restated, replaced or otherwise modified from time to time; (GG) any deposit account agreement, bank account agreement, bank account or other account management agreement, cash management agreement, credit card agreement, investment agreement, investment management agreement or similar agreement or any equipment lease by and between (in the event of any of the types of agreements or leases set forth in this clause (GG)) any Agent or Lender (whether as lessor or otherwise) and NSC or any NSC-NFP or any affiliate of a Debtor that is not itself a Debtor; (HH) the Promissory Note dated as of January 11, 2007 given by Westminster Campus, LLC (as Borrower) and payable to Capmark Bank (as Lender) and all agreements, instruments or other documents evidencing or securing the obligations of Westminster Campus, LLC under such Promissory Note; (II) the Promissory Note dated August

27, 2008 in the stated principal amount of $10,000,000 from Charlotte Campus, LLC as the maker thereof and payable to the order of PNC Bank, National Association and the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 27, 2008 together with all other instruments and agreements evidencing or securing the obligations of Charlotte Campus, LLC under such Promissory Note; (JJ) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture dated as of May 1, 2007 by and among Baltimore County, Maryland, Oak Crest Village, Inc. and Wells Fargo Bank National Association, not individually but as successor to Manufacturers and Traders Trust Company as indenture trustee; (KK) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture dated as of December 1, 2006 by and among New Jersey Economic Development Authority, Seabrook Village, Inc. and Wells Fargo Bank National Association, not individually but as successor to Manufacturers and Traders Trust Company as indenture trustee; (LL) any agreements, instruments or other documents relating to the "Bonds" described (and/or as defined) in the Trust Indenture dated as of October 1, 2006 by and among Fairfax County Economic Development Authority, Greenspring Village, Inc. and Wells Fargo Bank National Association, not individually but as successor to Manufacturers and Traders Trust Company as indenture trustee; (MM) any agreements, instruments or other documents relating to those certain Hickory Chase Community Authority Infrastructure Improvement Revenue Bonds, Series 2008 (Hickory Chase Project); and/or (NN) the Term Note dated April 1, 2008 in the stated principal amount of $3,600,000 from SCL Realty II, LLC as the maker thereof and payable to PNC Bank, National Association and the Deed of Trust, Assignment and Security Agreement dated April 1, 2008, together with all other instruments, documents, guarantees and agreements evidencing or securing the obligations of SCL Realty II, LLC under such Term Note; and/or (OO) any and all

any agreements, instruments, guarantees or other documents relating to the $40,000,000 Maryland Economic Development Corporation Revenue Bond described in the Loan and Financing Agreement dated August 29, 2000 by and among The Erickson Foundation, Inc., Maryland Economic Development Corporation, and PNC Bank, National Association, successor to Mercantile-Safe Deposit and Trust Company ("Financing Agreement"), including but not limited to the "Documents" as such term is defined in the Financing Agreement.  Any reference to an agreement, instrument or document in the immediately preceding sentence shall include such agreement, instrument or document as it may have been amended supplemented or otherwise modified.  All parties retain all defenses to all Exempt Claims.

31.  Releases by the Debtors.  Pursuant to Section 12.5 of the Plan, as of the Effective Date, the Debtors, the Reorganized Debtors, and Third Party Releasees shall be deemed to be forever released and discharged from any and all claims (including all Claims), obligations, suits, judgments, arbitrations, damages, rights, causes of action (including, without limitation, Bankruptcy Code chapter 5 causes of action) or liabilities, whether known or unknown, whether foreseen or unforeseen, based upon any action or omission, transaction or occurrence taking place on or before the Effective Date of the Plan in any way relating to the Debtors, the Chapter 11 Cases, the Estates, or the Plan, and/or which may have directly or indirectly impacted or affected in any way the value of any Claim or corresponding Distribution on any Claim against the Debtors.  This Plan Confirmation Order hereby enjoins any prosecution of any Claim, debt, right, cause of action or liability which was or could have been asserted against the Debtors, Reorganized Debtors, or Third Party Releasees on or after the Effective Date; provided, however, that neither the immediately preceding portion of this sentence nor the provisions of the first sentence of this paragraph will operate as a waiver or release of any Reserved Claim or any causes of action arising out of the willful misconduct, intentional fraud,

