# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 09-37010 |
| | : | |
| **ERICKSON RETIREMENT** | : | Chapter 11 |
| **COMMUNITIES, LLC,** *et al.*[1] | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |

---------------------------------------------------------------x

## FIRST AND FINAL APPLICATION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 19, 2009 THROUGH APRIL 30, 2010

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") |
| Authorized to Provide Professional Services as: | Investment Bankers to the Debtors |
| Retention Date: | October 19, 2009 |
| Period for which Compensation is Sought: | October 19, 2009 – April 30, 2010 (the "Application Period") |
| Final Compensation Sought: | $9,715,645.16 |
| Final Expenses Sought: | $117,639.16 |

Houlihan Lokey is not seeking any compensation for the preparation of this Application.

This is a(n): _____ interim ___X___ final application

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

--------------------------------------------------------------x
In re:                                                  :       **Case No. 09-37010**
                                                        :
**ERICKSON RETIREMENT,**                                :       **Chapter 11**
**COMMUNITIES, LLC, *et al.*[1]**                       :
                                                        :         **Jointly Administered**
                                                        :
                      **Debtors.**                      :
--------------------------------------------------------------x

**FIRST AND FINAL APPLICATION OF HOULIHAN LOKEY**
**HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS**
**FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF**
**EXPENSES FOR THE PERIOD OCTOBER 19, 2009 THROUGH APRIL 30, 2010**

1.      Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), as investment banker to the debtors and debtors-in-possession (collectively, the "Debtors") hereby submits its first and final application for compensation for services rendered and reimbursement of expenses  (the "Application") pursuant to 11 U.S.C. §§ 327, 328(a) and 330, Bankruptcy Rule of Procedure 2014, the Local Rules and Orders of the Bankruptcy Court for the Northern District of Texas, the Order Authorizing the Debtors in Possession to Retain Houlihan Lokey Howard & Zukin Capital as Investment Banker [Docket No. 364] and the Chapter 11 Post-Confirmation Order [Docket No. 1371].  This Application seeks compensation for investment banking services performed and expenses incurred during the post-petition period commencing October 19, 2009 through April 30, 2010 (the "Application Period") and is supported by the Certification of Matthew R. Niemann, which is annexed hereto as Exhibit A.

2.      By this Application, Houlihan Lokey respectfully requests final approval of post-petition compensation for services rendered in the total amount of $9,715,645, of which

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

$2,322,161 remains outstanding.  This total amount consists of (a) $1,604,839 in Monthly Fees

($700,000 outstanding); (b) $280,000 in Financing Transaction Fees ($56,000 outstanding); and

(c) $7,830,806 in Restructuring Transaction Fees ($1,566,161 outstanding).  Houlihan Lokey also

requests approval for the reimbursement of actual and necessary expenses in the amount of

$117,639 for the Application Period, of which $37,489 remains outstanding.  A summary of these

fees and expenses is annexed hereto as Exhibit B.  In support of this Application, Houlihan Lokey

states as follows:

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over these proceedings under 28 U.S.C. §§157

and 1334.  This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

4.        Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.       Houlihan Lokey was retained on March 19, 2009 to provide investment

banking services to the Debtors (which were not in bankruptcy at that time) including but not

limited to:

     a.  Assisting the Debtors in the evaluation of strategic alternatives and
potential transactions, including a potential sale of some or all of the
assets or businesses of the Debtors;

     b.  Developing materials to be distributed to existing lenders and various
other constituents;

     c.   Negotiating on the Debtors' behalf with lenders and various other
constituents; and

     d.  Assisting the Debtors with the development, negotiation and
implementation of potential transactions which might result from these
activities.

3

6.      On October 19th, 2009 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 cases were jointly administered under a single case heading and number, In re: Erickson Retirement Communities, et al., Case No. 09-37010, before the Honorable Stacey G. C. Jernigan. After the Petition Date, the Debtors were allowed to continue to operate their businesses and manage their property as debtors-in-possession.

7.      In order to provide post-petition financing in these cases, on December 17, 2009 the Debtors, pursuant to the Final Order Authorizing Borrowers to Obtain Post-Petition Financing On a Senior Secured Super-Priority Basis [Docket No. 542], secured DIP financing in the amount of $20,000,000.

8.      Pursuant to the Order Approving Bidding Procedures for the Sale of Substantially All of The Debtors' Assets [Docket No. 272], on December 22, 2009, the Debtors conducted an auction of their businesses and assets.  The auction resulted in affiliates of Redwood Capital Investments, LLC ("Redwood") being selected as the purchaser for substantially all of the Debtors' assets and businesses for a cash purchase price of $365,000,000 and the assumption of certain liabilities.

9.      At a hearing on the Debtors' Fourth Amended Joint Plan of Reorganization held on April 15-16, 2010, the Court confirmed the Debtors' Fourth Amended Joint Plan of Reorganization.

10.     The sale of substantially all of the Debtors' assets and businesses to Redwood was closed on April 30, 2010.

## TERMS AND CONDITIONS OF COMPENSATION OF HOULIHAN LOKEY

11.     On October 22, 2009, the Debtors filed their Application To Authorize Employment and Retention of Houlihan Lokey Howard & Zukin Capital as Investment Banker to The Debtors (the "Retention Application") [Docket No. 227]. A copy of the Retention Application is annexed hereto as Exhibit C.

12.     On November 24, 2009, the Court entered the Order Authorizing the Debtors in Possession to Retain Houlihan Lokey Howard & Zukin Capital as Investment Banker [Docket No. 364] (the "Retention Order").  A copy of the Retention Order is annexed hereto as Exhibit D.

13.     The terms and conditions of Houlihan Lokey's retention in these cases, which are embodied in the Retention Application and approved by the Court, are based upon Houlihan Lokey's engagement letter with the Debtors dated March 19, 2009 (the "Engagement Letter").  A copy of the Engagement Letter is attached hereto as Exhibit E (capitalized terms not otherwise defined herein shall have the meaning as set forth in the Engagement Letter).

14.     The Engagement Letter provides for Houlihan Lokey to be compensated, in part, with Monthly Fees of $250,000 per month.  Houlihan Lokey now seeks approval for Monthly Fees totaling $1,604,839 (which consist six full months and one partial month of Monthly Fees).

15.     In addition, pursuant to the Engagement Letter, Houlihan Lokey is entitled to Amendment Transaction Fees of $100,000 per Amendment Transaction, subject to certain limitations based on the number of Amendment Transactions executed.  Prior to the Petition Date, Houlihan Lokey earned and was paid fifteen such Amendment Transaction Fees in the aggregate amount of $1,500,000.  While these fees were paid pre-petition and, thus, are not directly the

subject of this Application, as described later these fees are fully credited against the Restructuring

Transaction Fee for which Houlihan Lokey now seeks approval.

16.     The Engagement Letter provides for Financing Transaction Fees of 1.4% of

the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of

the Debtors and secured by a first priority lien, 2.8% of the gross proceeds of any indebtedness

raised or committed that is secured by a lien other than a first lien, is unsecured or is subordinated,

and 4.2% of the gross proceeds of all equity or equity-linked securities.   By securing the

$20,000,000 post-petition DIP financing in these cases, under the terms of the Engagement Letter

Houlihan Lokey has earned such a fee in the amount of $280,000.

17.     The Engagement Letter provides for a Restructuring Transaction Fee of

$8,250,000, which is increased by 15% if the Debtors consummate a Restructuring Transaction on

an out-of-court basis or in court pursuant to a "prearranged" or "prepackaged" Plan of

Reorganization whereby the Restructuring Transaction is confirmed in six months or less from the

Petition Date.  The Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code

on October 19, 2009.  Upon confirmation by this Court of the Debtors' Fourth Amended Joint Plan

of Reorganization on April 16, 2010, Houlihan Lokey earned such a fee in the gross amount of

$9,487,500, subject to certain credits, as described below.

18.     The Engagement Letter provides for the crediting against any Restructuring

Transaction Fees payable of: a) 25% of all Monthly Fees collected for the thirteenth through

eighteenth months of the Engagement; b) 25% of all Financing Transaction Fees; and (c) 100% of

all Amendment Transaction Fees.  As a result and as illustrated in Exhibit B, the gross amount of

the Restructuring Transaction Fee payable is reduced by credits in the aggregate amount of

$1,656,694. These credits reduce the net amount of the Restructuring Transaction Fee for which Houlihan Lokey now seeks approval to $7,830,806.

19.     The Engagement Letter provides for the reimbursement of all actual, reasonable and necessary out-of-pocket expenses incurred by Houlihan Lokey. Houlihan Lokey is also seeking approval of the reimbursement of such expenses in the amount of $117,639.

20.     As detailed in the Retention Application and in the testimony and exhibits offered at the hearing on the Retention Application on November 18, 2009, the terms of the Engagement Letter were comparable to the terms agreed to by Houlihan Lokey and other financial advisors and investment bankers in similar engagements, both inside and outside of bankruptcy.

21.     By this Application, Houlihan Lokey respectfully requests final approval of compensation for services rendered in the total amount of $9,715,645, of which $2,322,161 remains outstanding, as well as reimbursement of actual and necessary expenses in the amount of $117,639 for the Application Period, of which $37,489 remains outstanding.

**Summary of Services Provided by Houlihan Lokey**

22.     Houlihan Lokey is an international investment banking/financial advisory firm with fourteen offices worldwide and more than eight hundred employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, official creditor committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has over 140 professionals worldwide dedicated

to providing restructuring and other financial advisory services. Houlihan Lokey's Financial Restructuring Group has advised on over 400 transactions, valued in excess of $200 billion, over the past ten years. The Debtors selected Houlihan Lokey as their investment banker because of its extensive and diverse experience, knowledge, and reputation in the restructuring field, its familiarity and experience in restructuring operators of continuing care retirement communities, its understanding of the many complex issues involved in these cases, and generally because the Debtors believed that Houlihan Lokey was well-qualified to provide the investment banking and financial advisory services in this case.

23.    During the Application Period, although a number of other professionals worked on this engagement, the following primary professionals from Houlihan Lokey's Restructuring and Healthcare practices have performed substantial services to the Debtors in these cases:

| | | |
|---|---|---|
| Matthew Niemann | - | Managing Director, Head of Real Estate Restructuring |
| Patrick Hurst | - | Managing Director, Head of Healthcare |
| David Shapiro | - | Senior Vice President, Restructuring |
| Matthew Ryan | - | Senior Vice President, Healthcare |
| David Watson | - | Associate, Restructuring |
| Timothy Flannery | - | Analyst, Restructuring |
| David Peterson | - | Analyst, Healthcare |

24.    Prior to the Petition Date, Houlihan Lokey's work on behalf of the Debtors included, but was not limited to, (a) evaluation of the lenders' and other constituents' strategies and options, given their positions and priorities with respect to each asset and overall in the capital structures of the Debtors; (b) negotiation and implementation of a large number of extensions, amendments and forbearances under the Debtors' various financing arrangements; (c) evaluation of the impact of various alternative strategies (both inside and outside of chapter 11) on the Debtors' business operations and financial condition, as well as the impact of those alternatives on the Debtors' creditors and other constituents, including the residents of the Debtors' communities

8

and their representatives, various regulators and authorities, the vendors and suppliers to the Debtors and the Debtors' employees; and (d) commencement in September 2009 of a comprehensive marketing process to solicit offers to acquire all or any portion of the Debtors' assets or businesses or to support a plan of reorganization as plan sponsor.  Houlihan Lokey contacted 91 parties in the marketing process and distributed marketing materials, established an electronic data room and coordinated management meetings for interested parties.