or criminal liability of the Debtors, the Reorganized Debtors, or Third Party Releasees. The provisions of the Plan shall not operate as a release of any of the Debtors', the Reorganized Debtors', or Third Party Releasees' obligations under the Plan (including as to claim number 265 or claim number 266 against the Debtors; and also including as to any claim arising on account of the interest set forth in financing statement no. 0000000181238268 filed with the Maryland Secretary of State on July 29, 2005 (as amended)) and the rights of the Debtors, the Reorganized Debtors, Redwood, or the Acquisition Companies and their affiliates, employees, advisors, officers and directors, successors, and assigns to enforce the Plan and the contracts, instruments, indentures and other agreements or documents delivered or assumed under the Plan, including, without limitation, the Definitive Agreement (including as to claim number 265 or claim number 266 against the Debtors; and also including as to any claim arising on account of the interest set forth in financing statement no. 0000000181238268 filed with the Maryland Secretary of State on July 29, 2005 (as amended)). Notwithstanding the above, neither the foregoing terms nor any other provision of the Disclosure Statement, the Plan or any order on the Disclosure Statement and/or Plan shall release or in any manner limit (i) the obligations of any NSC-NFP or other party not a Debtor in these cases under any Bond Documents; (ii) any rights or claims by any Bond Trustee or beneficial bondholder against any NSC-NFP or other party not a Debtor based on obligations under any Bond Documents; or (iii) any rights or claims by any NSC-NFP against any party not a Debtor in these cases based on obligations under any Bond Documents. All persons and entities reserve all defenses to claims excepted from the release provided under this paragraph.

32.    <u>Releases by Holders of Claims and Interests</u>.  Subject to the right of each creditor to opt-out with respect to the Third Party Releasees, as of the Effective Date, the Debtors, the Reorganized Debtors, and Third Party Releasees shall be released from all claims

(other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, indentures and other agreements or documents delivered or assumed thereunder, including, without limitation, the Definitive Agreement) that may be asserted against them by each Holder of a Claim or Interest that votes in favor of the Plan (or is deemed to accept the Plan); provided, however, that the foregoing will not operate as a waiver or release of any Reserved Claim or from any causes of action arising out of the willful misconduct, intentional fraud, or criminal liability of any such person or entity. Notwithstanding the above, neither the foregoing terms nor any other provision of the Disclosure Statement, the Plan or any order on the Disclosure Statement and/or Plan shall release or in any manner limit (i) the obligations of any NSC-NFP or other party not a Debtor in these cases under any Bond Documents; (ii) any rights or claims by any Bond Trustee or beneficial bondholder against any NSC-NFP or other party not a Debtor based on obligations under any Bond Documents; or (iii) any rights or claims by any NSC-NFP against any party not a Debtor in these cases based on obligations under any Bond Documents. All persons and entities reserve all defenses to claims excepted from the release provided under this paragraph.

          33.    Exculpation.  Notwithstanding anything provided in the Plan, as of the Effective Date, none of the Debtors, the Reorganized Debtors, or Third Party Releasees shall have or incur (including but not limited to claims or Causes of Action by any Lenders or participants) any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, negotiation, dissemination, confirmation, consummation, or administration of the Plan, or property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, or any contract, instrument, indenture, or other agreement or document related to the Plan or delivered thereunder, including, without limitation, the

Definitive Agreement; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that such act or omission is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, intentional fraud, or criminal conduct or the liability of any person on account of a Reserved Claim. The foregoing shall not release or in any manner limit (i) the obligations of any NSC-NFP or other party not a Debtor in these cases under any Bond Documents; (ii) any rights or claims by any Bond Trustee or beneficial bondholder against any NSC-NFP or other party not a Debtor based on obligations under any Bond Documents; or (iii) any rights or claims by any NSC-NFP against any party not a Debtor in these cases based on obligations under any Bond Documents. All persons and entities reserve all defenses to claims excepted from the exculpation provided under Section 12.7 of the Plan and this paragraph.