25.     During the Application Period, Houlihan Lokey's work on behalf of the Debtors included, but was not limited to:

a.  Solicitation and Negotiation of Post-Petition DIP Financing:  Houlihan Lokey conducted a broad solicitation process for post-petition DIP financing for the Debtors, contacting numerous potential DIP loan providers, including the eventual DIP lender, and negotiated the terms of the DIP loan.  The DIP loan was approved by the Court on December 17, 2009 pursuant to the Final Order Authorizing Borrowers to Obtain Post-Petition Financing on a Senior Secured Super-Priority Basis [Docket No. 542].  Through this process Houlihan Lokey successfully secured for the Debtors post-petition DIP financing in the amount of $20,000,000 on attractive terms, potentially saving the Debtors millions of dollars in additional interest and fees.

b.  Completion of the Marketing Process:  Houlihan Lokey completed the marketing process that was begun pre-petition for the sale of substantially all of the Debtors' assets or businesses, coordinating further meetings with management, creditors and other constituents, responding to a large number of due diligence requests and completing

various other diligence-related activities for those parties that demonstrated interest in participating in an auction. As part of these diligence efforts, Houlihan Lokey coordinated with employees of the Debtors, the Debtors' various financial and legal advisors and representatives of the interested parties to ensure that all potential buyers were provided all necessary and appropriate information in a timely manner. Through daily contact with the various parties, Houlihan Lokey served a central role in providing all of the necessary information regarding the Debtors' business operations and other assets.

c. <u>Solicitation of Bids and Conduct of an Auction</u>: As a result of the marketing process, Houlihan Lokey successfully solicited qualified bids from two parties; the stalking horse bidder, Redwood, and an investment consortium comprised of Kohlberg Kravis Roberts & Company, Coastwood Senior Housing Partners, LLC and Beecken Petty O'Keefe & Company, LLC, allowing, pursuant to the Order Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, for an auction to be conducted on December 22nd, 2009. After eighteen hours and twenty-five rounds of spirited bidding, Redwood was determined to be the successful bidder with a final all-cash bid of $365 million, an increase of over $90 million from the original all-cash bid made during the auction. In close cooperation with the Debtors' other professionals, Houlihan Lokey's leadership during the auction and subsequent negotiations resulted in significant incremental value to the Debtors.

d. <u>Negotiation of the Master Purchase and Sale Agreement</u>:  Both before and after the auction was conducted, Houlihan Lokey played a leading role in the negotiation with Redwood of the Master Purchase and Sale Agreement (the "MPSA").  Given the complexity of the transaction, as exemplified by the fact that seventeen Debtors and Debtor-related entities were party to the transaction, it was imperative that an advisor with Houlihan Lokey's depth of understanding of the business be actively involved in the negotiation of the MPSA to ensure that the Debtors' business interests were appropriately represented.  Moreover, the negotiations involved multiple constituents with competing interests (ranging from corporate-level lenders, to project-level senior and subordinate lenders, to local boards at each of the Debtors' campuses to the national board serving as an ad hoc committee for the campuses (the "NSC"), to the regulators, the Official Committee of Unsecured Creditors ("Creditors Committee") and other constituents), all of which served to add complexity to the negotiating dynamics of this case.

e. <u>Allocation of Proceeds and Negotiation of Settlement Agreements</u>:  Pre-petition, the Debtors had an exceedingly complex capital structure, with more than forty lenders involved at the various property and operating entities, as well as other creditor constituencies with important interests in the outcome of these cases.  Following the auction, Houlihan Lokey played an active role in the negotiations among the various lender groups relating to the allocation of the sale proceeds as well as the allocation of the transaction and administrative costs of these cases.

Over the course of the nearly four months from the close of the auction to the confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization, Houlihan Lokey actively participated in discussions involving the Debtors' corporate revolver lenders, the campus-level senior and subordinated lenders, the Official Committee of Unsecured Creditors and other parties-in-interest, resulting in consensual settlements with substantially all of the various parties.

f.    <u>Closing of the Transaction</u>:  In addition to the settlement discussions described above, Houlihan Lokey remained in regular contact with the Debtors' lenders and Redwood relating to the closing of the transaction as contemplated in the MPSA.  Houlihan Lokey developed and distributed to all of the Debtors' constituents the complex "Flow of Funds" model by which funds were to be distributed among the creditors and provided near-daily updates to the primary parties-in-interest of any and all changes to the dollar amounts to be transferred at closing.  The "Flow of Funds" model was updated nearly continuously up until the closing, reflecting final refinements in the distributions to creditors. This analysis, as well as Houlihan Lokey's ongoing participation in the discussions relating to the closing, helped to ensure a smooth closing process for the Debtors, Redwood, and all other constituents.

**Houlihan Lokey's Application**

26.    The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with these cases, and in the discharge of

12

Houlihan Lokey's professional responsibilities as investment banker for the Debtors in their chapter 11 cases.  Houlihan Lokey's services have been substantial, necessary, and beneficial to the Debtors and their estates, creditors, and other parties-in-interest.  Houlihan Lokey believes that the fees and expenses requested by its Application are reasonable and necessary, particularly given the variety and complexity of the issues involved in these cases and the need to act or respond on an expedited basis in order that the interests of the Debtors and the Debtors' residents and other constituents not be impaired.

27.     In support of this Application, Houlihan Lokey's invoices filed for this Application Period are attached as Exhibit F to this Application.

WHEREFORE, Houlihan Lokey requests that the Court enter an Order, substantially in the form of the Order annexed hereto as Exhibit G, allowing final compensation for financial advisory and investment banking services rendered to the Debtors during the Application Period in total amount of $9,715,645, as well as reimbursement of actual and necessary expenses in the amount of $117,639 for the Application Period, and that the Debtors be ordered to pay to Houlihan Lokey all unpaid amounts requested herein.

Dated: Chicago, Illinois
        June 2, 2010

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL**

By: _____
            Matthew R. Niemann
            Managing Director
            123 North Wacker Drive
            Chicago, Illinois 60606
            312-456-4700