34. <u>Other Releases</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to the settlement agreements the Debtors entered into with the HCP Entities, Morgan Stanley, Strategic Entities, Sovereign Bank and PPF, the Debtors and counterparties to the settlement agreements shall be released from claims (except those claims specifically carved out from the settlement) each party holds against the counterparty to each such settlement agreement.

35. <u>Binding Release and Exculpation Provisions</u>. All release and exculpation provisions embodied in the Plan, including but not limited to those contained in Section 12 of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein.

36. <u>Term of Injunctions or Stays</u>. Pursuant to Sections 12.3 and 12.4 of the Plan, unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Plan Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay. Upon the entry of the Plan Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

37. <u>Indemnification Obligations</u>. Pursuant to Section 10.5 of the Plan, any obligations of the Debtors pursuant to their corporate charters and bylaws to indemnify current directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan, provided that the Reorganized Debtors shall not indemnify directors, officers, or employees of the Debtors for any matters that are determined by a Final Order of a court of competent jurisdiction to be excluded from any releases herein. Subject to applicable sections of the Plan, such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors unless such obligation previously was rejected by the Debtors pursuant to a Final Order or is the subject of a motion to reject pending on the Effective Date. Notwithstanding the foregoing, any such indemnification obligation in favor of a director, officer, agent, and/or employee of the Debtors who, as of the Petition Date, no longer was a director, officer, or employee of a Debtor shall terminate and be discharged pursuant to section 502(e) of the Bankruptcy Code or otherwise, as of the Effective Date: provided, however, that the Reorganized Debtors reserve the right to honor or reaffirm such indemnification obligations (other than those already rejected or terminated by a prior or subsequent Final Order of the

Bankruptcy Court), whether or not executory, in which case such honoring or reaffirmation shall be in complete satisfaction, discharge, and release of any Claim on account of such indemnification obligation. Redwood and the Acquisition Companies and any other affiliate of Redwood are not obligated to indemnify directors, officers, agents, or employees of the Debtors for any acts or omission. Further, the Liquidating Creditor Trust shall not be liable, directly or indirectly, for such indemnification obligations and such obligations shall be without prejudice to the Liquidating Creditor Trust.

38. At any time from and after the Effective Date, and at the request of Capmark Finance, Inc., as collateral and administrative Agent for the Holders of the Littleton Construction Loan Claims (the "Littleton Agent"), subject to the terms and conditions of the Morgan Stanley Settlement, the Debtors and/or Reorganized Debtors shall transfer the Littleton Out-Parcel, free and clear of all liens, claims and encumbrances (except those liens expressly set forth in the Morgan Stanley Settlement) to such entity as designated by the Littleton Agent (the "Littleton Designee"). The Debtors and/or Reorganized Debtors shall execute any and all documents reasonably requested by the Littleton Agent, evidencing and effectuating the transfer of the Littleton Out-Parcel. The transfer of the Littleton Out-Parcel (i) shall not constitute an avoidable transfer under the Bankruptcy Code or applicable non-bankruptcy law, and (ii) is deemed to be a transfer for fair and reasonable consideration and shall not subject the Littleton Designee to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including any laws relating to successor liability. The recordation of the Deed of Assignment/Trust from Littleton Debtor to the Littleton Designee and any instruments related thereto, is pursuant to the Plan, and thus shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax

or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation such Deed of Assignment/Trust and any instruments related thereto without the payment of any such tax or governmental assessment pursuant to section 1146(a) of the Bankruptcy Code and section 12.10 of the confirmed Plan.