            Investment Banker to the Debtors

13

# <u>EXHIBIT A</u>

# Certification of Matthew R. Niemann

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
-----------------------------------------------------------x
In re:                                    :        Case No. 09-37010
                                          :
ERICKSON RETIREMENT,                      :        Chapter 11
COMMUNITIES, LLC, et al.¹                 :
                                          :         Jointly Administered
                                          :
              Debtors.                    :
-----------------------------------------------------------x
```

## CERTIFICATION OF MATTHEW R. NIEMANN

      1.  I am a Managing Director of Houlihan Lokey Howard & Zukin Capital, Inc.,

and I make this certification in accordance with Local Rules.

      2.  I have read the First And Final Application Of Houlihan Lokey Howard &

Zukin Capital, Inc. As Investment Banker To The Debtors For Compensation For Services

Rendered And Reimbursement Of Expenses For The Period October 19, 2009 Through April 30,

2010 (the "Application").

      3.  I am knowledgeable about Local Rules, and believe that the Application

complies with the provisions of the Local Rules, the United States Bankruptcy Code and the

Orders of this Court.

By: _____

        Matthew R. Niemann
        Managing Director
        Houlihan Lokey Howard & Zukin Capital, Inc.
        123 North Wacker Drive
        Chicago, Illinois 60606
        312-456-4700

        Investment Banker to the Debtors

---

¹ The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

# EXHIBIT B

## Summary of Houlihan Lokey Fees & Expenses

**Erickson Retirement Communities, LLC**
**Exhibit B - Summary of HL Fees & Expenses**
6/1/2010

| Pre-Petition Fees & Expenses | Period Beginning | End | Fees Invoiced | Received | Outstanding | Expenses Invoiced | Received | Outstanding |
|---|---|---|---|---|---|---|---|---|
| Monthly Fee | 03/19/09 - | 05/18/09 | $ 500,000.00 | $ 500,000.00 | $        - | $ 30,381.30 | $ 30,381.30 | $       - |
| Monthly Fee | 05/19/09 - | 06/18/09 | 250,000.00 | 250,000.00 | - | 15,417.41 | 15,417.41 | - |
| Monthly Fee | 06/19/09 - | 07/18/09 | 250,000.00 | 250,000.00 | - | 31,125.93 | 31,125.93 | - |
| Monthly Fee | 07/19/09 - | 08/18/09 | 250,000.00 | 250,000.00 | - | 22,123.19 | 22,123.19 | - |
| Monthly Fee | 08/19/09 - | 09/18/09 | 250,000.00 | 250,000.00 | - | 22,360.46 | 22,360.46 | - |
| Monthly Fee | 09/19/09 - | 10/18/09 | 250,000.00 | 250,000.00 | - | 13,902.89 | 13,902.89 | - |
| Total Monthly Fees - Pre-Petition | | | 1,750,000.00 | 1,750,000.00 | - | 135,311.18 | 135,311.18 | - |
| Amendment Fees | N/A | 05/08/09 | 600,000.00 | 600,000.00 | - | - | - | - |
| Amendment Fees | N/A | 05/21/09 | 300,000.00 | 300,000.00 | - | - | - | - |
| Amendment Fees | N/A | 06/22/09 | 100,000.00 | 100,000.00 | - | - | - | - |
| Amendment Fees | N/A | 07/22/09 | 100,000.00 | 100,000.00 | - | - | - | - |
| Amendment Fees | N/A | 08/21/09 | 200,000.00 | 200,000.00 | - | - | - | - |
| Amendment Fees | N/A | 09/08/09 | 200,000.00 | 200,000.00 | - | - | - | - |
| Total Amendment Fees - Pre-Petition | | | 1,500,000.00 | 1,500,000.00 | - | - | - | - |
| Total Pre-Petition | | | $ 3,250,000.00 | $ 3,250,000.00 | $        - | $ 135,311.18 | $ 135,311.18 | $       - |
| **Post-Petition Fees & Expenses** | | | | | | | | |
| Monthly Fee | 10/19/09 - | 10/31/09 | 104,838.71 | 104,838.71 | - | 7,691.95 | 7,691.89 | 0.06 |
| Monthly Fee | 11/01/09 - | 11/30/09 | 250,000.00 | 200,000.00 | 50,000.00 | 18,399.34 | 18,399.34 | - |
| Monthly Fee | 12/01/09 - | 12/31/09 | 250,000.00 | 200,000.00 | 50,000.00 | 28,615.38 | 28,615.38 | - |
| Monthly Fee | 01/01/10 - | 01/31/10 | 250,000.00 | 200,000.00 | 50,000.00 | 8,241.99 | 8,241.99 | - |
| Monthly Fee | 02/01/10 - | 02/28/10 | 250,000.00 | 200,000.00 | 50,000.00 | 17,201.36 | 17,201.36 | - |
| Monthly Fee | 03/01/10 - | 03/31/10 | 250,000.00 | - | 250,000.00 | 22,419.31 | - | 22,419.31 |
| Monthly Fee | 04/01/10 - | 04/30/10 | 250,000.00 | - | 250,000.00 | 15,069.83 | - | 15,069.83 |
| Total Monthly Fees - Post-Petition | | | 1,604,838.71 | 904,838.71 | 700,000.00 | 117,639.16 | 80,149.96 | 37,489.20 |
| Financing Transaction Fee | | 01/19/10 | 280,000.00 | 224,000.00 | 56,000.00 | - | - | - |
| Restructuring Transaction Fee [1] | | 04/30/10 | 7,830,806.45 | 6,264,645.16 | 1,566,161.29 | - | - | - |
| **Total Post-Petition** | | | **$ 9,715,645.16** | **$ 7,393,483.87** | **$ 2,322,161.29** | **$ 117,639.16** | **$ 80,149.96** | **$ 37,489.20** |
| Total Fees & Expenses | | | $12,965,645.16 | $10,643,483.87 | $ 2,322,161.29 | 252,950.34 | 215,461.14 | 37,489.20 |

**[1] Restructuring Transaction Fee Calculation**

| | |
|---|---|
| Restructuring Transaction Fee | $ 8,250,000 |
| Pre-Arranged Premium (15% premium) | 1,237,500 |
| Gross Restructuring Transaction Fee | 9,487,500 |
| Less: 100% of Amendment Fees | (1,500,000) |
| Less: 25% of DIP Financing Transaction Fee | (70,000) |
| Less: 25% of Monthly Fees after 3/19/2010 [2] | (86,694) |
| **Net Transaction Fee** | **$ 7,830,806** |
| Less: Amount Paid at Closing | (6,264,645) |
| **Net Transaction Fee Outstanding** | **$ 1,566,161** |

(2) Monthly Fees after 3/19/2010 include $96,774 for March and $250,000 for April.

# EXHIBIT C

## Application to Retain Houlihan Lokey

Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
New York State Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson
New York State Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 835-6000
Fax: (212) 835-6001

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 09-37010 (SGJ)** |
| | § | |
| **ERICKSON RETIREMENT** | § | **CHAPTER 11** |
| **COMMUNITIES, LLC,** *et al.*[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | | |

## APPLICATION FOR ORDER PURSUANT TO 11 U. S. C. §§ 327(A) AND 328(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS
## <u>NUNC PRO TUNC TO THE PETITION DATE</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file

this application (the "<u>Application</u>") for entry of an order, substantially in the form attached

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Hingham Campus, LLC, Houston Campus, LP, Kansas Campus, LLC, Lincolnshire Campus, LLC, Littleton Campus, LLC, Naperville Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLP, Warminster Campus, LP.

hereto as Exhibit A, authorizing the Debtors to employ and retain Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), as their investment bankers and financial advisors, in connection with above-captioned chapter 11 cases nunc pro tunc to October 19th. In support of this Application, the Debtors submit the declaration of Matthew Niemann, a Managing Director of Houlihan Lokey (the "Niemann Declaration"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein. In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.      On October 19th, 2009 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      No trustee, examiner or committee of creditors has been appointed in these cases.

7.      The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in

detail in the Affidavit of Paul B. Rundell, in Support of First Day Motions (the "Rundell
Affidavit"), and is incorporated herein by reference.

**Relief Requested**

8.      By this Application, the Debtors seek entry of an order authorizing the Debtors to
retain and employ Houlihan Lokey as its investment banker and financial advisor nunc pro tunc
to the Petition Date subject to further order of the Court and consistent with that certain
engagement agreement dated as of March 19, 2009 by and between Houlihan Lokey and the
Debtors (referred to herein as the "Agreement"), a copy of which is attached hereto as Exhibit C
and incorporated by reference herein.[2]

**Houlihan Lokey's Qualifications**

9.      The Debtors seek to retain Houlihan Lokey as their investment banker and
financial advisor because it has extensive experience in the senior housing and continuing care
retirement community industries, restructuring, mergers and acquisitions ("M&A") and valuation
and an excellent reputation for providing high quality investment banking and financial advisory
services to debtors and creditors in chapter 11 proceedings.  Houlihan Lokey also is uniquely
qualified to be retained as the Debtors' investment banker and financial advisor in these chapter
11 cases given its knowledge of the Debtors' businesses and financial affairs as the result of its
work on behalf of the Debtors since its original retention in March 2009.

10.      Established in 1970, Houlihan Lokey is an internationally recognized investment
banking and financial advisory firm, with fourteen offices worldwide and more than 800
employees.  Houlihan Lokey annually serves more than 1,000 clients ranging from closely held
companies to Global 500 corporations, providing corporate finance and financial advisory

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement.  The
summary of the terms of the Agreement contained herein is provided for the benefit of the Court and parties in
interest and, to the extent the summary set forth herein and the terms of the Agreement are inconsistent, the terms of
the Agreement shall control.

services, as well as execution capabilities, in a variety of areas including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A advisor in the United States for transactions under $2 billion, according to Thomson Financial. The firm has been the No. 1 provider of M&A fairness opinions for eight consecutive years. Houlihan Lokey maintains one of the largest worldwide financial restructuring practices of any investment bank, with more than 160 professionals in its Financial Restructuring Group alone. The group employs an interdisciplinary approach to engagements and is accustomed to evaluating complex, highly leveraged situations in short time frames. Houlihan Lokey also is a recognized leader in effectuating M&A transactions for distressed companies, both in-and out-of-court. Houlihan Lokey's Health Care Group, which forms an integral part of the Houlihan Lokey team assisting the Debtors, was the number one healthcare M&A advisor in the U.S. for announced transactions in 2008.

11.     Houlihan Lokey has served as financial advisor to debtors in a variety of cases and some of the largest and most complex restructuring matters in the United States. See, e.g., In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re McLeodUSA, Inc., Case No. 05-63230 Case 09-17787 (JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y. June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec., 12 2002); In re Bugle Boy Industries, Inc., No 01-10834 (Bankr. C.D. Calif. Feb 1, 2001); In re Pacific USA Holdings Corporation, No 02-80906 (Bankr. N.D. Tex. Dec. 12, 2002); In re StairMaster Sports/Medical Products, Inc., No 01-19658 (Bankr. W.D. Wash. Aug. 30, 2001); In re Diary Mart Convenience Stores, Inc., No 01-42400 (Bankr. S.D. N.Y. Sep. 24, 2001); In re Daisytek International Corporation, No 03-34762 (Bankr. N.D. Tex. May 7, 2003); In re Interdent Service Corporation, No 03-13594 (Bankr. C.D. Calif. May 9, 2003); In re Home Interiors and Gifts, Inc., No 08-31961 (Bankr. N.D. Tex. April 29, 2008); In re DDi Corp., No 03-15261 (Bankr. S.D. N.Y. Aug.

20, 2003); <u>In re Leiner Health Prods, Inc.</u>, No. 08-10446 (Bankr. D. Del. April 8, 2008); <u>In re Romacorp, Inc.</u>, No 05-86818 (Bankr. N.D. Tex. Nov. 6, 2005); <u>In re Propex Inc.</u>, No 08-10249 (Bankr. E.D. Tenn. Feb. 13, 2008); <u>In re VarTec Telecom, Inc.</u>, No 04-81694 (Bankr. N.D. Tex. Nov. 1, 2004); and <u>In re Covad Commc'ns Group, Inc.</u>, No. 01-10167 (Bankr. D. Del. Nov. 21, 2001).

12.     Additionally, Houlihan Lokey has served as the financial advisor to the official committee of unsecured creditors in a multitude of chapter 11 proceedings, including <u>In re General Growth Properties, Inc.</u>, No 09-11977 (Bankr. S.D. NY. April 16, 2009); <u>In re Farmland Industries, Inc.</u>, No 02-50557 (Bankr. W.D. Mo. May 31, 2002); <u>In re Mirant Corp.</u>, No. 03-46590 (Bankr. N.D. Tex. 2003); <u>In re Wickes, Inc.</u>, No. 04-02221 (Bankr. N.D. Ill. Jan. 20, 2004); <u>In re The National Benevolent Association of the Christian Church</u> (Disciples of Christ), Case No. 04-50948 (Bankr. W.D. Tex. Feb. 16, 2004); <u>In re FV Steel and Wire Co.</u>, Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004); <u>In re Conseco, Inc.</u>, No. 02-49672 (Bankr. N.D. Ill. March, 20 2003); <u>In re WorldCom, Inc.</u>, No. 02-13533 (Bankr. S.D.N.Y. Nov. 12, 2002); <u>In re Kaiser Aluminum Corp.</u>, No. 02-10429 (Bankr. D. Del. May 7, 2002); <u>In re Enron Corp.</u>, No. 01-16034 (Bankr. S.D.N.Y. July 8, 2001); and <u>In re The Loewen Group, Inc.</u>, No. 99-1244 (Bankr. D. Del. Oct. 6, 1999).

13.     As a result of its prepetition work performed on behalf of the Debtors, Houlihan Lokey has acquired knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters.  Specifically, Houlihan Lokey's prepetition work on behalf of the Debtors has included, without limitation:

    (a)     reviewing and analyzing the Debtors' historical and projected financial statements, operations, liquidity, competitive environment, prospects and related matters;

    (b)     construction of integrated financial projection models for most of the Debtors;

(c)     leading the negotiations of the Redwood plan sponsorship transaction as well as the Debtors' negotiations related to DIP financing;

(d)     review of the Debtors' debt agreements and guarantees and the relative priorities thereunder;

(e)     meetings and discussions with most of the Debtors' creditors regarding the Debtors' financial condition and prospects;

(f)     negotiation and implementation of a large number of extensions, amendments and forbearances under the Debtors' various financing arrangements;

(g)     evaluation of the lenders' and other constituents' strategies and options, given their positions and priorities with respect to each asset and overall in the capital structures of the Debtors;