39.    Closing Cash Payment Increase.  The Closing Cash Payment (as defined in the Definitive Agreement) has been increased in the amendments to the Definitive Agreement by an amount equal to $1,078,000, which amount the Debtors shall pay over to the Holders of the Littleton Construction Loan Claim, in addition to those other amounts provided for under the terms of the Plan.  The Debtors shall not further amend such provision of the Definitive Agreement without the prior written consent of the Holders of the Littleton Construction Loan Claim.

40.    Kansas Construction Loan Claim.  The sum of $814,000 shall be paid to the Holders of the Kansas Construction Loan Claim from the IEDs held by PNC National Bank as successor to Mercantile-Safe Deposit and Trust Company, as collateral and Administrative Agent for the Holders of the Kansas Construction Loan Claims, in addition to those other amounts provided for under the terms of the Plan.  The Debtors shall not further amend Sections 1.1 (mmm) and 2.1(d) of the Definitive Agreement without the prior written consent of the Holders of the Kansas Construction Loan Claim.

41.    In the event the Closing occurs prior to resolution of the Debtors' Amended Motion for Determination of Tax Liability, the undisputed amounts due such taxing authority shall be paid to the Holder of such Secured Tax Claim on the Closing Date.  The disputed balance claimed by such Holder of a Secured Tax Claim together with interest thereon and other amounts allowed by section 506(b) of the Bankruptcy Code shall be escrowed in a

separate escrow account, the form of which escrow shall be agreed to by the applicable Agent, the Holder of the Secured Tax Claim and the Debtors (and, in the case of Dallas Campus, the Holders of the Texas A&M Note Claim) with the liens of the Agents Lenders and applicable taxing authorities continuing to attach to the escrowed funds in the same order of priority as existed against the respective real property.  The escrowed funds shall be in an amount approved by the Holder of each Secured Tax Claim.  In the event the applicable Agent, the Debtor and the Holder of each Secured Tax Claim (and in the case of Dallas Campus the Holders of the Texas A&M Note Claim) do not agree on the amount to be escrowed, this Court shall, upon request, determine such amount.  Upon resolution of the Debtors' Amended Motion for Determination of Tax Liability (relating to a particular taxing authority), any funds relating to that particular taxing authority shall be released from escrow and paid first to the Holder of the applicable Allowed Secured Tax Claim with any excess funds to be paid over to the applicable Agent (and, in the case of Dallas Campus, the Holders of the Texas A&M Note Claim to the extent set forth in Section 4.9.5 of the Plan).  The Debtors will deliver to the Agents and the Holders of the Texas A&M Note Claim a pre-closing statement no later than 12:00 noon prevailing eastern, time five (5) days prior to the Closing ("Pre-Closing Statement").  To the extent that the Pre-Closing Statement indicates a material change in the recovery to the Lenders or the Holders of the Texas A&M Note Claim as compared to Schedule F as attached to this Plan Confirmation Order, each of the Agents and the Holders of the Texas A&M Note Claim reserve the right to seek an order from the Bankruptcy Court finding that such shortfall in payments is material post-confirmation modification of the Plan which fails to comply with section 1127(b) of the Bankruptcy Code.  At any such hearing the Debtors may be given credit for any recovery or relief granted to the Debtors as a result of the pending Amended Motion for Determination of Tax Liability.  Notwithstanding the foregoing, the Agents and Lenders reserve all rights to challenge the

materiality of any Plan modification made prior to or after Closing or any other basis. No prepetition statutory tax lien of any taxing authority shall be released against the escrowed funds until that taxing authority's Allowed Claim as determined after an adjudication of any objection to such claim, has been paid in full, including all post petition accrued interest, and other amounts allowed by section 506(b) of the Bankruptcy Code. Provided that any ad valorem business personal property taxes or ad valorem real property taxes for tax year 2010 that are due and payable to Concord Township under applicable state law as of the Closing Date, such taxes shall be pro-rated as of the Closing Date, with the Debtor responsible for paying the full amount of all such taxes through and including the Closing Date, and the purchaser(s) responsible for paying the full amount of all such taxes from and after the Closing Date.