(h)     evaluation of the impact of various alternative strategies (both in and out of chapter 11) on the Debtors' business operations and financial condition, as well as the impact of those alternatives on the Debtors' creditors and other constituents (the "other constituents" of the Debtors include, without limitation, the residents of the Debtors' communities and their representatives, various regulators and authorities, the Debtors' employees, and the vendors and suppliers to the Debtors); and

(i)     commencement in September of a comprehensive marketing process to solicit offers to acquire substantially all of the Company's assets or support a plan of reorganization as a plan sponsor.  To date, Houlihan Lokey has contacted over 80 parties in the marketing process and distributed marketing materials, established an electronic data room and coordinated management meetings for interested parties.

Upon the Court's approval of Houlihan Lokey's retention as investment banker to the Debtors, Houlihan Lokey is prepared to continue providing a range of strategic advisory services to the Debtors.

14.     An experienced investment bank and financial advisor such as Houlihan Lokey fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals and advisors.  In conjunction with their proposed Plan of Reorganization (the "Plan"), the Debtors are currently working to restructure much of their sizeable capital structure, a process involving extensive negotiations with a large number of parties.  Simultaneously, the Debtors are working to effectuate the sale of certain of the Company's assets and operations,

which also entails detailed and extensive negotiations.  As these processes are taking place, the Debtors continue active discussions with all of their various constituents, including residents, regulators and authorities, employees, vendors and others.  For all of these processes, the Debtors believe that they require the services of a capable and experienced investment bank such as Houlihan Lokey, which is uniquely positioned to assist the Debtors with the conduct of the cases and confirmation of the Plan.

### Services to be Rendered

15.    In addition to providing any additional investment banking and financial services as the Debtors may request from time to time, Houlihan Lokey will assist in the evaluation of strategic alternatives and render investment banking and financial advisory services to the Debtors in connection with these chapter 11 cases, including, without limitation:

(a)    participating in or advising on discussions regarding the Debtors and the Plan with the Debtors' many constituents including, without limitation, the Debtors' creditors, the residents of the Debtors' communities and their representatives, various regulators and authorities, the Debtors' employees, and the vendors and suppliers to the Debtors;

(b)    continuing the marketing process commenced prepetition to solicit offers from investors to become a plan sponsor of the Company's reorganization or purchase the Company's assets;

(c)    ensuring the continued provision of information to all parties interested in these proceedings;

(d)    providing due diligence information to the prospective purchasers of the Debtors' assets and operations;

(e)    continued negotiations with the Debtors' creditors;

(f)    negotiating with the prospective purchasers of the Debtors' assets and operations;

(g)    assisting with implementation of the Plan, including implementation of the restructuring of the obligations of communities and the sale of most of the assets and operations of the Debtors; and

(h)    providing expert advice and testimony regarding financial matters relevant to the Debtors or the Plan.

16.     The Agreement also contains standard indemnification language with respect to Houlihan Lokey's services.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth therein.  The Debtors will not, however, indemnify Houlihan Lokey for any losses, claims, damages or liabilities incurred by Houlihan Lokey to the extent that a court of competent jurisdiction determines such losses, claims, damages or liabilities result from willful misconduct or gross negligence.

**Professional Compensation**

17.     Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement (the "Fee Structure").

(a)     Monthly Fees:  The Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $250,000 ("Monthly Fee");

(b)     Sale Transaction Fees:  Upon the closing of a Sale Transaction, the Debtors shall pay fees computed under a sliding scale beginning at $525,000 and ranging from 3% to 7% of Aggregate Gross Compensation above various thresholds;

(c)     Financing Transaction Fees:  Upon the closing of each Financing Transaction, the Debtors shall pay fees ranging from 1.4% to 2.8% of any capital raised in the form of indebtedness and 4.2% of any capital raised in the form of equity or equity-linked securities;

(d)     Restructuring Transaction Fee:  Upon completion of a Restructuring Transaction, the Debtors shall pay a fee of $8.25 million The Restructuring Transaction Fee shall be increased by 15% if the Company consummates a Restructuring Transaction on an out-of-court basis or pursuant to a "prearranged" or "prepackaged" plan in which the Restructuring Transaction is confirmed in not more than six months from the Petition Date;

(e)　　Multiple/Complex Transactions: The Agreement also contemplates the completion of multiple and/or complex Transactions, under which circumstances a Restructuring Fee of at least $8.25 MM would be payable and potentially subject to the premium described above; and

(f)　　Crediting: The Agreement provides for the crediting of 25-50% of certain Monthly Fees against any Financing Transaction and Sale Transaction Fees and then against any Amendment Transaction Fees payable under the Agreement. The Agreement also provides for the crediting of (x) 25% of all Financing Transaction and Sale Transaction Fees (net of any credits against such Financing Transaction and Sale Transaction Fees from the Monthly Fees) and (x) 100% of all Amendment Transaction Fees against any Restructuring Fees payable under the Agreement. All such credits may not reduce any such Transaction Fees below zero.

18.　　Houlihan Lokey's strategic and financial expertise as well as its senior living and capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Houlihan Lokey's services hereunder cannot be measured by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of such services. Indeed, the Debtors and Houlihan Lokey have agreed upon the Fee Structure anticipating that a substantial commitment of professional time and effort will be required of Houlihan Lokey and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Houlihan Lokey and (b) the actual time and commitment required of Houlihan Lokey and its professionals to perform its services under the Agreement may vary substantially from week to week and month to month, creating "peak load" issues for Houlihan Lokey.

19.　　The Fee Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases, both in-and out-of-court, involving the services to be provided in these chapter 11 cases. Houlihan Lokey and the Debtors believe that the Fee Structure is both reasonable and market-based and designed to compensate Houlihan

9

Lokey fairly for its work and to cover fixed and routine overhead expenses.  Further, because the

Debtors are seeking to retain Houlihan Lokey under section 328(a) of the Bankruptcy Code, the

Debtors believe that Houlihan Lokey's compensation should not be subject to any additional

standard of review under section 330 of the Bankruptcy Code.

20.     Houlihan Lokey will maintain records in support of any actual and necessary

costs and expenses incurred in connection with the rendering of its services in these cases.

### No Duplication of Services

21.     The Debtors intend that Houlihan Lokey's services will complement, and not

duplicate, the services to be rendered by DLA Piper LLP (US), Alvarez & Marsal Healthcare

Industry, LLC, or any other professional retained in these chapter 11 cases.  Pursuant to the

Agreement, Houlihan Lokey understands that the Debtors have retained and may retain

additional professionals during the term of the engagement and agrees to work cooperatively

with such professionals to integrate any respective work conducted by the professionals on

behalf of the Debtors.

### Houlihan Lokey's Disinterestedness

22.     Houlihan Lokey has reviewed its electronic database and, to the best of its

knowledge and except to the extent disclosed in the Niemann Declaration, Houlihan Lokey (a) is

a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) does

not hold or represent an interest adverse to the Debtors' estates and (c) has no connection to the

Debtors, their creditors or their related parties.  Houlihan Lokey will periodically review its files

during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying

circumstances exist or arise.  To the extent that Houlihan Lokey discovers any new relevant facts

or relationships bearing on the matters described herein during the period of Houlihan Lokey's

retention, Houlihan Lokey will use reasonable efforts to file promptly a supplemental declaration.

## Basis for Relief

**A.    Section 328 of the Bankruptcy Code Permits the Employment and Retention of Houlihan Lokey on Terms Substantially Similar to Those in the Agreement.**

23.    The Debtors seek approval of the Agreement and the Fee Structure contained therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re  Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

See In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

24.    Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to Bankruptcy Code section 328(a), which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed percentage fee basis, or on a contingent fee basis</u>.

<u>See</u> 11 U.S.C. § 328(a) (emphasis added). Bankruptcy Code section 328(a), as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fixed-fee basis such as the Fee Structure with Houlihan Lokey as proposed by the Debtors herein.

25.     As set forth above, notwithstanding approval of the Agreement under Bankruptcy Code section 328, Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Agreement.

26.     Further, consistent with its ordinary practice and the practice of financial advisors and investment bankers in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. As Houlihan Lokey's compensation will be calculated and paid based on certain transaction fees, Houlihan Lokey requests that it not be required to file time records in accordance with the United States Trustee Guidelines.

27.     The Fee Structure appropriately reflects the nature and scope of services to be provided by Houlihan Lokey and Houlihan Lokey's substantial experience with respect to restructuring, financial advisory, and investment banking services, going concern valuation and

expert testimony services, and is consistent with the fee structures typically utilized by Houlihan Lokey and other leading financial advisors, who do not bill their clients on an hourly basis.

28.     Similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit.  See, e.g., Venturelink Holdings, Inc. No 02-80906 (Bankr. N.D. Tex. April 22, 2003) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In re Home Interiors and Gifts, Inc., No 08-31961 (Bankr. N.D. Tex. Oct. 20, 2008) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In re Romacorp, Inc., No 05-86818 (Bankr. N.D. Tex. Dec. 28, 2005) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a));  In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); In re Trans World Airlines, Inc., No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code; In re Covad Comm. Group, Inc., No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); In re Harnischfeger Indus., No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors); In re The National

Benevolent Association of the Christian Church (Disciples of Christ), Case No. 04-50948 (RBK) (Bankr. W.D. Tex. Feb. 16, 2004) (order authorizing employment of Houlihan Lokey). The terms and conditions of the Agreement, including the provisions relating to indemnification,[3] were negotiated by the Debtors and Houlihan Lokey at arm's-length and in good faith. In light of the foregoing, and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Houlihan Lokey's services for engagements of this nature, the Debtors believe that the terms and conditions of the Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## B.    The Retention of Houlihan Lokey Is Critical to the Debtors' Success.

29.     Denial of the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified investment banking and financial advisory firm and, certainly, would result in an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack such a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last several months and which will continue through the pendency of these chapter 11 cases. Hiring a substitute would require the commitment of

---

[3]     The Debtors and Houlihan Lokey respectfully submit that the such indemnification provision is (a) a standard provision, both in and outside of chapter 11 cases, (b) reflects the qualifications and limits on the indemnification provisions that are customary in Texas and other jurisdictions and (c) viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, is reasonable and in the best interests of the Debtors' estates, creditors and all parties in interest. See, e.g., In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC); In re Foamex Intl., No. 05-12685 (PJW) (Bankr. D. Del. October 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.); see also In re Dunmore Homes, Inc., No. 07-13533 (MG) (Bankr. S.D.N.Y. Dec. 20, 2007) (order authorizing retention of Alvarez & Marsal North America LLC and Alvarez & Marsal Securities LLC); In re Granite Broadcasting Corp., No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc.).

significant resources to get a substitute up to speed given the steep learning curve involved. Further, comparable investment bankers and financial advisors would charge an equivalent level of fees.