42.     Notwithstanding anything to the contrary in the Plan, the Plan Supplement or this Order, all liens securing ad valorem business personal property taxes and real property taxes for tax year 2010 shall remain attached to the respective real and personal property until the taxes are paid in full.

43.     Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date and thereafter as may be required.

44.     Liquidating Creditor Trust. The Trust Agreement, substantially in the form filed by the Creditors' Committee on April 8, 2010 (Doc 1263) is hereby approved as a Plan Document, subject to modification from time to time as set forth therein. The provisions of this Plan Confirmation Order with respect to the Plan's compliance with the Bankruptcy Code, applicable non-bankruptcy law, and good faith shall apply equally with respect to the Trust Agreement and any reference herein to the Plan or Plan Supplement, shall be deemed to include the Trust Agreement, as applicable. The Debtors, the Reorganized Debtors, the Acquisition

Companies, in their limited capacity under Section 2.2, 2.3 and 2.6 of the Trust Agreement, the Creditors Committee, and the Trustee are directed to execute and deliver the Trust Agreement pursuant to section 105(a) and 1142(b) of the Bankruptcy Code and to take all actions and do all things required by the Trust Agreement and the Plan, including but not limited to (a) the Debtors' or the Reorganized Debtors, as the case may be, transfer, assignment, and delivery to the Liquidating Creditor Trust, without recourse, and the Liquidating Creditor Trust's assumption of (i) $2.5 million of Trust Cash, (ii) except for the Transferred Claims and the GST Collection Claim (as such term is defined in the Trust Agreement), the other Litigation Trust Initial Assets (as such term is defined in the Trust Agreement) free and clear of any and all liens, claims, encumbrances or interests of any kind and (iii) the GST Collection Claim, except for the rights of holders of Erickson Group Guaranty Claims set forth in Article IV therein, free and clear of any and all liens, claims, encumbrances or interests of any kind; (b) the Acquisition Companies' transfer, assignment, and delivery to the Liquidating Creditor Trust, without recourse, and the Liquidating Creditor Trust's assumption of, all of their respective rights, title, and interests in and to the Transferred Claims free and clear of any and all liens, claims, encumbrances or interests of any kind in such property; and (c) the Debtors', the Reorganized Debtors', the Acquisition Companies' and the Committee's transfer, assignment, and delivery to the Trustee and the Trust Governing Board, without waiver, and the Trustee's and the Trust Governing Board's assumption of, all of their respective rights, title and interests in and to any attorney-client privilege, work-product privilege, or other privilege or immunity (collectively, "Privileges") attaching to any documents or communications (whether written or oral) associated with the Transferred Claims for the purpose of the prosecution thereof, in the case of the Acquisition Companies, and the Estate Assigned Claims in the case of the Debtors or the Reorganized Debtors, as applicable,

which shall vest in the Trustee and the Trust Governing Board, in trust, and, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Beneficiaries.

Dan Lain is hereby appointed as Trustee and shall have all rights, duties, and powers under the Trust Agreement and the Plan.

The appointment of the Trust Governing Board is hereby authorized and shall be approved upon the Trustee's filing of a notice with the Bankruptcy Court identifying the members of such Trust Governing Board.

All Beneficiaries that filed objections to the Plan and withdrew such objections shall not be disqualified from participating in the Liquidating Creditor Trust, subject to their compliance with other provisions of the Plan and the Trust Agreement.

In the event that a Beneficiary or Holder of an Erickson Group Guaranty Claim abstained from voting on the Plan, such Beneficiary or Holder of an Erickson Group Guaranty Claim shall not be disqualified from participating in the Liquidating Creditor Trust under section 6.4.8 of the Plan, subject to their compliance with other provisions of the Plan and the Trust Agreement.