30.     The scope and complexity of the Debtors' operating and financial structure make it highly unlikely that any substitute advisor would be in a position to duplicate Houlihan Lokey's superior expertise and knowledge of the Debtors' business and operations. In addition, Houlihan Lokey's prepetition efforts in soliciting investment proposals from multiple third parties position it uniquely to continue such a process. Accordingly, the Debtors respectfully submit that the services provided by Houlihan Lokey are critical to the Debtors' estates and request that the Court approve the terms and conditions of the Agreement in substantially the form attached hereto.

## **Notice**

31.     Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Debtors' thirty largest unsecured creditors on a consolidated basis; (c) counsel to the agent for the Debtors' prepetition secured lenders; and (d) any persons who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

*[The Remainder of This Page is Intentionally Left Blank]*

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court

enter an order substantially in the form annexed hereto (a) granting this Application,

(b) authorizing the Debtors to retain and employ Houlihan, Lokey, Howard & Zukin Capital, Inc.

in this proceeding as investment banker and financial advisor <u>nunc pro tunc</u> to the Petition Date,

and (c) granting such other and further relief as appropriate.


Dated: October 22, 2009
       Dallas, Texas

**DLA PIPER LLP (US)**


By: /s/ Vincent P. Slusher
Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
New York State Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson
New York State Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 835-6000
Fax:  (212) 835-6001

Proposed Attorneys for the Debtors
and Debtors in Possession

# EXHIBIT D

**Order Authorizing the Retention of Houlihan Lokey**

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 24, 2009**                    _____
                                                   **United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | CASE NO. 09-37010 (SGJ) |
| | § | |
| ERICKSON RETIREMENT | § | CHAPTER 11 |
| COMMUNITIES, LLC, *et al.*[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | |

**ORDER AUTHORIZING DEBTORS IN
POSSESSION TO RETAIN HOULIHAN LOKEY HOWARD & ZUKIN
CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS IN
POSSESSION NUNC PRO TUNC TO THE PETITION DATE**

Upon the application (the "<u>Application</u>")[2] of the above captioned debtors and debtors in

possession (the "<u>Debtors</u>"), for entry of an order to employ and retain Houlihan Lokey Howard

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Hingham Campus, LLC, Houston Campus, LP, Kansas Campus, LLC, Lincolnshire Campus, LLC, Littleton Campus, LLC, Naperville Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLP, Warminster Campus, LP.

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Application.

& Zukin Capital, Inc. ("Houlihan Lokey") as investment banker to the Debtors nunc pro tunc to

the Petition Date on the terms set forth in the Agreement, and upon consideration of the Niemann

Declaration in support of the Application; and the Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and proper notice of the

Application having been provided to the necessary parties, and it appearing that no other or

further notice need be provided; and a hearing having been held to consider the relief requested

in the Application (the "Hearing"); and the appearances of all interested parties having been

noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings

had before the Court; and it appearing that Houlihan Lokey neither holds nor represents any

interest adverse to the Debtors' estates; and it appearing that Houlihan Lokey is a "disinterested

person," as that term is defined in Bankruptcy Code section 101(14); and it appearing that the

relief requested in the Application is in the best interests of the Debtors, their estates, their

creditors, and other parties in interest; and as required by section 327(a) of the Bankruptcy Code;

and notice of the Application having been adequate and appropriate under the circumstances; and

after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED, that the Application is granted nunc pro tunc to October, 19, 2009 and all

Objections to the Application and this Order are overruled or withdrawn (as set forth on the

record at the Hearing) except as set forth herein; and it is further

ORDERED, that the Debtors shall be, and hereby are, authorized to employ and retain

Houlihan Lokey in accordance with the terms and conditions set in forth the Agreement, with the

following modifications:

1.      At the Court's request, Houlihan Lokey has agreed and the Agreement shall

be modified pursuant to this Order such that the determination of Aggregate Gross

Consideration under Paragraph 7 of the Agreement shall exclude any

consideration paid to existing equity holders unless; (i) all creditors shall have

been paid in full; or (ii) the Official Committee of Unsecured Creditors (the

"Committee") otherwise consents to including such consideration in Aggregate

Gross Consideration under the Agreement;

2.      Houlihan Lokey has voluntarily agreed and the Agreement shall be modified

pursuant to this Order such that under Paragraph 9 of the Agreement, any multiple

simultaneous Transactions with one or more third parties shall be subject to the

Restructuring Fee Cap, as opposed to the Restructuring Fee Cap only applying to

multiple simultaneous Transactions with one third party; and it is further

ORDERED, that Houlihan Lokey will file fee applications for interim and final

allowance of compensation and reimbursement of expenses pursuant to the procedures set forth

in section 330 and 331 of the Bankruptcy Code; provided, however, that Houlihan Lokey shall

be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in

accordance with the terms of the Agreement, and subject to the procedures set forth in the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

Northern District of Texas (the "Local Rules") and any other applicable orders of this Court;

provided, further, that Houlihan Lokey's fees and expenses shall not be evaluated under the

standard set forth in section 330 of the Bankruptcy Code except that the Court, the United States

Trustee (the "U.S. Trustee") and the Committee shall be permitted to review the Transaction

Fees (as defined in the Agreement) pursuant to the reasonableness standards set forth in section

330 of the Bankruptcy Code; provided, however, that in determining the reasonableness of the

Transaction Fees under section 330, among other factors that the Court, the U.S. Trustee and the

Committee should consider is whether the Transaction Fees are comparable to the range of fees

paid to investment bankers in comparable transactions both in and outside of court in this and

other Districts, as provided in section 330(a)(3)(F) of the Bankruptcy Code.  Neither the U.S.

Trustee nor Houlihan Lokey shall rely upon this provision as binding precedent in any other

chapter 11 proceedings; and it is further

ORDERED, that nothing in this Order shall prejudice the later allocation of Houlihan

Lokey's fees and expenses among the Debtor's various estates, if such allocation is appropriate

and necessary per further Court order; and it is further

ORDERED, that notwithstanding anything to the contrary in the Bankruptcy Code, the

Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of

fee applications that, in light of services to be provided by Houlihan Lokey and the structure of

Houlihan Lokey's compensation pursuant to the Agreement, Houlihan Lokey and its

professionals shall be excused from maintaining time records in connection with the services to

be rendered pursuant to the Agreement; and it is further

ORDERED, that the indemnification provisions of the Agreement are approved; and it is

further

ORDERED, that if, before the entry of an order closing these chapter 11 cases, any

Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on

account of the Debtors' indemnification, contribution and/or reimbursement obligations under

the Agreement, including without limitation the advancement of defense costs, such Indemnified

Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Parties; and it is further

ORDERED, that no party may bring against any Indemnified Party any suit, proceeding or other action relating in any way to the Debtors or these chapter 11 cases in any court located in any jurisdiction without an application to and order of this Court; and it is further

ORDERED, that notwithstanding the possible applicability of Rules 6004(h), 7062 or 9014 of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that nothing in the Application or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED, that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

ORDERED, that to the extent that this Order is inconsistent with any prior order or pleading with respect to the Application in these cases, the terms of this Order shall govern; and it is further

ORDERED, that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### End of Order ###

# EXHIBIT E

## Houlihan Lokey Engagement Letter



## HOULIHAN LOKEY

*Confidential*

March 19, 2009

Mr. John Erickson
Chairman of the Board
Erickson Retirement Communities, LLC
701 Maiden Choice Lane
Catonsville, Maryland 21228

Dear Mr. Erickson:

This letter agreement (this "Agreement") confirms the terms under which Erickson Retirement Communities, LLC ("Erickson LLC"), and each of its direct and indirect subsidiaries and affiliates, and any entity formed by, or at the direction of, Erickson LLC, including the subsidiaries which own or control the properties listed on Schedule A hereto (all of the foregoing collectively being referred to herein as the "Company") has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as its lead financial advisor to provide financial advisory and investment banking services in connection with a potential "Transaction" (as more fully defined herein) and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement.

1. **Services**.  In connection with each potential Transaction (as defined below), Houlihan Lokey will report directly to the Board of Directors of Erickson LLC and will assist and advise the Company with the analysis, evaluation, pursuit and effectuation of any such Transaction.

    Houlihan Lokey will work with management, the Board and the Company's legal and other advisors to understand the current situation and the perspectives of the various constituents.  We will then evaluate strategic alternatives and help the Company implement the selected Transaction(s). Immediately upon engagement, we expect to:

    (i)    Review the Company's historical and projected financial statements (consolidated and by asset), operations, liquidity, competitive environment, prospects and related matters

    (ii)   Review and analyze market and valuation drivers

    (iii)  Evaluate the Company's financial projections and assist the Company with the preparation of any alternate projection scenarios

**Chicago** • 123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951
**Los Angeles New York San Francisco Washington, D.C. Minneapolis Dallas Atlanta London Paris Frankfurt Hong Kong Tokyo Beijing**
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 2



HOULIHAN LOKEY

---

(iv)  Review the Company's debt agreements, as well as all other obligations and guarantees and their relative priorities, including resident agreements (e.g., the treatment of Initial Entrance Deposits ("IEDs") and residents' and creditors' rights with respect to IEDs)

(v)  Evaluate the current management and asset management structure of the Company, as well as the strength and impact of the "Erickson" brand in conjunction with any potential strategic alternatives

(vi)  Evaluate the lenders' and other constituents' strategies and options given their positions with respect to each asset and overall in the capital structure and the current market dynamics

(vii)  Consider the impact of various alternatives (both in and out of Chapter 11) on the Company's strategies and business operations, as well as the lenders' and other constituents' (e.g., residents, regulatory authorities, vendors, etc.) alternatives in such scenarios

Upon completion of this initial due diligence, we expect to evaluate each of the Company's available strategic alternatives and assist with the implementation of the selected strategic alternative(s), which alternatives may include financing, recapitalization, merger, acquisition, divestiture, and/or restructuring alternatives. We anticipate that these services would include:

(i)  Assist the Company with lender, regulatory, resident and other constituent discussions to drive collaborative, efficient negotiations toward project-level and comprehensive restructuring solutions

(ii)  Manage the process of information flow and the provision of updates about the situation and current status to lenders and other constituents

(iii)  Assist the Company with the development, negotiation and implementation of a Transaction(s)

(iv)  Serve as the Company's representative and advisor in negotiations with other parties involved in the Transaction(s)

(v)  Develop materials to be distributed to the existing lenders and other constituents, as well as prospective lenders/investors, coordinating due diligence and leading negotiations through final transaction documentation

(vi)  Provide expert advice and testimony, as necessary, on financial and process matters relating to a Transaction, including the feasibility of any Transaction and the valuation of any securities issued in connection therewith

(vii)  Advise the Company and its Board of Directors regarding various alternatives, Transactions and/or other issues related thereto

(viii)  Render such other financial advisory and investment banking services as may be mutually agreed upon by Houlihan Lokey and the Company

We expect to commence our due diligence immediately upon our retention and work closely with management, the Board, counsel and CRG Partners to fully evaluate on a consolidated and asset level, liquidity, contribution, capital structure, ranges of realizable value, debt capacity, strategic alternatives, recourse / non-recourse obligations, treatment of IEDs, asset management structures, etc.  In our initial phase of our engagement, we anticipate presenting to the Board our assessment of available alternatives and recommended course of action.  The next phase of our engagement will be dependent on the Company's chosen course of action.  We understand that the