Following the date hereof, the Debtors and/or the Reorganized Debtors (including their agents, attorneys and advisors) shall cooperate in good faith with the Trustee to identify with specificity the Excluded Assets and unencumbered assets being assigned (subject to the right of the Trustee to abandon such assets) to the Liquidating Creditor Trust. The Debtors shall use their reasonable good faith efforts to identify such Excluded Assets and unencumbered Assets prior to the Effective Date. The Littleton Out Parcel and the UMBC Building (and the collateral and contracts related thereto), shall not be assigned to the Liquidating Creditors Trust.

Subject to the Trust Agreement, the Trustee may abandon any assets without recourse or any liability to the Liquidating Creditor Trust. Any such abandonment shall be deemed made as of the Effective Date.

Prior to and/or following the Effective Date, except in connection with the transactions (i) effected under the Definitive Agreement, the transfers described in 6.2.3.1 of the Plan; and (ii) related to the Littleton Out Parcel and the UMBC Building (and the collateral and contracts related thereto), the Debtors and/or the Reorganized Debtors shall not (directly or indirectly, whether through a transfer of assets and/or equity) sell, assign, transfer, deed, abandon, dispose of or otherwise convey any asset or property except upon motion to the Bankruptcy Court, with notice to the Trustee. The notice to the Trustee shall attach any definitive documents effecting such transfer and provide a description of the asset or property, the purchase price, the purchaser or recipient of such transfer and whether such transfer is being made for the direct or indirect benefit of an Erickson Party.

45. <u>Reversal/Stay/Modification/Vacatur of Plan Confirmation Order</u>. Except as otherwise provided in the Plan Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, pursuant to the Plan and the Plan Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of the Plan Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Plan Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of the Plan Confirmation Order and

the Plan or any amendments or modifications thereto. The Debtors or the Reorganized Debtors at any time may request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. Notwithstanding the foregoing, all Allowed Claims under the Plan shall be deemed Allowed and not subject to further challenge.

46. _Retention of Jurisdiction_. Notwithstanding the entry of this Plan Confirmation Order or the occurrence of the Effective Date, pursuant to Section 13 of the Plan and sections 105 and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases to the fullest extent as is legally permissible.

47. _Exemption from Certain Taxes_. Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan is not taxable under any law imposing a stamp or similar tax. Moreover, any transfer of assets from a Debtor or a Reorganized Debtor to a Reorganized Debtor, Acquisition Company, Redwood, or any other entity (including the contemplated transfer of real property by the junior loan lenders[7], the transfer or other disposition of the

---

[7] The junior loan lenders include those lenders that are party to the following agreements/transactions: (i) that certain transaction entered into pursuant to that certain "Purchase Agreement" made and entered into as of October 11, 2005, by and among Concord, ERC, and Strategic Concord Landholder, LP, a Delaware limited partnership, in the principal amount of $25 million, as may be amended, modified and supplemented from time to time; (ii) that certain transaction entered into pursuant to that certain "Purchase Agreement" made and entered into as of April 28, 2006 by and among Dallas, ERC, and MSRESS III Dallas Campus, L.P., a Delaware limited partnership, in the principal amount of $17.5

Littleton Out-Parcel and the transfer or other disposition of the property securing the UMBC Building Construction Loan Claims pursuant to the Plan) in accordance with, in contemplation of, or in connection with the Plan (including the Plan Supplement) or the Definitive Agreement, including the transfer of assets pursuant to the Restructuring Transactions (including without limitation any deeds, bills of sale or assignments), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment pursuant to section 1146(a) of the Bankruptcy Code. The recordation of the Deed of Assignment from ERC to a subsidiary of Allegis Property Holdings, LLC and any instruments related thereto, is pursuant to the Plan, including sections 4.2.6, 4.3.5 and 4.4.3 of the confirmed Plan, and thus shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax