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 3



HOULIHAN LOKEY

---

Company's objective is to pursue an out-of-court restructuring solution for the Company that provides a sustainable capital structure and business model going forward. Of course, as with any restructuring, the outcome is not fully predictable and we will continually evaluate the Company's in- and out-of-court options through ongoing contingency planning with management, the Board, counsel and other advisors.

2. **Exclusive Agency.** The Company agrees that none of it, its controlling equity holders or other affiliates, or its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey. In the event the Company, its controlling equity holders or other affiliates, or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3. **Fees.** In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement, the Company shall pay the following:

   a. *Initial Payment and Monthly Fees*: In addition to the other fees provided for herein, (i) upon the execution of this Agreement, the Company shall be obligated to pay Houlihan Lokey a nonrefundable cash fee of $500,000, which shall be earned as of the Effective Date of this Agreement and payable by the Company on or before April 1, 2009. The $500,000 initial payment shall cover the first two installments of the "Monthly Fee", and (ii) upon the 20th day of the second month after the Effective Date, and on the 20th day of each month thereafter during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $250,000 ("Monthly Fee"). Each Monthly Fee shall be earned by Houlihan Lokey upon receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. If this Agreement is terminated before the end of four months from the Effective Date, the Company hereby agrees to pay to Houlihan Lokey, on the effective date of such termination, any excess of the amount of Monthly Fees for four months over the Monthly Fees actually paid to Houlihan Lokey hereunder.

   b. *Transaction Fee(s)*: In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s) (each of which may be referred to as a "Transaction Fee" and collectively as "Transaction Fees"):

      i. *Sale Transaction Fee.* Upon the closing of each Sale Transaction (as defined in Section 6 below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly by the Company and/or from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") equal to the greater of (a) $525,000 for each such Sale Transaction, and (b) the sum of the following:

| *Adjusted AGC* | *Sale Transaction Fee* |
|---|---|
| From $35.0 million to Tier I Adjusted AGC | $525,000 plus 150 bps times Adjusted AGC over $35.0 million, plus |
| From Tier I to Tier II Adjusted AGC | 300 bps times incremental Adjusted AGC, plus |
| From Tier II to Tier III Adjusted AGC | 500 bps times incremental Adjusted AGC, plus |
| Over Tier III Adjusted AGC | 700 bps times Adjusted AGC over Tier III |

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 4



HOULIHAN LOKEY

For purposes of calculating the Sale Transaction Fee, "Adjusted AGC" shall mean an amount equal to seventy percent (70.0%) times actual AGC (as defined in Section 7 below).  The Company and Houlihan Lokey shall agree upon the Adjusted AGC levels to be considered "Tier I", "Tier II" and "Tier III" prior to entering the market or otherwise entering into negotiations regarding a Sale Transaction.  If more than one Sale Transaction is consummated, Houlihan Lokey shall be compensated based on the Adjusted AGC from all Sale Transactions, calculated in the manner set forth above; subject, however, to a minimum Sale Transaction Fee of $525,000 for each Sale Transaction.

ii.  *Financing Transaction Fee.*  Upon the closing of each Financing Transaction (as defined in Section 6 below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (a) 1.4% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company; (b) 2.8% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (c) 4.2% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed.  Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and the valuation of such warrants shall be determined pursuant to a valuation prepared by Houlihan Lokey and, if agreed to by the Company, such valuation shall be determinative in calculating Houlihan Lokey's Financing Transaction Fee associated with such warrants; provided, however, if the Company and Houlihan Lokey cannot agree as to such valuation, then that portion of the Financing Transaction Fee associated with such warrants shall be paid upon the exercise of the warrants and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement.  It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage.  The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent (or other issuer of the Securities in such Financing Transaction) or directly by the Company or any of its affiliates.  Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of securities issued in exchange for such consideration multiplied by the per security price paid in the then-current round of financing.  The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any Investor or other purchaser of Securities to secure its financing commitment.

iii.  *Amendment Transaction Fee.*  Upon the completion of an Amendment Transaction (as defined in Section 6 below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey, a cash fee equal to $100,000 for each such Amendment Transaction ("Amendment Transaction Fee"), provided (a) if multiple Amendment Transactions are consummated contemporaneously with multiple lenders (and no individual Amendment Transaction involves the extension of maturities), then the maximum aggregate fee for such contemporaneous Amendment Transactions shall be $500,000 (i.e., 5.0 x the Amendment Transaction Fee); and (b) if multiple Amendment Transactions are consummated contemporaneously with multiple lenders (and any one or more of those Amendment Transactions involve the extension of

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 5



HOULIHAN LOKEY

---

maturities), then the maximum aggregate fee for such contemporaneous Amendment Transactions shall be $1,000,000 (i.e., 10.0 x the Amendment Transaction Fee).

iv.  *Restructuring Transaction Fee.* Upon the earlier to occur of: (a) in the case of an out-of-court Restructuring Transaction (as defined in Section 6 below), the effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors; and (b) in the case of an in-court Restructuring Transaction, the confirmation date of a plan under the Bankruptcy Code, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of (x) $8.25 million or (y) if, on or prior to the ninetieth (90th) day following the Effective Date, the Company elects in writing to pay Houlihan Lokey an alternative Restructuring Fee (herein, the "Tiered Restructuring Transaction Fee") which shall be equal to the greater of (xx) $4,327,500.00 million and (yy) the sum of the following:

| *Amount of Restructured Debt* | *Restructuring Transaction Fee* |
|---|---|
| For up to $700.0 million | 70 bps times amount of Restructured Debt, plus |
| From $700.0 million to up to $1.4 billion | 55 bps times amount of Incremental Restructured Debt, plus |
| From $1.4 billion to up to $2.1 billion | 40 bps times amount of Incremental Restructured Debt (less $500,000), plus |
| Over $2.1 billion | 25 bps times amount of Incremental Restructured Debt |

If the Company consummates a Restructuring Transaction on an out-of-court basis, or through a "prepackaged" or "prearranged" plan (whereby the Restructuring Transaction is confirmed in six months or less from the "Petition Date"), then the Restructuring Transaction Fee shall be increased by a premium of 15.0%.

The Restructuring Transaction Fee as calculated herein is intended to fully compensate Houlihan Lokey for any and all Restructuring Transactions consummated. The parties acknowledge and agree that notwithstanding that there may be multiple Restructuring Transactions consummated (and these Restructuring Transactions may not happen simultaneously), there will be one aggregate Restructuring Transaction Fee that will only be adjusted upward (a) if the Company elects the Tiered Restructuring Transaction Fee and/or (b) if the 15.0% premium set forth in the immediately preceding paragraph is earned.

c.  *Credits / Offsets against Transaction Fees.*

i.  *Monthly Fee Credits.* Twenty-five percent (25.0%) of the Monthly Fees timely received by Houlihan Lokey for the thirteenth through eighteenth month of this Engagement and fifty percent (50.0%) of the Monthly Fees timely received by Houlihan Lokey for the nineteenth month and thereafter shall be credited first against any Financing and Sale Transaction Fees and then against any Restructuring Transaction Fees to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), provided that in no event shall such Transaction Fees be reduced below zero.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 6



HOULIHAN LOKEY

---

ii. *Financing and Sale Transaction Fee Credits.* Twenty-five percent (25.0%) of all Financing Transaction Fees and Sale Transaction Fees (net of any credits against such Financing and Sale Transaction Fees from the Monthly Fees) paid to Houlihan Lokey shall be credited and offset against any Restructuring Transaction Fees payable to Houlihan Lokey.

iii. *Amendment Transaction Fee Credits.* One hundred percent (100.0%) of all Amendment Transaction Fees paid to Houlihan Lokey shall be credited and offset against any Restructuring Transaction Fees payable to Houlihan Lokey.

iv. *Overall Application of Credits.* In no event shall the aggregate of all credits and offsets set forth in this paragraph reduce the Restructuring Transaction Fees or any other Transaction Fees below zero (i.e., Transaction Fees shall always be zero or greater).

d. *General Interpretations.* Any Restructuring Transaction Fee, Sale Transaction Fee, Financing Transaction Fee and Amendment Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4. **Term and Termination.** This Agreement may be terminated at any time by either party upon thirty days' prior written notice to the other party. The expiration or termination of this Agreement shall not affect (a) any provision of this Agreement other than Sections 1 through 3 and (b) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement. In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (a) so long as a Transaction is consummated during the term of this Agreement, or within eighteen (18) months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (b) if an agreement in principle to consummate a Transaction is executed by the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing. Notwithstanding the foregoing, the parties agree that the Tail Period shall expire upon the payment in full of the Restructuring Transaction Fee owing under this Agreement.

5. **Agreement from Secured Lenders.** Prior to pursuing a Transaction, upon the Company's consent, Houlihan Lokey may, at its election, seek the execution of a waiver, subordination or similar agreement, in form and substance satisfactory to Houlihan Lokey, pursuant to which the Company's senior secured lenders holding a security interest in the assets involved in such Transaction consent to the payment of the Transaction Fees under this Agreement, as a cost of such Transaction and free and clear of such lenders' security interests in the Company's assets. This provision is solely for the benefit of Houlihan Lokey and may not be used by the Company or its secured creditors as a basis for withholding Transaction Fees from Houlihan Lokey.

6. **Transaction.** As used in this Agreement, the term "Transaction" shall mean any of the following (provided, however, that the sale of a CCRC to the Not For Profit Operating Company, or a borrowing by a Not For Profit Operating Company, consistent with past practice, shall not be considered a Transaction under this Agreement, and no Transaction Fees shall be due Houlihan Lokey for any such sale or financing, however such sale of financing is structured), each of which has been approved by the Company's Board of Directors:

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 7



HOULIHAN LOKEY

---

(i) *Financing Transaction.* (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the Company's existing obligations and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by the Company (any or all of which being "Securities"), from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates, but excluding any increase in the credit available under the Company's loan agreements existing as of the date hereof (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction").

(ii) *Sale Transaction.* Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the Company's existing owners, shareholders, employees, creditors and/or the affiliates of each, but excluding any transfer of assets or equity of a subsidiary of Erickson LLC to another subsidiary of Erickson LLC existing as of the date hereof) in one or a series of related transactions of (a) one or more of the Company's continuing care retirement communities ("CCRCs") (except as provided in the introductory paragraph of this Section 6) or a material portion of the equity securities of the Company or ownership interests or any interest held by the Company, any direct or indirect subsidiary or affiliate in any joint venture or partnership or other entity formed by any of them and/or (b) any significant portion of the assets (including the assignment of any executory contracts) or operations of the Company, any of its direct or indirect subsidiaries or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") (each, a "Sale Transaction").

(iii) *Amendment Transaction.* (a) Any forbearance, amendment or waiver, or series of forebearances, amendments or waivers, during any fiscal quarter with respect to the Company's debt obligations or (b) an increase in loan capacity under any existing debt facility from an existing Company lender, either of which does not otherwise constitute a Restructuring Transaction (each, an "Amendment Transaction"). Amendment Transactions shall generally consist of forbearances, amendments and waivers that require a simple majority under the Company's credit agreements; provided, however the Company and Houlihan Lokey have agreed solely for purposes of Houlihan Lokey's entitlement to the Amendment Transaction Fees set forth above, that the extension of maturities shall be included in the definition of Amendment Transaction herein.