---

million, as may be amended, modified and supplemented from time to time; (iii) that certain transaction entered into pursuant to that certain "Purchase Agreement" made and entered into as of November 18, 2004 by and among HCP ER6, LP (f/k/a CNL Retirement ER6, LP), a Delaware limited partnership and Houston, as may be amended, modified and supplemented from time to time; (iv) that certain transaction entered into pursuant to that certain "Purchase Agreement" made and entered into as of October 11, 2006 by and among Littleton, ERC, and MSRESS III Denver Campus, LLC, a Delaware limited liability company, as may be amended, modified and supplemented from time to time; (v) that certain transaction entered into pursuant to that certain "Purchase Agreement" made and entered into as of February 28, 2003, by and among HCP ER2, LP (f/k/a CNL Retirement ER2, LP), a Delaware limited partnership, as buyer, and Novi, as seller and lessee, as may be amended, modified and supplemented from time to time, in the principal amount of $17 million; (vi) a Claim arising under that certain real estate financing contract between Warminster and HCP ER3, LP (f/k/a CNL Retirement ER3, LP), a Delaware limited partnership, as may be amended, modified and supplemented from time to time.

or governmental assessment, and the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation such Deed of Assignment and any instruments related thereto without the payment of any such tax or governmental assessment pursuant to section 1146(a) of the Bankruptcy Code and section 12.10 of the confirmed Plan. Further, to the extent a claim for any tax or governmental assessment may be due with regard to the recording of an indemnity deed of trust dated on or about July 31, 2008 from ERC for the benefit of Manufacturers and Traders Trust Company as Lender and Administrative Agent, and Wilmington Trust, FSB, as Lender, such claim, to the extent it is an Allowed Claim, shall be treated as a general unsecured claim against ERC pursuant to the terms and conditions of the confirmed Plan and, whether or not such claim is an Allowed Claim, the appropriate state or local government officials or agents shall be enjoined from attempting to collect any such tax or governmental assessment from (a) the Debtors, (b) the Reorganized Debtors, (c) Redwood, Allegis Property Holdings, LLC, and its subsidiaries or the Acquisition Companies, (d) the Liquidation Creditors' Trust; (e) the Lenders or the Agent under the UMBC Building Construction Loan, both in their capacities as Lenders and Agent and in any other capacities (f) the Littleton Agent, the Holders of Littleton Construction Loan Claims, and/or Littleton Designee, and (g) each of their respective affiliates, employees, advisors, officers and directors, agents, attorneys and others pursuant to section 12.2 of the confirmed Plan.

48.  Modifications.  The Plan may be amended, modified, or supplemented by the Debtors or the Reorganized Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, subject to the terms of the Definitive Agreement and Section 14 of the Plan, and the terms of this Plan Confirmation Order.  In addition, after the Plan

Confirmation Date and subject to the terms of the Definitive Agreement, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Plan Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Further, subject to the terms of the Definitive Agreement, prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

49. <u>Provisions of Plan and Plan Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Plan Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

50. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflict of laws thereof.

51. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Plan Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

52. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Plan Confirmation Order.

53. <u>Governmental Approvals Not Required</u>.  This Plan Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

54. <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), within 10 days after the Effective Date, the Debtors shall serve notice of the entry of this Plan Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as Exhibit 3, to all parties who hold a Claim or Interest in these cases, including the United States Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Plan Confirmation Order and the occurrence of the Effective Date.

55. <u>Substantial Consummation</u>.  On the Effective Date and upon Distributions made to Agents as contemplated under the Plan, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

56. <u>Waiver of Stay</u>.  The stay of this Plan Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

57. <u>Inconsistency</u>.  To the extent of any inconsistency between this Plan Confirmation Order and the Plan, this Plan Confirmation Order shall govern.

58. <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor

constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

**<u>Exhibit A [See Dkt. No 1350]</u>**

Litigation Trust Agreement

**<u>Exhibit 1 [See Dkt. No 1347]</u>**

Real Property Liens Extinguished

**Exhibit 2 [See Dkt. No 1348]**

Liens Remaining

**Exhibit 3 [See Dkt. No 1349]**

Notice of Plan Confirmation Order