(iv) *Restructuring Transaction.* A Restructuring Transaction shall generally be defined as any transaction or series of transactions approved by the Company through its Board that does not simply constitute an "Amendment Transaction" (as defined in paragraph 6(iii) above), but otherwise constitutes a recapitalization or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations or guaranty obligations), including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt and the



HOULIHAN LOKEY

Company's public bonds, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, or retirement of any agreements or instruments governing any of the Company's equity and/or debt securities and/or other indebtedness or any combination of the foregoing transactions (each a "Restructuring Transaction").

7.    **Aggregate Gross Consideration ("AGC").**  For the purpose of calculating the Sale Transaction Fee, the AGC shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by, the Company, or any of its equity or debt holders, or other parties in interest, including, without limitation, holders of warrants and convertible securities, and holders of options or stock appreciation rights, whether or not vested (collectively "Constituents"), in connection with the relevant Sale Transaction but shall expressly exclude any valuation relating to amounts due under the Community Loan Agreements (which amounts thereunder consist solely of the IEDs) entered into by the Company's subsidiaries with the Not For Profit Operator. Such proceeds and consideration shall be deemed to include, without limitation: amounts in escrow and any deposits or other amounts forfeited by any Investor; cash, notes, securities, and other property; payments made in installments; amounts payable under consulting agreements, above-market employment contracts, non-compete or severance agreements, consulting contracts or similar arrangements with any equity holder; Contingent Payments (as defined below) and/or insurance proceeds upon the occurrence of an insurable event that diminishes the value of the Company.  Upon the closing of a Sale Transaction in which less than 100% of the ownership of the equity interests are sold, the AGC shall be calculated as if 100% of the ownership of the equity interests of the Company on a fully diluted basis had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its Constituents by (ii) the percentage of ownership which is sold.  If, in the Sale Transaction, no consideration is being paid in respect of the existing equity, AGC of the retained equity shall be determined by the good faith agreement of the parties as to the value of such retained equity implied by the Sale Transaction.  In addition, if any of the Company's liabilities are assumed, decreased, reinstated, satisfied or otherwise paid off in conjunction with a Sale Transaction (by the Company or any Investor, in the form of "cure" payments or otherwise), or any of the Company's assets are sold or otherwise transferred outside of the Company's ordinary course of business to another party prior to the closing of a Sale Transaction (including, without limitation, any dividends or distributions paid to security holders or amounts paid to repurchase any securities) or are retained by the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the face value of any such liabilities and the fair market value of any such assets.  Contingent Payments shall be defined as the consideration received or receivable by the Company, or any of its Constituents and/or any other parties in the form of deferred performance-based payments, "earn-outs", or other contingent payments based upon the future performance of the Company, or any of its businesses or assets.

8.    **Value of Consideration.**  For the purpose of calculating the AGC received in a Sale Transaction, any securities, other than a promissory note, will be valued at the time of the closing of the Sale Transaction, without regard to any restrictions on transferability, as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Sale Transaction; and (iii) if such securities have not been traded prior to the closing of the Sale Transaction, Houlihan Lokey and the Company shall negotiate in good faith to agree on a fair valuation thereof, without regard to any restrictions on transferability, for the purposes of calculating the AGC.  For any lease payments and other consideration that is not freely tradeable or has no established public market, if the consideration utilized consists of property other than securities, then the value of such property shall be the fair market value thereof as determined in good faith by Houlihan Lokey and the Company.  If any consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 9



HOULIHAN LOKEY

prevailing exchange rate on the date or dates on which such consideration is payable. The value of any purchase money or other promissory notes shall be deemed to be the face amount thereof. In the event the AGC includes any Contingent Payments, Houlihan Lokey's Transaction Fee shall be calculated based on the mutually agreed value of such Contingent Payments as of closing. If the parties cannot reach such an agreement, an additional Sale Transaction Fee shall be paid to Houlihan Lokey from, and on account of, such Contingent Payments at the same time that each of such Contingent Payments are received regardless of any prior termination or expiration of this Agreement. Each such additional Sale Transaction Fee shall be calculated pursuant to the provisions of this Agreement based upon the amount of each such Contingent Payment.

9.      **Characterization of Multiple and/or Complex Transactions.** If the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Restructuring Transaction, Sale Transaction, Financing Transaction or Amendment Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction and the Transaction Fee shall be capped at the aggregate Restructuring Transaction Fee associated with such Transaction; provided that for the purposes of this provision, the amount of such Restructuring Transaction Fee shall never be less than $8.25 million (but it may be greater under the Tiered Restructuring Transaction Fee approach and/or if the 15.0% premium is earned under Section 3(b)(iv) hereof) (herein, the "Restructuring Fee Cap"). Moreover, if a Financing Transaction and/or Sale Transaction is consummated as part of a Restructuring Transaction subsequent to the payment of a Restructuring Transaction Fee and this Agreement has not been otherwise terminated, then such Financing Transaction Fees and/or Sale Transaction Fees shall be subject to the Restructuring Fee Cap. For illustration purposes, if $700.0 million in debt is restructured and the Company has chosen the Tiered Restructuring Transaction Fee approach and the 15% premium is not applicable (i.e., $4.9 million in Restructuring Transaction Fees are paid), then the maximum aggregate incremental Financing Transaction Fees and/or Sale Transaction Fees payable under this provision would be $3.35 million (i.e., Restructuring Fee Cap of $8.25 million less $4.9 million in Restructuring Transaction Fees paid). For the avoidance of doubt, if two or more single Transactions occur simultaneously or at different times, whether or not they are connected with or related to one another, the Company shall pay Houlihan Lokey the Transaction Fee for each such Transaction in addition to, and not in lieu of, each other.

10.     **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company.

11.     **Expenses.** In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (a) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (b) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 10



HOULIHAN LOKEY

Houlihan Lokey shall, in addition, be reimbursed by the Company for the fees and expenses of Houlihan Lokey's legal counsel incurred (a) in connection with the negotiation of this Agreement, (b) Houlihan Lokey's employment as a professional person in a Bankruptcy Court in the event the Company becomes a debtor in a bankruptcy case and (c) the payment of all fees and expenses due to Houlihan Lokey hereunder in connection with fee disputes and objections to Houlihan Lokey's fees by any party in a bankruptcy case involving the Company.

12.    **Invoicing and Payment.**   All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

13.    **Information.**   The Company will provide Houlihan Lokey with access to management and other representatives of the Company, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. The Company further represents and warrants that any financial projections delivered to Houlihan Lokey have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by Houlihan Lokey. The Company understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Company acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Company or any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent.

14.    **Confidential Information.**   The Confidentiality Agreement executed on March 12, 2009 by Houlihan Lokey with respect to the Company shall be incorporated herein by this reference.

15.    **Limitations on Services as Advisor.**   Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities. Houlihan Lokey is providing the Company with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and the Company and/or its creditors or any other person, on the other hand. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 11



HOULIHAN LOKEY

---

Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion.

16.    **Bankruptcy Court Approval.**  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.  The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion.  Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects.  If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.  Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash.  The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

   **Additional Services.**  To the extent Houlihan Lokey is requested by the Company to perform any financial advisory or investment banking services which are not within the scope of this engagement (such as rendering a fairness opinion), the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by Houlihan Lokey and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

17.    **Post-Termination Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 12



HOULIHAN LOKEY

---

18.    **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

19.    **Choice of Law; Jury Trial Waiver; Jurisdiction.** THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.    EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY'S SENIOR MOST LEGAL OR FINANCIAL OFFICER (HEREIN, "PROCESS AGENT") AT THE ADDRESS SET FORTH ABOVE, AS ITS AGENT TO RECEIVE ON BEHALF OF THE COMPANY SERVICE OF COPIES OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY BE SERVED IN ALL SUCH DISPUTES. SUCH SERVICE MAY BE MADE BY MAILING OR DELIVERING A COPY OF SUCH PROCESS TO THE COMPANY IN CARE OF THE PROCESS AGENT AT THE PROCESS AGENT'S ABOVE ADDRESS, AND THE COMPANY HEREBY IRREVOCABLY AUTHORIZES AND DIRECTS THE PROCESS AGENT TO ACCEPT SUCH SERVICE ON BEHALF OF THE COMPANY.

20.    **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees to (a) indemnify and hold harmless



HOULIHAN LOKEY

Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement and (b) to reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to this Agreement, or such engagement, Transaction or actions. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement to the extent that any loss, claim, damage or liability is finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect (a) in the event that a Transaction has been consummated at the time of such loss, claim, damage or liability, the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement; provided that if, however, the allocation in accordance with the relative benefits is not permitted by applicable law, the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations or (b) in the event that a Transaction has not been consummated at the time of such loss, claim, damage or liability, the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, except in the case where it has been finally judicially determined by a court of competent jurisdiction that the loss, claim, damage, liability or expense resulted from an Indemnified Party's willful misconduct or gross negligence, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to the Agreement.  The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement, except to the extent that losses, claims, damages or liabilities incurred by the Company are finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such Indemnified Party. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (a) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (b) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (c) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (d) shall survive the

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 14



HOULIHAN LOKEY

---

completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

The Company shall cause any new company that may be formed by the Company or the Company's subsidiaries, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions. Prior to entering into any agreement or arrangement with respect to, or effecting, any (a) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (b) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of this Agreement (including the agreement set forth in the immediately preceding sentence), that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to pursue injunctive relief and specific performance.

21.   **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets. If appropriate, in connection with performing its services for the Company hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates, provided, however, that the fees and other obligations described herein comprise all compensation and other obligations to be paid to Houlihan Lokey and its affiliates, and neither Houlihan Lokey, nor any affiliate of Houlihan Lokey, shall charge any separate or additional fees, or seek the payment of any additional obligations, for services rendered pursuant hereto.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 15



HOULIHAN LOKEY

---

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company (and its direct and indirect subsidiaries and controlled affiliates), enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Company understands and acknowledges that Houlihan Lokey and its affiliates, including ORIX USA Corporation and its subsidiaries and affiliates (collectively, the "Houlihan Lokey Group"), engage in providing investment banking, securities trading, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with the Company. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties other than the Company, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships may acquire information about the Company, a Transaction or such other parties, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Company or to use such information on the Company's behalf.

If the foregoing correctly sets forth our Agreement, please sign and return a fully executed version to us and ensure that a wire transfer confirmation is processed by not later than April 1, 2009 for $500,000.

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 15



HOULIHAN LOKEY

---

All of us at Houlihan Lokey thank you for choosing us to advise the Company, and look forward to working with you
on this engagement.

Very truly yours,
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**


By: _____
    Matthew R. Niemann
    Managing Director

Accepted and agreed to as of the Effective Date:

**ERICKSON RETIREMENT COMMUNITIES, LLC**, On behalf of itself, its direct and indirect subsidiaries and its
controlled affiliates and each of the Obligors

By: _____
    Name:
    Title:
    An Authorized Signatory

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 16



HOULIHAN LOKEY

All of us at Houlihan Lokey thank you for choosing us to advise the Company, and look forward to working with you on this engagement.

Very truly yours,
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**


By: _____
     Matthew R. Niemann
     Managing Director

Accepted and agreed to as of the Effective Date:

**ERICKSON RETIREMENT COMMUNITIES, LLC**, On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates and each of the Obligors


By: _____
        Name:
        Title:
        An Authorized Signatory

Mr. John Erickson
ERICKSON RETIREMENT COMMUNITIES, LLC
March 19, 2009
Page 17



HOULIHAN LOKEY

## SCHEDULE A

Ann's Choice, Warminster Pa.
Ashby Ponds, Loudon, Va
Eagle's Trace, Houston, Tx
Fox Run, Novi, Mi
Hickory Chase, Columbus, Oh
Highland Springs, Dallas Tx
Linden Ponds, Hingham, Ma
Maris Grove, Concord, Pa
Monarch Landing, Naperville, Il
Sedgebrook, Lincolnshire, Il
Tallgrass Creek, Overland Park, Kansas
Wind Crest, Littleton, Colorado
Grant's Farm Manor, St. Louis, Mo
Windsor Run, Matthews, N.C.
Tanglewood Creek, Westminster, Co

PERSONAL & CONFIDENTIAL

April 1, 2009

ERICKSON RETIREMENT COMMUNITIES, LLC
701 MAIDEN CHOICE LANE
CATONSVILLE, MARYLAND 21228

Initial Installment toward First Two Monthly Fees                         $500,000.00

PAYMENT DUE UPON RECEIPT

**Please Send Checks To:**
Houlihan Lokey Howard & Zukin Capital, Inc.
Accounts Receivable Department
1930 Century Park West
Los Angeles, California  90067-6802

**Wire Transfer Instructions:**
Union Bank of California
Transit & ABA #122000496
fbo Houlihan Lokey Howard & Zukin Capital, Inc.
Account #3030160796
Swift Code (International Wires Only): BOFCUS33MPK

# EXHIBIT F

## Houlihan Lokey Invoices



**Invoice: 13789**

**PERSONAL & CONFIDENTIAL**                                December 14, 2009

Erickson Retirement Communities                              Client #: 45383
701 Maiden Choice Lane                                        Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

| | | |
|---|---|---|
| Monthly Advisory Fee for the Period October 19 - October 31, 2009: | $ | 104,838.71 |
| Less 20% Holdback: | | (20,967.74) |
| Net Fee Currently Due: | $ | 83,870.97 |
| Out of pocket expenses: | | 7,691.95 |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **91,562.92** |

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



**HOULIHAN LOKEY**

**Invoice: 13951**

**PERSONAL & CONFIDENTIAL**                                 January 5, 2010

Erickson Retirement Communities                          Client #: 45383
701 Maiden Choice Lane                                   Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board


| | | |
|---|---|---|
| Monthly Advisory Fee for the Period of November 1 - 30, 2009: | $ | 250,000.00 |
| Less 20% Holdback: | | (50,000.00) |
| Net Fee Currently Due: | $ | 200,000.00 |
| Out of pocket expenses including: | | 18,399.34 |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **218,399.34** |


**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name: Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No: 3030160796
Beneficiary Bank Name: Union Bank of California
ABA/Routing Number/Bank ID: 122000496
Swift Code (International Wires only): BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.   Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



## HOULIHAN LOKEY

**Invoice: 13922**

**PERSONAL & CONFIDENTIAL**                                           January 19, 2010

Erickson Retirement Communities                                        Client #: 45383
701 Maiden Choice Lane                                                    Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

| | | |
|---|---|---|
| DIP Financing Fee: | $ | 280,000.00 |
| Less 20% Holdback: | | (56,000.00) |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **224,000.00** |

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056



## HOULIHAN LOKEY

**Invoice: 14282**

**PERSONAL & CONFIDENTIAL**

January 19, 2010

Erickson Retirement Communities

Client #: 45383

701 Maiden Choice Lane

Case #: 81874

Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

| | | |
|---|---|---|
| Monthly Advisory Fee for the Period of December 1 - 31, 2009: | $ | 250,000.00 |
| Less 20% Holdback: | | (50,000.00) |
| | | |
| Net Fee Currently Due: | $ | 200,000.00 |
| | | |
| Out of pocket expenses including: | | 28,615.38 |
| | | |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **228,615.38** |

**PAYMENT DUE UPON RECEIPT**

Wire Transfer Instructions:

Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account

Beneficiary Account No:  3030160796

Beneficiary Bank Name:  Union Bank of California

ABA/Routing Number/Bank ID:  122000496

Swift Code (International Wires only):  BOFCUS33MPK

Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com

Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



**HOULIHAN LOKEY**

**Invoice: 14386**

**PERSONAL & CONFIDENTIAL**                                    February 16, 2010

Erickson Retirement Communities                               Client #: 45383
701 Maiden Choice Lane                                        Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

| | | |
|---|---|---|
| Monthly Advisory Fee for the Period of January 1 - 31, 2010: | $ | 250,000.00 |
| Less 20% Holdback: | | (50,000.00) |
| Net Fee Currently Due: | $ | 200,000.00 |
| Out of pocket expenses including: | | 8,241.99 |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **208,241.99** |

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



**HOULIHAN LOKEY**

**Invoice: 14534**

**PERSONAL & CONFIDENTIAL**                                    March 19, 2010

Erickson Retirement Communities                               Client #: 45383
701 Maiden Choice Lane                                        Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board


Monthly Advisory Fee for the Period of February 1 - 28, 2010:      $    250,000.00
Less 20% Holdback:                                                     (50,000.00)

Net Fee Currently Due:                                             $    200,000.00

Out of pocket expenses including:                                       17,201.36


**TOTAL AMOUNT DUE AND PAYABLE:**                                  **$    217,201.36**


**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056



## HOULIHAN LOKEY

**Invoice: 14623**

**PERSONAL & CONFIDENTIAL**                                                April 13, 2010

Erickson Retirement Communities                                           Client #: 45383
701 Maiden Choice Lane                                                     Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

| | | |
|---|---|---|
| Monthly Advisory Fee for the Period of March 1 - 31, 2010: | $ | 250,000.00 |
| Less 20% Holdback: | | (50,000.00) |
| Net Fee Currently Due: | $ | 200,000.00 |
| Out of pocket expenses: | | 22,419.31 |
| **TOTAL AMOUNT DUE AND PAYABLE:** | **$** | **222,419.31** |

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



## HOULIHAN LOKEY

**Invoice: 14694**

**PERSONAL & CONFIDENTIAL**                                    April 27, 2010

Erickson Retirement Communities                               Client #: 45383
701 Maiden Choice Lane                                        Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board


Monthly Advisory Fee for the Period of April 1 - 30, 2010:    $    250,000.00
Less 20% Holdback:                                                 (50,000.00)

Net Fee Currently Due:                                        $    200,000.00

Out of pocket expenses:                                            1,215.49


**TOTAL AMOUNT DUE AND PAYABLE:**                            **$    201,215.49**


**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.

# HOULIHAN LOKEY

**Invoice: 14695**

**PERSONAL & CONFIDENTIAL**                                    April 27, 2010

Erickson Retirement Communities                               Client #: 45383
701 Maiden Choice Lane                                        Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board


Restructuring Transaction Fee:                               $   7,830,806.45

Less 20% Holdback:                                              (1,566,161.29)


**TOTAL AMOUNT DUE AND PAYABLE:**                            **$   6,264,645.16**


**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

# HOULIHAN LOKEY

**Invoice: 14733**

**PERSONAL & CONFIDENTIAL**                                              June 1, 2010

Erickson Retirement Communities                                         Client #: 45383
701 Maiden Choice Lane                                                  Case #: 81874
Baltimore, MD 21228-5968

ATTN: Mr. John Erickson, Chairman of the Board

Final Out-of-Pocket Expenses:                                    $      13,854.34

**TOTAL AMOUNT DUE AND PAYABLE:**                                **$      13,854.34**

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:  3030160796
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:  122000496
Swift Code (International Wires only):  BOFCUS33MPK
Federal ID #95-4024056

123 North Wacker Drive, 4th Floor • Chicago, Illinois 60606 • tel.312.456.4700 • fax.312.346.0951 • www.HL.com
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.

# EXHIBIT G

# Proposed Order

\

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

---------------------------------------------------------------x

In re:                                           :        Case No. 09-37010
                                                 :
ERICKSON RETIREMENT,                             :        Chapter 11
COMMUNITIES, LLC, *et al.*[1]                    :
                                                 :         Jointly Administered
                                                 :
            Debtors.                             :
---------------------------------------------------------------x


**ORDER GRANTING FIRST AND FINAL APPLICATION OF HOULIHAN LOKEY
HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES FOR THE PERIOD OCTOBER 19, 2009 THROUGH APRIL 30, 2010**


This matter coming before the Court on the First and Final Application of Houlihan

Lokey Howard & Zukin Capital, Inc. as Investment Banker To The Debtors for Compensation

for Services Rendered and Reimbursement of Expenses For The Period October 19, 2009

through April 30, 2010 (the "Application"); the Court having reviewed the Application and all

pleadings relating thereto; and the Court having determined that the legal and factual bases set

forth in the Application establish just cause for the relief granted herein;

THE COURT HEREBY FINDS THAT:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).


C.      The Application complies, as applicable, with the requirements of the Bankruptcy

Code, the Bankruptcy Rules and the Local Rules for the Bankruptcy Court for the Northern

---

[1] The Debtors in these Chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

\

District of Texas and the Orders of this Court.

       D.     Houlihan Lokey's requested final compensation for services rendered in connection with its representation of the Debtors during the Application Period is reasonable and appropriate under sections 328, 330 and 331 of the Bankruptcy Code.

       E.     Houlihan Lokey's expenses incurred during the Application Period for which it seeks reimbursement were actual and necessary expenses under sections 330(a) (1)(B) and 331 of the Bankruptcy Code.

       NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

       1.     The Application is GRANTED.

       2.     Houlihan Lokey's request for a final allowance of compensation for services rendered of 100% of $9,715,645, of which $2,322,161 remains outstanding, and reimbursement for 100% of expenses of $117,639, of which $37,489 remains outstanding, for the Application Period is hereby approved.

       3.     The Debtors are hereby authorized and directed to pay Houlihan Lokey the foregoing approved fees and expenses not already paid.

Dated:_____, 2010

_____
HONORABLE STACEY G.C. JERNIGAN
UNITED STATES BANKRUPTCY JUDGE